**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CREDIVALORES - CREDISERVICIOS S.A.<br>Debtor | Chapter 7<br><br>Case 24-10837 (DSJ) |
| SALVATORE LAMONICA solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.<br>Plaintiff,<br>v.<br><br>BANCIEN S.A. aka Ban100 S.A. fka Banco Credifinanciera S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP, DAVALIA GESTION DE ACTIVOS S.L, LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC and JOSÉ MIGUEL KNOELL<br>Defendants. | Adv. Proc. 26-01063 (DSJ)<br><br>Hearing Date: December 8, 2026 at 10:00 a.m. via Zoom |

**<u>MEMORANDUM OF LAW IN SUPPORT OF THE GRAMERCY DEFENDANTS' MOTION TO DISMISS THE TRUSTEE'S COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

STATEMENT OF FACTS .......... 4

A. The Gramercy Defendants .......... 4

B. The Other Defendants .......... 4

C. The Debtor .......... 5

D. The Shareholder Loan .......... 5

E. The Offering Memorandum and the Forbearance Agreements .......... 6

F. The Prepetition April 2024 Transaction .......... 7

G. Bankruptcy Proceedings in the U.S. and Colombia .......... 7

LEGAL STANDARD .......... 8

ARGUMENT .......... 9

I. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST GFM (FIRST CLAIM) .......... 9

A. The Complaint Fails to Plausibly Plead That GFM Owed Fiduciary Duties to the Debtor .......... 10

B. The Complaint Fails to Plausibly Plead A Collective Control Theory as to GFM and Other Defendants .......... 13

II. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST FERRARO (FIRST CLAIM) .......... 14

III. THE COMPLAINT FAILS TO PLEAD A § 547 PREFERENCE CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SECOND CLAIM) .......... 18

A. The Complaint Fails to Plead a “Transfer of An Interest of the Debtor in Property” to GCS .......... 18

B. The Payment to GCS Was on Account of Finanza’s Debt, Not the Debtor’s Antecedent Debt .......... 19

C. The Complaint Fails to Plead a Preference Payment to Gramercy Colombia .......... 20

D. The Complaint Fails to Adequately Plead the “Greater Than in Chapter 7” Element .......... 21

IV. THE COMPLAINT FAILS TO PLEAD A § 548 ACTUAL FRAUDULENT CONVEYANCE CLAIM AGAINST GCS (THIRD CLAIM) .......... 22

A. No Claim Lies Against GCS Under § 548 as it Did Not Receive Debtor Property .......... 22

B. The Trustee Fails to Plead Actual Fraud with Rule 9(b) Particularity .......... 23

C. The § 548(c) Value Defense Is Apparent From the Face of the Complaint .......... 26

V. THE COMPLAINT FAILS TO PLEAD A § 550 RECOVERY CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SIXTH CLAIM) ........................ 26

A. Gramercy Colombia is Not a "Transferee" Under § 550................................ 27

B. GCS Does Not Satisfy the Dominion-and-Control Test for "Transferee" Status ........................................................................................ 28

C. The § 550(b)(1) Good Faith Defense Is Apparent From the Face of the Complaint as to GCS ....................................................................................... 28

CONCLUSION.......................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Augenbaum v. Anson Invs. Master Fund LP*,
2024 U.S. Dist. LEXIS 12791 (S.D.N.Y. Jan. 24, 2024) .......... 13

*Banco de Desarrollo Agropecuario, S.A. v. Gibbs*,
709 F. Supp. 1302 (S.D.N.Y. 1989) .......... 10

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*,
362 B.R. 624 (Bankr. S.D.N.Y. 2007) .......... 23

*Begier v. IRS*,
496 U.S. 53 (1990) .......... 19

*CFTC v. Weintraub*,
471 U.S. 343 (1985) .......... 15

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 9

*Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
130 F.3d 52 (2d Cir. 1997) .......... 27, 28

*Dundon v. TPG Capital, L.P. (In re Endo Int'l PLC)*,
2026 Bankr. LEXIS 1337 (Bankr. S.D.N.Y. May 29, 2026) .......... 27

*Feldman v. Chase Home Fin. (In re Image Masters, Inc.)*,
421 B.R. 164 (Bankr. E.D. Pa. 2009) .......... 26

*Glob. Crossing Est. Representative v. Winnick*,
2006 U.S. Dist. LEXIS 53785 (S.D.N.Y. Aug. 3, 2006) .......... 12, 13

*Gowan v. Patriot Grp. (In re Dreier LLP)*,
452 B.R. 391 (Bankr. S.D.N.Y. 2011) .......... 24

*Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus.)*,
329 B.R. 411 (Bankr. S.D.N.Y. 2005) .......... 10, 11

*Gully v. NCUA Bd.*,
341 F.3d 155 (2d Cir. 2003) .......... 10

*Halperin v. Morgan Stanley Inv. Mgmt. (In re Tops Holding II Corp.)*,
646 B.R. 617 (Bankr. S.D.N.Y. 2022) ........ passim

*In re Extended Stay, Inc.*,
2020 Bankr. LEXIS 2128 (Bankr. S.D.N.Y. Aug. 8, 2020)........ 11

*In re Hampton Hotel Invs., L.P.*,
270 B.R. 346 (Bankr. S.D.N.Y. 2001) ........ 15

*In re Mirena IUD Prods. Liab. Litig.*,
29 F. Supp. 3d 345 (S.D.N.Y. 2014) ........ 9

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ........ 22, 23, 27

*Kirschenbaum v. Leeds Morelli & Brown P.C. (In re Robert Plan of N.Y. Corp.)*,
456 B.R. 150 (Bankr. E.D.N.Y. 2011) ........ 29

*Krys v. Butt*,
486 F. App'x 153 (2d Cir. 2012) ........ 13

*Lamonica v. Tilton (In re TransCare Corp.)*,
602 B.R. 234 (Bankr. S.D.N.Y. 2019) ........ 10

*Lamonica v. Tilton (In re TransCare Corp.)*,
81 F. 4th 37 (2d Cir. 2023) ........ 24

*Mendelsohn v. Dole Fresh Fruit Co. (In re Barnett Corp.)*,
2026 Bankr. LEXIS 387 (Bankr. E.D.N.Y. Feb. 13, 2026) ........ 25

*Nisselson v. Softbank AM Corp. (In re MarketXT Hldgs,. Corp.)*,
361 B.R. 369 (Bankr. S.D.N.Y. 2007) ........ 24, 25

*Nuveen Servs., LLC v. Fuller*,
2024 U.S. Dist. LEXIS 136742 (S.D.N.Y. Aug. 1, 2024) ........ 9

*O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*,
466 B.R. 596 (Bankr. S.D.N.Y. 2012) ........ 17

*Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*,
431 B.R. 337 (Bankr. S.D.N.Y. 2010) ........ 21

*Official Comm. Of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*,
357 B.R. 32 (Bankr. S.D.N.Y. 2006) ........ 20

*Owl Creek Asia I, L.P. v. United States*,
148 Fed. Cl. 614 (2020) ........ 14

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ........ 9

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021) ........ 22, 27

*Post-Effective Date Comm. of the Estate of E. End Dev., LLC v. Amalgamated Bank (In re East End Dev., LLC)*,
2017 Bankr. LEXIS 949 (Bankr. E.D.N.Y. Apr. 4, 2017) ........ 9

*Sama v. Mullaney (In re Wonderwork, Inc.)*,
611 B.R. 169 (Bankr. S.D.N.Y. 2020) ........ 21

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ........ 24

*Spizz v. Eluz (In re Ampal-American Isr. Corp.)*,
543 B.R. 464 (Bankr. S.D.N.Y. 2016) ........ 17

*Staehr v. Hartford Fin. Servs. Grp.*,
547 F.3d 406 (2d Cir. 2008) ........ 29

*Stein v. Immelt*,
472 F. App'x 64 (2d Cir. 2012) ........ 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........ 9

*Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*,
490 B.R. 84 (Bankr. S.D.N.Y. 2013) ........ 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 8

Fed. R. Civ. P. 9(b) ........ 24

**Statutes**

11 U.S.C. § 547 ........ 18, 19

11 U.S.C. § 548 ........ 22, 26

11 U.S.C. § 550 ........ 22, 26, 28

Colombian Law 222 of 1995, Art. 23. ........ 15

Defendants Gramercy Funds Management LLC ("GFM"), GCS Colombia Finance LLC ("GCS"), Gramercy Colombia Consumer Lending Holdings LLC ("Gramercy Colombia"), and Gustavo Ferraro (collectively, all four as the "Gramercy Defendants") respectfully submit this memorandum of law in support of their motion to dismiss (the "Motion") the claims asserted against them in the adversary complaint ("Complaint") filed by Plaintiff Salvatore LaMonica, the Chapter 7 trustee (the "Trustee") of Credivalores – Crediservicios S.A. ("Credivalores" or the "Debtor"). The Gramercy Defendants bring this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), as made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and request that the Court dismiss the First, Second, Third, and Sixth Claims for Relief for the reasons discussed below.

## INTRODUCTION

Based on poorly pled legal theories that are rife with improper group-pleading, conclusory allegations, and a cherry-picked recitation of the factual record, the Trustee seeks to unwind, and sue the directors who approved, ordinary course financing transactions that *injected* millions of dollars of liquidity into the Debtor prior to and during its chapter 11 proceedings. The fact that the Debtor routinely engaged in such transactions and would continue to do so was disclosed to this Court, and nothing about the challenged transactions was improper or requires they be unwound. The Complaint fails to adequately allege any claims against the Gramercy Defendants, requiring dismissal of those claims for the following reasons.

***Gramercy Funds Management LLC owed no fiduciary duties to the Debtor.*** Fiduciary duties are typically owed to a debtor in possession only by its directors, officers, and any professionals hired by the estate. Only rarely do courts impose fiduciary duties on third parties, and only then based on a strong showing that they had majority voting control or de facto control over the company, and that they actually exercised that control. The Complaint's allegation that

GFM “controlled” the Debtor and assumed fiduciary duties toward the estate lacks any legal or factual basis and asks this Court to significantly expand recognition of fiduciary duties to distant third parties. GFM was an adviser to funds that owned interests in a *minority* shareholder of the Debtor, as well as to funds that extended loans to the Debtor. Neither GFM nor the funds it advised are alleged to have had majority voting control or de facto control of the Debtor. The Gramercy Defendants are aware of no case in which a court has imposed fiduciary duties on a minority shareholder, let alone upon a fund adviser to investors that indirectly held interests in a minority shareholder, on a control theory like the one asserted here. Nor does the Complaint plausibly plead a “collective control” theory against GFM and unaffiliated fund advisers, instead pleading only that directors they each appointed voted the same way on Board decisions. Absent an agreement among holders of a majority of the company’s shares to collectively exercise such control, there is no precedent for imposition of such duties. GFM’s duties were owed to its fund clients, not to the Debtor. *See Argument, Section I*.

***Gustavo Ferraro is not plausibly alleged to have breached his fiduciary duties as a director of the Debtor.*** The Complaint’s theory is that Mr. Ferraro (and other directors) breached their fiduciary duties by voting to approve the challenged transactions because each director’s employer might indirectly benefit, which might affect the directors’ compensation. But the Complaint contains no well-pled facts supporting a claim that Mr. Ferraro was personally conflicted, that he violated his fiduciary duties to the Debtor, or that his compensation depended in any way upon the transaction approvals. Taking the Complaint’s allegations at face value, the transaction approvals fall well within the Board’s exercise of its business judgment to obtain financing via loan portfolio sales in the regular course of business. *See Argument, Section II*.

***Neither GCS nor Gramercy Colombia received any preference from the Debtor.*** The Complaint seeks to unwind as a preference under § 547(b) GCS's pre-petition receipt of approximately $1.185 million. But the payment to GCS did not come from the Debtor, it came from Finanza Inversiones S.A. ("Finanza") and was in partial paydown of an outstanding shareholder loan from GCS and other lenders to Finanza. The Trustee's allegation that the funds *should have been paid to the Debtor* does not state a preference claim against GCS. Even more implausibly, the Trustee alleges that a $50,000 fee payment to a law firm should be unwound as a preference to Gramercy Colombia, even though Gramercy Colombia did not receive the payment. *See Argument, Section III*.

***No fraudulent conveyance claim is properly pleaded against GCS.*** The Complaint also alleges that the same $1.185 million payment to GCS is a fraudulent conveyance under § 548. But that claim fails for numerous reasons too, including the same threshold reason the preference claim fails—GCS received no transfer of Debtor property. In addition, because the § 548 claim against GCS is premised on an *actual fraud* theory, it must be pled to the demanding Rule 9(b) standard, but wholly fails to do so, weakly invoking vaguely asserted "badges of fraud" that demonstrate no such thing. *See Argument, Section IV*.

***The Trustee's recovery claims against GCS and Gramercy Colombia independently fail.*** Invoking § 550, the Complaint seeks recovery of any transfers that are avoided under §§ 547 and 548, but in doing so the Trustee acknowledges that his claims against GCS are, at best, on the basis that it was a *subsequent transferee*, thereby confirming that it is not a proper defendant on the underlying §§ 547 and 548 claims. And even if the underlying claims survive against the immediate transferees, the Trustee's § 550 recovery claims against GCS and Gramercy Colombia independently fail because neither of them is alleged to have asserted the necessary dominion and

control over the payments, and Gramercy Colombia did not even receive the payment on which the Trustee seeks recovery. *See Argument, Section V*.

The claims against the Gramercy Defendants should be dismissed for these reasons and the additional reasons discussed below.

## STATEMENT OF FACTS[1]

### A. The Gramercy Defendants

Defendant GFM is an SEC-registered investment adviser organized under Delaware law. Compl. ¶ 10. Private funds managed by GFM indirectly own Lacrot Inversiones 2014 S.L.U ("Lacrot"), which held an approximately 42% equity interest in the Debtor. *Id.* ¶¶ 28–29; *see also* Bankruptcy Petition at 21, Main Case, ECF No. 1 ("Pet.").[2] Defendant GCS is a Delaware entity, formed to lend money to the Debtor alongside other lenders, via a loan to Finanza. Compl. ¶ 11. Defendant Gramercy Colombia is a Delaware entity that extended a loan to one of the Debtor's portfolio asset trusts. *Id.* ¶ 12. Defendant Gustavo Ferraro, a GFM partner, served as a director on Credivalores's Board and was appointed by GFM. *Id.* ¶ 13.

### B. The Other Defendants

The other defendants include GDA Luma Capital Management, LP ("GDA Luma"), Davalia Gestion de Activos S.L. ("Davalia"), and Luis Blaquier (collectively, the "GDA Luma Defendants") and Defendants ACON Investments Management, LLC ("ACON"), ACON Colombia Finance II, LLC ("ACON II"), and José Miguel Knoell (collectively, the "ACON Defendants"). *Id.* ¶¶ 15–22. GDA Luma and ACON are investment advisers, Davalia and ACON

---

[1] Solely for purposes of this Motion, well-pleaded facts alleged in the Complaint are taken as true. The Gramercy Defendants do not concede the accuracy of any of the Complaint's allegations.

[2] References to docket entries from the above-captioned adversary proceeding, No. 26-01063 (DSJ), will be to "ECF No. __." References to the main bankruptcy docket, *In re Credivalores-Crediservicios, S.A.*, No. 24-10837 (DSJ) (Bankr. S.D.N.Y.), will be to "Main Case, ECF No. __."

II are special purpose investment entities, and Messrs. Blaquier and Knoell were members of the Credivalores Board, appointed by GDA Luma and ACON, respectively. *Id.*

Defendant Bancien S.A. aka Ban100 S.A. ("Ban100") is a Colombian bank that is wholly owned by Finanza. *Id.* ¶¶ 23–24. Finanza's equity owners overlap with the Debtor's equity owners. *Id.* ¶ 30.

**C. The Debtor**

Historically, Credivalores was a non-bank financial institution that provided payroll loans and credit cards to Colombian individuals. *Id.* ¶ 31. Because it was not a depository institution, it raised capital by settling trusts (*patrimonios autónomos*) with portfolios of its payroll loans and credit card obligations; the trusts borrowed funds from lenders secured by those assets, and Credivalores retained a residual interest. *Id.* ¶ 32. In the ordinary course, Credivalores regularly sold payroll loan portfolios to several third parties, including to Ban100. *Id.* ¶ 40. In August 2023, Credivalores sold its credit card business to Ban100. *Id.* ¶¶ 36, 41.

Credivalores had four shareholders: Lacrot (42%), Davalia (20%), ACON Consumer S.L. and ACON Columbia Holdings S.L. (15%) and Crediholding S.A.S. (20%).[3] *Id.* ¶ 28; Pet. at 21. These shareholders also beneficially owned Ban100 (through Finanza) in similar proportions. *Id.* ¶ 30.

**D. The Shareholder Loan**

On October 25, 2022, GCS, Davalia, GDA Luma Special Opportunities Warehouse, LLC, and ACON II (the "Shareholder Lenders") extended a $20 million term loan to Finanza as borrower, with the Debtor as guarantor, and Acquiom Agency Services, LLC ("Acquiom") as

[3] Approximately 3% of the Debtor's shares are treasury shares.

administrative agent (the "Shareholder Loan"). *Id.* ¶¶ 43–44. Finanza re-loaned the funds to the Debtor. *Id.* ¶ 44.

The Shareholder Loan was amended in February 2023, with the Shareholder Lenders each extending an additional $5 million, and again in March 2023 by an additional $3.33 million per lender, again through Finanza. *See id.* ¶¶ 47–48. In connection with those amendments, the Debtor granted security interests in its residual interests in two *patrimonios autónomos* trusts: (1) Citibank Colombia as lender holding portfolios of payroll loans (the "Citibank Trust"); and (2) UBS O'Connor and Gramercy Colombia as lenders that funded credit card debt (the "UBS Gramercy Trust"). *Id.* ¶ 49.

The Shareholder Loan matured in November 2023, and the parties entered into a forbearance agreement in January 2024. *Id.* ¶ 53.

**E. The Offering Memorandum and the Forbearance Agreements**

On March 7, 2024, the Debtor issued an Offering Memorandum soliciting bondholder votes on a prepackaged chapter 11 plan of reorganization. *Id.* ¶ 2; *see* Offering Memorandum, Main Case ECF No. 18 ("Offering Mem.") (cited in Compl. ¶¶ 2, 55). Also on March 7, 2024, the Shareholder Lenders entered into an amended and restated forbearance agreement on the Shareholder Loan, requiring the Debtor to make payments totaling approximately $8.7 million through May 2024. Compl. ¶¶ 4, 56. Further, in accordance with the terms of the Shareholder Loan, Finanza agreed to pay over $1 million in legal fees that the Shareholder Lenders had incurred in connection with the forbearance agreement. *Id.* ¶ 57.

The Debtor also entered into a forbearance agreement with respect to the loan to the UBS Gramercy Trust, and the Debtor agreed to pay the lenders' legal fees of $50,000 to Latham & Watkins. *Id.* ¶ 58.

The Offering Memorandum disclosed the existence and terms of these forbearance agreements. *See* Offering Mem. at A-49–A-50. The Debtor's Bondholders voted to accept the plan over the following four weeks. Compl. ¶¶ 59–60.

**F. The Prepetition April 2024 Transaction**

At an April 29, 2024 Board meeting—prior to the petition date—the Board authorized a transfer of payroll loan portfolios from the Citibank Trust to Ban100 in exchange for a "sales premium" of $2,745,386.16. *Id.* ¶ 62. Ban100 paid the $2.745 million sum to Finanza, which in turn paid the same sum to Acquiom as Shareholder Loan administrative agent to be applied to the Shareholder Loan. Compl. ¶¶ 62, 65. On May 8, 2024, Acquiom distributed funds to the Shareholder Lenders, including $1,185,507.66 to GCS. *Id.* ¶ 66. At the same meeting, the Board approved an amendment to the forbearance agreement, deferring the remaining payment obligations until conclusion of the Chapter 11 case. *Id.* ¶ 67.

**G. Bankruptcy Proceedings in the U.S. and Colombia**

On May 16, 2024, Credivalores commenced its prepackaged chapter 11 case, with the goal of restructuring its unsecured bonds. *Id.* ¶¶ 2, 69. In its first-day filings, the Debtor disclosed the existence of the Shareholder Loan forbearance agreements, and described the Debtor's ongoing, ordinary-course sales of payroll loan portfolios to Ban100. *Id.* ¶¶ 75–76; *see also* First Day Declaration, Main Case ECF No. 4 ("First Day Decl.") ¶¶ 24, 50–51 & Schedule I. On July 2, 2024, the Court confirmed the chapter 11 plan. Compl. ¶ 2.

During the pendency of the chapter 11 proceedings, Credivalores continued its ordinary-course payroll loan portfolio sales to Ban100, as described in the First Day Declaration and authorized under this Court's Cash Management Order. *See* Final Cash Management Order, Main Case ECF No. 70 ("Cash Management Order"). This was the principal way in which the Debtor

continued to finance its business. Specifically, the Debtor sold payroll loan portfolios to Ban100 on the following dates and for the following amounts:

- June 27, 2024: COP$3.8 billion (approximately USD$1 million). Compl. ¶ 79.
- July 30, 2024: COP$32 billion (approximately USD$7.8 million). *Id.* ¶ 83.
- July 31, 2024: COP$48.7 billion (approximately USD$12 million). *Id.* ¶ 87.

Despite confirmation of the chapter 11 plan of reorganization, the plan did not go effective due to creditor-initiated proceedings in Colombia. On July 7, 2025, the chapter 11 case was converted to chapter 7 and this Court appointed Salvatore LaMonica as chapter 7 trustee. *See* Order Converting Chapter 11 Case, Main Case ECF No. 198.

In the interim, on August 30, 2024, the Debtor also filed an application for an order for relief before the Superintendent of Companies in Colombia, which functions as the Colombian bankruptcy court. Compl. ¶ 89. The Colombian insolvency proceedings are ongoing.

## **LEGAL STANDARD**

A complaint must be dismissed under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must show that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of a cause of action will not do." *Id.* While a plaintiff need not prove its factual allegations at the motion to dismiss stage, the complaint's allegations must at least "raise a reasonable expectation that discovery will reveal liability, including in the inferences that it asks the court to make." *Halperin v. Morgan Stanley Inv. Mgmt. (In re Tops Holding II Corp.)*, 646 B.R. 617, 646 (Bankr. S.D.N.Y. 2022) (citing *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 717 (2d Cir. 2012)).

"Courts must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may take judicial notice of documents in the public record, including judicial documents and court records filed on dockets of other cases. *See In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); Fed. R. Evid. 201. The Court may also consider any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effects.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Affirmative defenses may be raised "by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

## ARGUMENT

### I. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST GFM (FIRST CLAIM)

The Trustee's breach of fiduciary duty claim against GFM should be dismissed because GFM was not a director or officer of the Debtor, and the Trustee's theory that GFM controlled and thereby assumed fiduciary duties toward the Debtor is legally and factually unsupported. A claim for breach of fiduciary duty "requires (1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages." *Nuveen Servs., LLC v. Fuller*, 2024 U.S. Dist. LEXIS 136742, at *37 (S.D.N.Y. Aug. 1, 2024); *Post-Effective Date Comm. of the Estate of E. End Dev., LLC v. Amalgamated Bank (In re East End Dev., LLC)*, 2017 Bankr. LEXIS 949, at *18 (Bankr. E.D.N.Y. Apr. 4, 2017) (same). The Complaint fails on its face to satisfy the first

element—that GFM owed fiduciary duties to the Debtor—either based on alleged individual GFM control or collective group control with unaffiliated third parties.[4]

### A. The Complaint Fails to Plausibly Plead That GFM Owed Fiduciary Duties to the Debtor

Fiduciary duties are typically owed to a corporation only by its directors and officers. *See Gully v. NCUA Bd.*, 341 F.3d 155, 165 (2d Cir. 2003). Others may owe fiduciary duties to a corporation *only* where there is a strong showing that they exercised a high degree of control over the corporation, tantamount to majority voting control or de facto control. *See, e.g.*, *Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus.)*, 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005) ("Courts require a strong showing that the creditor assumed actual, participatory, total control of the debtor . . . Merely taking an active part in the management of the debtor corporation does not automatically constitute control."); *Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302, 1306 (S.D.N.Y. 1989) (Control persons include "those persons who exercise de facto control of the corporation during the relevant times."); *Lamonica v. Tilton (In re TransCare Corp.)*, 602 B.R. 234, 246–47 (Bankr. S.D.N.Y. 2019) ("To show that the requisite degree of control exists generally, a plaintiff may establish that a defendant or group of defendants exercised sufficient influence 'that they, as a practical matter, are no differently situated than if they had majority voting control' of the corporation.").

The Gramercy Defendants are aware of no case in which fiduciary duties were imposed on a non-director/officer situated similarly to GFM, and the standard articulated in the case law makes clear that there is no proper basis to impose such a duty on GFM here. The Complaint includes no allegation that GFM had majority voting control or de facto control of the Debtor. To the

[4] There is also no basis for the Complaint's allegations of a breach by GFM, or any resulting damages, but the Court need not reach either of these elements to dismiss the claim against GFM.

contrary, the Complaint acknowledges that GFM was not even a shareholder of the Debtor. Nor is there room for any inference that GFM controlled the Debtor indirectly through affiliates, as the Complaint affirmatively pleads that *no Gramercy-affiliated entity* held majority voting control of the Debtor. Compl. ¶¶ 28–29 (alleging that "Gramercy held its equity interest through [Lacrot]" which held a 42% interest in the Debtor). Even taking at face value the Complaint's contention that "all decisions [by Lacrot] were controlled entirely by [GFM]," *id.* ¶ 29, this at most alleges that GFM controlled Lacrot. But Lacrot's minority shareholding in the Debtor precludes any conclusion that GFM controlled the Debtor.

The Complaint also fails to plead sufficient facts to show that GFM *actually exercised control* over the Debtor. *See In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128, at *360 (Bankr. S.D.N.Y. Aug. 8, 2020) ("[T]o be deemed a controlling stockholder for purposes of imposing fiduciary obligations, the plaintiff must establish the *actual exercise* of control over the corporation's conduct by that otherwise minority stockholder."). New York courts have recognized that "generally, one who controls the debtor's day-to-day financial, personnel and business operations is a 'person in control.'" *Grumman Olson Indus.*, 329 B.R. at 428 (collecting cases). Examples of acts that reflect a "person in control" include directing and managing the debtor's financial affairs, determining which creditors will be paid and in what amounts, determining the location of the debtor's business operations, establishing administrative procedures, control over the debtor's voting stock, personnel decisions, contract decisions, production schedules, or accounts payable. *Id.* But the Complaint pleads no facts demonstrating that GFM exercised such control over the Debtor, which had its own management team.[5]

[5] *See* First Day Decl. ¶ 93 & Schedule 6 (identifying the "Debtor's existing senior management, including their tenure with the Debtor and a brief summary of their relevant responsibilities and experience.").

The Complaint alleges only that GFM appointed Gustavo Ferraro and Trujillo Sanchez to the Debtor's Board, Compl. ¶¶ 10, 13–14, and that Ferraro "regularly confer[red]" with Robert Koenigsberger, GFM's Chief Investment Officer, about material Debtor decisions. *Id.* ¶ 34. But appointing directors and discussing the Debtor's business with those directors is normal-course corporate governance, not the kind of exceptional circumstances that would warrant an extraordinary imposition of fiduciary duties upon GFM. The Complaint likewise does not allege that GFM directed Ferraro how to vote on any specific transaction, or that GFM had veto or blocking rights over the Debtor's Board (it did not). At most, the Complaint alleges that Ferraro "consulted" with his employer, *id.* ¶ 34, and that GFM "earn[ed] management/advisory fees on account of their funds' investments in Ban 100." *Id.* ¶ 97. A fund adviser's employee consulting with it about the fund's equity investment, and the adviser earning management fees, are ordinary course incidents of a fund investment—not evidence of GFM control. None of this plausibly supports the Trustee's conclusory allegation that GFM controlled the Debtor.

Alternatively, any theory by the Trustee that GFM assumed Ferraro's fiduciary duties by appointing him to the board is equally without merit. No basis exists in respondeat superior or any analogous doctrine to impute a director's fiduciary obligations to the investment advisor that appointed him. *See Glob. Crossing Est. Representative v. Winnick*, 2006 U.S. Dist. LEXIS 53785, at *74 (S.D.N.Y. Aug. 3, 2006) (declining to adopt "such a novel and expansive conception of New York fiduciary duty law" where "the majority of courts to address the issue have rejected it" and "the only courts to address the policy implications of such an expansion urge caution"). As courts have warned, "[t]he notion that a stockholder could become a fiduciary by attribution (analogous to the result under the tort law doctrine of respondeat superior) would work an unprecedented change in [Delaware] law, and would give investors in a corporation reason for

second thoughts about seeking representation on the corporation's board of directors." *Id.* (citing *U.S. Airways Grp., Inc. v. British Airways PLC*, 989 F. Supp. 482, 494 (S.D.N.Y. 1994)). The Trustee's breach of fiduciary duty claim against GFM based on Ferraro's conduct as an appointed director should therefore be dismissed.

### B. The Complaint Fails to Plausibly Plead A Collective Control Theory as to GFM and Other Defendants

Presumably recognizing the infirmity of its GFM-as-fiduciary theory, the Complaint vaguely contends that GFM and two unaffiliated entities—GDA Luma and ACON—"*together* exercised actual control of the Debtor's business affairs" and should be collectively deemed to owe fiduciary duties to the Debtor. *Id.* ¶ 100 (emphasis added). Such a collective control theory is equally unsupported by case law and is devoid of any well-pleaded factual allegations.

In rare instances, New York courts have entertained a control group fiduciary duty theory where "a number of shareholders, each of whom individually cannot exert control over the corporation . . . can collectively form a control group . . . by contract, common ownership, agreement, or other arrangement." *Augenbaum v. Anson Invs. Master Fund LP*, 2024 U.S. Dist. LEXIS 12791, at *15 (S.D.N.Y. Jan. 24, 2024). In *Augenbaum*, the court found the plaintiff's pleading sufficient based on allegations that a group of shareholders entered into a joint agreement concerning their "acquiring, holding, voting or disposing of" certain stock, including appointing a single lead investor to negotiate and oversee the deal. *Id.* *18. By contrast, the Complaint here contains no similar allegations of any agreement, contract, or other arrangement between GFM, GDA Luma, and ACON (which lack common ownership) to collectively exercise control over the Debtor. *See Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012) ("[*E*]*very* allegation in the Amended Complaint . . . regarding [the bank employee's] fiduciary duty is either conclusory or

entirely derivative of [the bank's] duty. . . . Such derivative allegations are legally insufficient to state a claim for breach of fiduciary duty against [the bank employee].").

Nor is it sufficient for the Trustee to allege that directors appointed by the fund advisers to the Debtors' shareholders voted the same way on Board matters. *See* Compl. ¶ 34 (alleging that GFM, GDA Luma and ACON "caused their respective directors to vote for all of the Board decisions."). If that were the standard for imposition of fiduciary duties on third parties—which it is not—then it would be repeatedly triggered when directors agree on corporate strategy. Courts do not impose fiduciary duties on third parties based on allegations of board harmony that at most reflect aligned corporate interests, and this Court should not do so here.[6]

## II. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST FERRARO (FIRST CLAIM)

The Trustee's claim that Gustavo Ferraro breached pre-petition fiduciary duties under Colombian law and post-petition fiduciary duties to the chapter 11 estate under federal common law must also be dismissed because the Trustee fails to adequately plead any breach. The Complaint's imprecise allegations, which commingle different duties, time periods, governing laws, and transactions, appear to boil down to the following:

- Ferraro, as one of the Debtor's post-petition directors, breached his "fiduciary duty to preserve estate property under Federal law, ***to the extent*** that [he] approved payroll loan portfolio sales to Ban100 without adequate consideration, or without consideration at all, and by ratifying the February 9, 2024 payroll loan portfolio sale," *id.* ¶ 96 (emphasis added);

- Ferraro and the other Defendant Directors breached their federal common law fiduciary duty of loyalty in approving all post-petition payroll loan portfolio

[6] *See, e.g.*, *Owl Creek Asia I, L.P. v. United States*, 148 Fed. Cl. 614, 639 (2020) ("The court is not persuaded that a control group composed of two entities, neither of which was bound by the fiduciary duty posited by plaintiffs, would be bound by a fiduciary duty simply because the entities are alleged to have worked in concert against the interests of the other shareholders of the Enterprises.").

transactions, and "to the extent that they authorized . . . payments for purported operating costs," *id.* ¶ 97; and

- Ferraro, as one of the Debtor's prepetition directors, breached his fiduciary duties of care/prudence and loyalty under Colombian law in authorizing the prepetition transfer of $2.745 million to Finanza to pay down the Shareholder Loan, *id.* ¶¶ 98–99.

Under federal common law, the estate fiduciary duty of loyalty "include[s] an obligation to refrain from self-dealing, to avoid conflicts of interest and the appearance of impropriety, to treat all parties to the case fairly and to maximize the value of the estate." *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 361–62 (Bankr. S.D.N.Y. 2001); *see also CFTC v. Weintraub*, 471 U.S. 343, 355 (1985) (noting that directors of a debtor in possession "bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."). A claim for breach of the duty of loyalty must show that the fiduciary: (1) was interested in the transaction, (2) lacked independence, or (3) acted in bad faith. *Halperin*, 646 B.R. at 698.

Colombian law[7] requires that a fiduciary act "in good faith, with loyalty, and with the diligence of a prudent businessperson" and must avoid acting with conflicts of interest. *See* Colombian Law 222 of 1995, Art. 23.[8]

---

[7] The Gramercy Defendants do not concede the application of Colombian law to the breach of fiduciary duty claims asserted here. The Trustee bears the burden of proving the content of Colombian Law under Rule 44.1 and has not adequately done so in the Complaint.

[8] Art. 23 provides: "Los administradores deben obrar de buena fe, con lealtad y con la diligencia de un buen hombre de negocios. Sus actuaciones se cumplirán en interés de la sociedad, teniendo en cuenta los intereses de sus asociados," which translates to: "Directors must act in good faith, with loyalty, and with the diligence of a prudent businessperson. Their actions shall be carried out in the interest of the company, taking into account the interests of its shareholders." Art. 23(7) provides: "Abstenerse de participar por sí o por interpuesta persona en interés personal o de terceros, en actividades que impliquen competencia con la sociedad o en actos respecto de los cuales exista conflicto de intereses, salvo autorización expresa de la junta de socios o asamblea general de accionistas," which translates to: "Refrain from participating—whether personally or through an intermediary, and for their own benefit or that of third parties—in activities that compete with the company or in acts involving a conflict of interest, unless expressly authorized by the board of partners or the general meeting of shareholders."

The Trustee's theory that Ferraro breached his duty of loyalty to the Debtor rests on the insufficient premise that Ferraro was conflicted because he is employed by GFM. The Complaint alleges that GFM held an "equity interest[] in Ban100" (which the Complaint itself reveals to be incorrect, as GFM is an investment manager that did not hold any equity interest in Ban100); that GFM appointed Ferraro to the Debtor's Board, and that "the performance of [GFM-advised funds'] investments in Ban100 has a material effect on [Ferraro's] personal compensation," Compl. ¶ 97. This fails as a matter of law to adequately plead a breach of fiduciary duty.

*First*, the Complaint is devoid of any allegations connecting GFM's investment manager role on Credivalores investments to Ferraro's compensation. It does not allege how Ferraro's compensation was determined or how his discharge of his director responsibilities bore any relationship to his compensation. That omission is fatal. *See, e.g.*, *Halperin*, 646 B.R. at 706–07 (noting that courts dismiss claims that fail to allege specific details about a director's financial interest). Even if Ferraro received some financial benefit from his role as a director of the Debtor, that is insufficient. The Complaint must plead that Ferraro received a direct financial benefit from the challenged transactions, and it does not. *See Stein v. Immelt*, 472 F. App'x 64, 66 (2d Cir. 2012) ("The test for self-interestedness is not whether a director or someone who controls him has engaged in or is liable for some sort of misconduct, but whether he will 'receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally.'" (citation omitted)). The filings in this case confirm that the Debtor's directors, including Ferraro, approved the transactions to provide liquidity to the Debtor, not for personal benefit. *See* Offering Mem. at A-74; Cash Management Motion ¶ 41, Main Case ECF No. 6.

*Second*, the Complaint fails to plead that Ferraro lacked independence. A plaintiff must allege facts showing that a director was "beholden to the controlling person" or "so under the

influence that their discretion would be sterilized." *Halperin*, 646 B.R. at 708 (citation omitted). The Complaint alleges nothing of the sort. The Trustee's sole factual allegation is that "Ferraro is a partner at [GFM] who served as a director on the Board, and who was appointed to the Board by [GFM]," Compl. ¶ 13, but "a mere outside business relationship, standing alone, [is] insufficient to raise a reasonable doubt about a director's independence." *Halperin*, 646 B.R. at 708 (citations omitted). Beyond that, the Trustee resorts to precisely what the law forbids: "[c]onclusory references to dominated and controlled directors." *Id.* The only remaining allegation—that "Mr. Ferraro would regularly confer with Robert Koenigsberger, the founder and Chief Investment Officer of [GFM] about material business decisions for the Debtor," Compl. ¶ 34—identifies no specific business decision, alleges no instance in which Koenigsberger overrode or sterilized Ferraro's judgment, and amounts to nothing more than routine communication between a director and his employer. The Complaint's threadbare allegations cannot be stretched into a plausible claim that Ferraro did not independently evaluate the challenged transactions on their corporate merits.

*Lastly*, the Complaint contains no allegations—not even a passing reference—that Ferraro acted in bad faith. Bad faith requires a director to have intentionally acted with a purpose other than advancing the corporation's best interest, acted to violate applicable law, or failed to act in the face of a known duty to act, thereby showing conscious disregard for his duties. *See O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, 466 B.R. 596, 604 (Bankr. S.D.N.Y. 2012). The Complaint pleads none of these elements. It does not allege any improper purpose, identify any law Ferraro knowingly violated, or assert that he consciously disregarded any duty. That failure is dispositive. *See Spizz v. Eluz (In re Ampal-American Isr. Corp.)*, 543 B.R. 464, 475–76 (Bankr. S.D.N.Y. 2016) (holding that merely labeling conduct "bad faith" without alleging improper

purpose or conscious disregard with specificity is insufficient); *Halperin*, 646 B.R. at 712 (dismissing bad faith claim where the pleading failed to support an inference that directors knew or recklessly disregarded insolvency when approving challenged distributions). This requires dismissal of the claim against Ferraro.

The Trustee's breach of the duty of care theory fares no better. The sole supporting allegation in the complaint that Ferraro and the other directors breached such a duty is that there "was no valid business reason or need to approve" the $2.745 million transfer at the April 29, 2024 board meeting. Compl. ¶ 98. But the Complaint is devoid of any factual allegations suggesting that this vote was anything other than a legitimate exercise of business judgment by Credivalores' directors.

## III. THE COMPLAINT FAILS TO PLEAD A § 547 PREFERENCE CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SECOND CLAIM)

To state a preference claim under 11 U.S.C. § 547(b), the Trustee must plead that the Debtor made a "transfer of an interest of the debtor in property" (1) "to or for the benefit of a creditor," (2) "for or on account of an antecedent debt owed by the debtor before such transfer was made," (3) "made while the debtor was insolvent," (4) within 90 days before the petition date (or one year for insiders), and (5) that the transfer enabled the creditor "to receive more than such creditor would receive" in a hypothetical Chapter 7 liquidation. 11 U.S.C. § 547(b)(1)–(5). The Complaint fails to satisfy several of these elements as to both GCS and Gramercy Colombia.

### A. The Complaint Fails to Plead a "Transfer of An Interest of the Debtor in Property" to GCS

Section 547(b) requires that the challenged transfer be of "an interest of the debtor in property." 11 U.S.C. § 547(b). But the Complaint does not—and cannot—allege that the Debtor transferred property directly to GCS. Instead, the Complaint describes multiple transfers that were increasingly remote from the Debtor and that each reflected independent contractual relationships:

(1) the Debtor transferred payroll loans to Ban100, which agreed to pay a "sales premium" of $2.745 million (Compl. ¶ 62); (2) instead of paying the premium to the Debtor, Ban100 paid it to Finanza (*id*. ¶¶ 62–63); (3) Finanza then paid the same amount to the Shareholder Loan administrative agent, Acquiom, to be applied to the Shareholder Loan (*id*. ¶ 65); and (4) Acquiom distributed $1,185,507.66 to GCS, along with distributions to ACON II and Davalia (*id*. ¶ 66). At no time did the Debtor transfer property directly to GCS.

Once the Debtor parted with its assets in the portfolio sale to Ban100, and certainly once the sales premium was paid to Finanza, the Debtor's property interest was extinguished. *See Begier v. IRS*, 496 U.S. 53, 58 (1990) ("The reach of § 547(b)'s avoidance power is therefore limited to transfers of 'property of the debtor.' . . . [the] property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."). What GCS received was not a payment from the Debtor or any interest in Debtor property—it was a payment from Acquiom on Finanza's debt under the Shareholder Loan. Accordingly, the § 547(b) property-of-the-debtor requirement is not satisfied, and the preference claim against GCS must be dismissed.

### B. The Payment to GCS Was on Account of Finanza's Debt, Not the Debtor's Antecedent Debt

Section 547(b)(2) requires that the transfer be "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). As the Complaint makes clear, the Shareholder Loan was structured with Finanza as borrower and the Debtor as guarantor. *See* Compl. ¶ 44. The $2.745 million payment to the Shareholder Loan administrative agent and then to the Shareholder Lenders was applied to reduce Finanza's primary obligation under the Shareholder Loan, not a debt owed by the Debtor. *See id.* ¶¶ 65–66. The Complaint does not allege that the Debtor's guaranty had been called upon, that the Debtor had defaulted on

its guaranty obligation, or that the Shareholder Lenders had demanded payment from the Debtor under the guaranty. Accordingly, the payment presumptively satisfied Finanza's primary debt, not the Debtor's contingent guarantee, and is not avoidable as a preference. *See Official Comm. Of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 48 (Bankr. S.D.N.Y. 2006) (payment on account of a third party's debt, rather than the debtor's own antecedent debt, is not avoidable as a preference).

**C. The Complaint Fails to Plead a Preference Payment to Gramercy Colombia**

The Complaint's preference claim against Gramercy Colombia is based solely upon the Debtor's March 15, 2024 payment of $50,000 to Latham & Watkins for "legal fees of the lenders including Gramercy Colombia." *See* Compl. ¶ 58. This does not state a preference payment to Gramercy Colombia, because the $50,000 was paid to Latham & Watkins. *Id*. And if the Trustee's theory is that the payment was made "for the benefit of" Gramercy Colombia, the Complaint's sleight-of-hand reference to the payment satisfying the obligations of "lenders *including Gramercy Colombia*" is legally deficient because it does not identify what portion of the $50,000 was supposedly attributable to Gramercy Colombia as opposed to the other lenders. *Id*.

The Complaint also fails to adequately plead that Gramercy Colombia was a creditor of the Debtor at the time of the payment, which rests solely on the bare allegation that "the Debtor had guaranteed its loan to the UBS Gramercy Trust." *Id*. ¶ 107. The Complaint does not allege that the Debtor's guaranty had been called upon, that the Debtor had defaulted on the guaranty, or even that Gramercy Colombia had demanded payment under the guaranty. Other than reciting the statutory language (*id*. ¶ 108), the Complaint does not allege that the Latham & Watkins payment was "on account of" the Debtor's guaranty obligation. Each of these deficiencies requires dismissal of the preference claim against Gramercy Colombia.

### D. The Complaint Fails to Adequately Plead the "Greater Than in Chapter 7" Element

Section 547(b)(5) requires the Trustee to plead that the transfer "enables [the] creditor to receive more than such creditor would receive" in a hypothetical Chapter 7 liquidation, meaning the trustee must allege facts demonstrating that "there are creditors in the same class that would receive less than 100% of their claims from the bankruptcy estate." *Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 102 (Bankr. S.D.N.Y. 2013). A trustee "[o]rdinarily . . . satisfies this prong . . . by showing that the debtor was insolvent on the petition date," but that "assumes that the defendant received 100% of his claim as a result of the preference." *Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 213-14 (Bankr. S.D.N.Y. 2020). Where, as here, the creditor did not receive payment in full, however, insolvency alone is insufficient; the complaint must plead facts independently satisfying this element. *Id.* (holding that the complaint adequately pled this element where it alleged specific facts showing the creditor received more pre-petition than it would have in a hypothetical liquidation).

The Complaint fails to do so. Its only allegation on this element is the conclusory assertion that "[e]ach such transfer enabled the creditor to receive more than it would receive" in a Chapter 7 liquidation. *See* Compl. ¶ 110. This boilerplate recitation of the statutory language, without supporting facts, fails to state a claim. *See Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (dismissing preference claim for failure to plead the § 547(b)(5) element with adequate factual specificity).

The deficiency is particularly glaring as to GCS. The Complaint provides no facts whatsoever about what GCS would have received in a hypothetical Chapter 7 distribution—a critical omission given that the challenged $2.745 million transfer represented only 6.45% of the total outstanding loan balance. Moreover, GCS was a lender to Finanza, not directly to the Debtor.

*See* Compl. ¶ 44. The Complaint does not identify the amount of the Debtor's guaranty obligation, the universe of estate assets, GCS's priority status, or the hypothetical chapter 7 distribution. Without these factual predicates, there is no basis to conclude that the transfer enabled GCS to receive more than it would in a liquidation. As to Gramercy Colombia, the Complaint similarly fails to allege the amount of the guaranty, whether it was triggered by default, or what Gramercy Colombia's allowed claim in the Chapter 7 case would be.

## IV. THE COMPLAINT FAILS TO PLEAD A § 548 ACTUAL FRAUDULENT CONVEYANCE CLAIM AGAINST GCS (THIRD CLAIM)

The Trustee also seeks to avoid under 11 U.S.C. § 548 the same $2.745 million pre-petition "sales premium" payment from Ban100 to Finanza, and GCS's subsequent receipt of a $1.185 million payment from Acquiom. This claim fails too.[9]

### A. No Claim Lies Against GCS Under § 548 as it Did Not Receive Debtor Property

Section 548 permits a trustee to avoid a transfer of an interest of the debtor in property if other statutory requirements are met. Section 550 provides separately for the recovery of avoided transfers, authorizing a trustee to recover the transferred property from the "initial transferee" or "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). *See In re Picard*, 917 F.3d 85, 92 (2d Cir. 2019) (Section 548 "provides [the] means for trustees to avoid a debtor's transfers, and to the extent that a transfer is avoided, to recover the transferred property . . . [under] §550(a)(2) . . . from any subsequent transferee."); *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021) (distinguishing avoidance under § 548

[9] The Third Claim also seeks avoidance of a February 9, 2024 payroll loan portfolio sale by the Debtor to Ban100. Compl. ¶¶ 114–16. No Gramercy Defendant is alleged to be liable under § 548 with respect to that transaction.

from recovery under § 550). Availability of a *recovery* claim against a subsequent transferee under § 550 does not make it a proper defendant on an *avoidance* claim under § 548.

GCS is not alleged to have been a party to the $2.745 million sales premium payment the Trustee seeks to avoid, so no avoidance claim lies against GCS under § 548. Courts must "focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of [] an intentional [] fraudulent conveyance." *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 638 (Bankr. S.D.N.Y. 2007). GCS's remoteness from the challenged transfer means that the § 548 claim against it fails because the Trustee cannot establish that the $1.185 million GCS received from Acquiom was Debtor property, as § 548(a)(1) requires.

The Second Circuit is clear that in actions invoking both § 548(a)(1)(A) and § 550(a), as the Trustee does here, "it is the initial transfer that fraudulently depletes the estate," and "only the initial transfer involves fraudulent conduct, or any conduct, by the debtor." *In re Picard*, 917 F.3d at 98. "Consequently, when a trustee seeks to recover subsequently transferred property under § 550(a), the only transfer that must be avoided is the debtor's initial transfer," and thus not any subsequent transfers from Finanza to Acquiom or from Acquiom to the Shareholder Lenders including GCS. *Id.* at 98. Leaving aside whether the Trustee has a Section 550 claim against GCS as a *subsequent transferee* (*see* Compl. ¶ 134)—which requires an entirely different statutory analysis and is subject to different statutory defenses—Section 548 does not provide the Trustee with power to avoid the $1.185 million payment of non-Debtor funds that GCS received.

**B. The Trustee Fails to Plead Actual Fraud with Rule 9(b) Particularity**

The Trustee's § 548 claim against GCS and the other Shareholder Lenders invokes the "actual fraud" standard under § 548(a)(1)(A) but fails to adequately plead actual fraudulent intent. *See* Compl. ¶¶ 114, 117. Federal Rule of Civil Procedure 9(b), made applicable in adversary

proceedings by Bankruptcy Rule 7009, requires that the Trustee plead the "circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b); *Gowan v. Patriot Grp. (In re Dreier LLP)*, 452 B.R. 391, 409, 423 (Bankr. S.D.N.Y. 2011) (applying Rule 9(b) to § 548(a)(1)(A) claims); *Nisselson v. Softbank AM Corp. (In re MarketXT Hldgs,. Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) ("[A]n allegation of actual fraud must be pled with particularity," including "the actual fraudulent intent of the transferor/debtor.").

Fraudulent intent can be adequately pleaded based on either direct evidence or "badges of fraud" that sufficiently "establish the intent of the Debtor to 'hinder, delay or defraud' creditors." *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005). "[A] lack of specific allegations setting forth such badges of fraud, or otherwise implicating the defendant in intentional wrongdoing against creditors, would be fatal to a claim of intentional fraudulent conveyance." *Id.* at 808. Courts in the Second Circuit customarily consider the following non-exhaustive badges of fraud: "(1) the lack or inadequacy of consideration (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry." *Lamonica v. Tilton (In re TransCare Corp.)*, 81 F. 4th 37, 54 (2d Cir. 2023).

The Complaint's conclusory one-sentence effort to plead actual fraud falls woefully short of the Rule 9(b) standard with respect to the $1.185 million payment GCS received on its outstanding Shareholder Loan to Finanza. *See* Compl. ¶ 117. Merely parroting the statutory

standard, the Complaint asserts that the transaction "was done with intent to hinder, delay and defraud" creditors. *Id.* But it provides no details whatsoever—let alone the particularity Rule 9(b) requires—as to *who* formed such intent; *what* actions demonstrate such intent; *how* such intent was manifested in the challenged transfer; and *who* the participants intended to defraud. The Complaint does not even say whether the fraudulent intent was on the part of the Debtor, the Shareholder Lenders including GCS, or any of the other alleged transfer participants, including Ban100, Finanza, and Acquiom. Such imprecise and vague allegations of fraudulent intent require dismissal. *See, e.g.*, *Nisselson*, 361 B.R. at 397 (dismissing actual fraud claims for failure to adequately plead intent to defraud creditors); *Mendelsohn v. Dole Fresh Fruit Co. (In re Barnett Corp.)*, 2026 Bankr. LEXIS 387, at *8 (Bankr. E.D.N.Y. Feb. 13, 2026) (same).

The Complaint's "badges of fraud" allegations are equally deficient, weakly alleging that "the transfer was to an insider, it was not disclosed in the Debtor's bankruptcy filings and the Debtor was insolvent." Compl. ¶ 117. As to the first alleged badge of fraud, the Complaint does not even identify *which* alleged transferee was an "insider"—Ban100 as transferee of the loan portfolio; Finanza as recipient of funds from Ban100; the Shareholder Loan administrative agent; or the Shareholder Lenders. As to the second alleged badge of fraud, the fact that this specific transaction was not disclosed in the Debtor's bankruptcy filings is not evidence of fraudulent intent in light of the fact that the Debtor disclosed in its First Day Declaration and in its Cash Management Motion that it was continuing to enter into related party transactions including portfolio loan transfers to Ban100. *See* First Day Decl. ¶ 50; Cash Management Motion ¶ 41, Main Case ECF No. 6. And as to the third alleged badge of fraud, assuming the Debtor's insolvency solely for purposes of this motion, that is not sufficient to demonstrate fraudulent intent—otherwise that would be true of every pre-petition transaction by an insolvent debtor. Set against

these weak and vaguely pleaded "badges of fraud," the Complaint itself acknowledges that the payments to the Shareholder Lenders reduced (by a small amount) a large outstanding pre-existing loan to Finanza; that the Debtor had negotiated a prepackaged bankruptcy plan to restructure its outstanding bonds; and that the transaction went through a Board approval process. Compl. ¶¶ 55, 62. Taken together, the Complaint's allegations do not show fraudulent intent, requiring dismissal.

### C. The § 548(c) Value Defense Is Apparent From the Face of the Complaint

Section 548(c) provides that a "transferee . . . that takes for value and in good faith" may retain the transferred property to the extent of the value given. 11 U.S.C. § 548(c). "Value" includes "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). The Complaint's own allegations establish this defense. GCS received $1.185 million as a payment on the Shareholder Loan—a pre-existing antecedent debt, which constitutes "value" under § 548(d)(2)(A). *See* Compl. ¶¶ 44, 66. The Shareholder Loan is not alleged to be a sham or to lack consideration. And the Complaint does not allege that GCS knew the payment it received was improper or the transfer was voidable. *See Feldman v. Chase Home Fin. (In re Image Masters, Inc.)*, 421 B.R. 164, 181 (Bankr. E.D. Pa. 2009) (dismissing § 548 claim for failure to state a claim and concluding that the complaint's allegations showed that the Defendants received the transfers for value and in good faith). Because the Complaint affirmatively establishes that GCS took for value and in good faith, the § 548(c) defense bars the Third Claim as a matter of law.

## V. THE COMPLAINT FAILS TO PLEAD A § 550 RECOVERY CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SIXTH CLAIM)

The Sixth Claim for Relief seeks recovery under 11 U.S.C. § 550 from Ban100 and Finanza as "initial transferees" and from the Shareholder Lenders (including GCS) and Gramercy Colombia as "subsequent transferees." *See* Compl. ¶¶ 133–35. As discussed above, § 550(a)

creates no independent cause of action, and instead provides a recovery mechanism that entirely depends upon the Trustee's successful avoidance of a transfer under another provision of the Code. *In re Picard*, 917 F.3d at 92; *Citibank, N.A.*, 12 F.4th at 181. If the Second Claim (§ 547) and Third Claim (§ 548) are dismissed as to all defendants, the Sixth Claim necessarily fails too. But even if the Second Claim and Third Claim survive against other defendants, the Trustee's Sixth Claim is independently deficient as to GCS and Gramercy Colombia for additional reasons.

**A. Gramercy Colombia is Not a "Transferee" Under § 550**

The sole avoidance claim against Gramercy Colombia is the § 547 preference claim as to the $50,000 payment to Latham & Watkins on March 15, 2024. Any recovery as to that claim independently fails because the Complaint does not adequately plead that Gramercy Colombia was a "transferee" within the meaning of § 550. Latham & Watkins was the transferee of those funds, not Gramercy Colombia. And nor is Gramercy Colombia alleged to be a subsequent transferee. *See* Compl. ¶ 134 (silent as to Gramercy Colombia).

Under the Second Circuit's well-established dominion-and-control test, "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997) (quoting *Bonded Financial Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)); *Dundon v. TPG Capital, L.P. (In re Endo Int'l PLC)*, 2026 Bankr. LEXIS 1337, at *51 (Bankr. S.D.N.Y. May 29, 2026) ("dominion and control over the subject of the transfer means that the party can legally use and manipulate the money for its own purposes, such as to pay a debt or otherwise dispose of it"). Latham & Watkins, as the law firm that received payment and performed the legal services, is the entity that exercised dominion and control. Gramercy Colombia is never

alleged to have received or controlled any portion of the $50,000 and thus is not a "transferee" against which any recovery rights can be asserted under § 550.

**B. GCS Does Not Satisfy the Dominion-and-Control Test for "Transferee" Status**

GCS's status as a "transferee" under § 550 is likewise deficient. The Shareholder Loan administrative agent, Acquiom, allegedly received the $2.745 million from Finanza and distributed it to the Shareholder Lenders—including $1.185 million to GCS—in accordance with the Shareholder Loan's contractual waterfall. *See* Compl. ¶¶ 44, 66. GCS is not alleged to have directed, approved, or participated in the decision to pay the sales premium to Finanza or to pay down the Shareholder Loan. The Complaint does not allege that GCS exercised dominion or control over the funds at any point before receiving its distribution. Under the Second Circuit's test, a party that merely receives funds pursuant to a pre-existing contractual arrangement, without exercising control over how or whether those funds are disbursed, may not qualify as a "transferee" subject to § 550 liability. *Christy*, 130 F.3d at 57–58.

**C. The § 550(b)(1) Good Faith Defense Is Apparent From the Face of the Complaint as to GCS**

Section 550(b)(1) shields "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). The Complaint's own allegations establish each element of this defense as to GCS. GCS took for "value," because the $1.185 million it received was a partial payment on the Shareholder Loan, a pre-existing antecedent debt. *See* Compl. ¶¶ 44, 66. The Complaint does not allege that GCS acted in bad faith or with knowledge that the underlying transfers were voidable, and the Complaint's broad group-pleading as to the actions and knowledge of other defendants cannot be attributed to GCS. The Trustee cannot recover from GCS under §550 because it "was a subsequent transferee who took the transfers in good faith and

for value and without knowledge of the avoidability of the [t]ransfers." *Kirschenbaum v. Leeds Morelli & Brown P.C. (In re Robert Plan of N.Y. Corp.)*, 456 B.R. 150, 153 (Bankr. E.D.N.Y. 2011) (finding that even if transfer is subject to avoidance, the avoided transfer may not be recovered from a good faith subsequent transferee). When an affirmative defense is apparent from the face of the complaint, the court may dismiss. *See Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 425 (2d Cir. 2008) (affirmative defense may be raised on motion to dismiss where the complaint establishes the defense).[10]

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant the Gramercy Defendants' Motion to Dismiss all claims asserted against them in the Complaint.

Dated: September 15, 2026
New York, New York

Respectfully submitted,

*/s/ Alan C. Turner*

Alan C. Turner
Bryce L. Friedman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
aturner@stblaw.com
friedman@stblaw.com

*Attorneys for Gramercy Funds Management LLC, GCS Colombia Finance LLC, Gramercy Colombia Consumer Lending Holdings LLC, and Gustavo Ferraro*

[10] In addition, under § 550(d) "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section." The Complaint seeks recovery of the same $2.745 million from Ban100 (as initial transferee of the portfolio sale), Finanza (as initial transferee of the sales premium), and the Shareholder Lenders (as subsequent transferees). *See* Compl. ¶¶ 134–35. To the extent the Complaint seeks duplicative recovery from GCS for funds the Trustee recovers from Ban100 and/or Finanza, the single-satisfaction rule bars any recovery from GCS.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 15, 2026, a true and correct copy of the foregoing *Memorandum of Law in Support of the Gramercy Defendants' Motion to Dismiss the Trustee's Complaint* was served via CM/ECF on all parties registered to receive electronic notices.

*/s/ Alan C. Turner*
Alan C. Turner