Michael K. Ross (admitted *pro hac vice*)
Sherry X. Yu
Jillian G. Leslie (admitted *pro hac vice*)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, NW, Suite 740
Washington, D.C. 20004
Tel.: 202.737.3500
mross@aegislawgroup.com
syu@aegislawgroup.com
jleslie@aegislawgroup.com
*Counsel for Defendants ACON Investments Management, LLC, ACON Colombia Finance II, LLC, and José Miguel Knoell*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CREDIVALORES - CREDISERVICIOS S.A.,<br>Debtor. | Chapter 7<br>Case No. 24-10837 (DSJ)<br>Adv. Proc. No. 26-01063<br><br>Hearing Date and Time:<br>December 8, 2026, 10:00 a.m. |
| SALVATORE LAMONICA, solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.,<br>Plaintiff,<br>v.<br><br>BANCIEN S.A. aka BAN100 S.A. fka BANCO CREDIFINANCIERA S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP, DAVALIA GESTION DE ACTIVOS S.L., LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC, and JOSÉ MIGUEL KNOELL,<br>Defendants. | |

**DEFENDANTS ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC, and JOSÉ MIGUEL KNOELL'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**INTRODUCTION** ........ **- 1 -**

**BACKGROUND** ........ **- 2 -**

**A. The Debtors, Its Shareholders, and Corporate Governance** ........ **- 2 -**

**B. The Shareholder Loan** ........ **- 3 -**

**C. The Debtor's Restructuring Efforts and Bankruptcy Filing** ........ **- 4 -**

**ARGUMENT** ........ **- 6 -**

**I. Count I Should Be Dismissed Against ACON Because the Complaint Fails to Plead Actual Control By ACON Sufficient to Create Fiduciary Duties** ........ **- 7 -**

A. The Trustee Fails to Distinguish ACON's Conduct from the Other Shareholder Defendants ........ - 7 -

B. The Complaint Does Not Plausibly Allege ACON's Control Over the Debtor ........ - 10 -

**II. The Trustee Fails to Allege Facts Showing that Knoell Breached Any Fiduciary Duty - 11 -**

A. The Complaint Does Not Plead Facts Showing that Knoell Breached Any Fiduciary Duty by Approving Payroll-Loan Portfolio Sales to Ban100 ........ - 12 -

B. The Complaint Does Not Plead Facts Showing that Knoell Breached Any Fiduciary Duty by Ratifying the February 9, 2024 Payroll-Loan Transaction ........ - 13 -

C. The Complaint Does Not Plausibly Allege that Knoell Was Conflicted in Approving Post-Petition Transactions Involving Ban100 ........ - 13 -

D. The Complaint Does Not Plausibly Allege That Knoell Breached Any Fiduciary Duty in Approving the April 29, 2024 Shareholder Loan Transaction ........ - 14 -

**III. ACON II Incorporates and Joins the Arguments in the Shareholder Lenders' Briefs Regarding Counts II, III, and VI** ........ **- 16 -**

**CONCLUSION** ........ **- 16 -**

**TABLE OF AUTHORITIES**

**Cases**

*Appalachian Enters., Inc. v. ePayment Sols. Ltd.*, No. 01-11502 (GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ..... - 8 -

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... - 6 -

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..... - 6 -

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) ..... - 8 -

*Augenbaum v. Anson Invs. Master Fund LP,* No. 22-CV-249 (AS), 2024 WL 263208 (S.D.N.Y. Jan. 24, 2024) ..... - 9 -

*Banco De Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302 (S.D.N.Y. 1989) ..... - 10 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... - 6 -

*Dubroff v. Wren Holdings, LLC,* C.A. No. 3940-VCN, 2009 WL 1478697 (Del. Ch. May 22, 2009) ..... - 9 -

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.,* 414 F.3d 325 (2d Cir. 2005) ..... - 10 -

*In re Ampal–Am. Israel Corp*., 543 B.R. 464 (Bankr. S.D.N.Y. 2016) ..... - 13 -, - 15 -

*In re ICP Strategic Credit Income Fund Ltd*., No. 13-12116 (REG), 2015 WL 5404880 (Bankr. S.D.N.Y. Sept. 15, 2015) ..... - 12 -

*In re Lyondell Chem. Co*., 543 B.R. 127 (Bankr. S.D.N.Y. 2016) ..... - 14 -

*In re Tops Holding II Corp.,* 646 B.R. 617 (Bankr. S.D.N.Y. 2022) ..... - 14 -

*In re TransCare Corp*., 602 B.R. 234 (Bankr. S.D.N.Y. 2019) ..... - 9 -, - 11 -

*Kinsey v. N.Y. Times Co*., 991 F.3d 171 (2d Cir. 2021) ..... - 10 -

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CIV. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ..... - 8 -

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C*., No. 12 CIV 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ..... - 8 -

*Patrick v. Allen*, 355 F. Supp. 2d 704 (S.D.N.Y. 2005) ..... - 14 -

*S. & K. Sales Co. v. Nike, Inc*., 816 F.2d 843 (2d Cir.1987) ..... - 10 -

*Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2d Cir. 1986) ........- 10 -

**Statutes**

11 U.S.C. § 547 ........- 7 -, - 16 -

11 U.S.C. § 548 ........- 7 -

11 U.S.C. § 550 ........- 7 -

**Rules**

Fed. R. Bank. P. 7012(b) ........- 1 -

Fed. R. Bankr. P. 7008(a) ........- 8 -

Fed. R. Civ. P. 12(b)(6) ........- 1 -, - 6 -, - 16 -

Fed. R. Civ. P. 8(a) ........- 8 -

**Treatises**

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1248 ........- 8 -

Defendants ACON Investments Management, LLC ("ACON"), ACON Colombia Finance, and José Miguel Knoell (together, the "ACON Defendants") respectfully submit this motion (the "Motion") to dismiss certain claims asserted against them in the above-captioned adversary complaint (the "Complaint") filed by Salvatore LaMonica, the Chapter 7 Trustee ("Trustee"). The ACON Defendants bring this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

The Trustee seeks to impose fiduciary-duty liability on ACON and José Miguel Knoell based on conclusory allegations that ACON controlled the Debtor and that Knoell participated in a series of allegedly improper transactions. He also advances avoidance and recovery claims against ACON II arising from a series of allegedly improper transfers that the Trustee seeks to avoid and recover under the Bankruptcy Code. But the Complaint does not plead facts showing that ACON, whose ownership interest, lending participation, and economic stake were comparatively limited, exercised the type of domination and control necessary to owe fiduciary duties to the Debtor. Nor does the Complaint plausibly allege that Knoell acted disloyally, imprudently, or otherwise breached any fiduciary obligation. Instead, the Trustee repeatedly relies on group pleading, legal conclusions, and hindsight criticism of Board decisions. Because the Complaint fails to state a plausible claim against the ACON Defendants—and for the additional reasons set forth in and incorporated from the motions filed by Defendants Davalia Gestion de Activos S.L., Gramercy Colombia Consumer Lending Holdings LLC, and GCS Colombia Finance LLC—Counts I, II, III, and VI against them should be dismissed.

## BACKGROUND

### A. The Debtors, Its Shareholders, and Corporate Governance

Credivalores-Crediservicios S.A. (the "Debtor") was a Colombian consumer-finance company that originated payroll-deduction loans and issued credit cards to consumers. Compl. ¶¶ 8, 31. The Debtor financed portions of its operations through securitization vehicles known as *patrimonios autónomos*, which held receivable portfolios and borrowed against those assets. *Id*. ¶ 32. According to the Trustee, the Debtor's equity was held through a multi-layered ownership structure involving various affiliated entities and investment vehicles. *Id*. ¶¶ 28-30. The Complaint attributes an approximately 15% interest in the Debtor to ACON, but alleges that the interest was held indirectly through non-parties ACON Consumer S.L. and ACON Columbia Holdings S.L. *Id*. ¶ 29. The Complaint likewise attributes indirect ownership interests to the other shareholder groups, alleging that approximately 42% of the Debtor was held by Defendant Gramercy Funds Management LLC ("Gramercy"), approximately 20% by Defendant GDA Luma Capital Management, LP ("GDA Luma"), (together with ACON, the "Shareholder Defendants"), and approximately 20% by non-party Crediholding S.A.S. *Id.* ¶ 28. ACON designated Knoell to serve on the Debtor's Board of Directors (the "Board"). *Id*. ¶ 21. The Trustee also alleges that the Shareholder Defendants owned a separate Colombian financial institution, Bancien S.A. ("Ban100"), through a holding company, Finanza Inversiones S.A. ("FI"), and that ACON beneficially owned 13% of FI/Ban100. *Id*. ¶ 30.

According to the Trustee, Board members regularly copied ACON, Gramercy, and GDA Luma personnel on emails concerning Debtor decisions, including individuals who also served as directors of Ban100 or FI. Compl. ¶ 34. The Trustee further alleges that Ban100- and FI-affiliated directors of the Shareholder Defendants "would regularly attend and participate" in meetings of the Debtor's Board. *Id*. The Complaint also references occasions when the Shareholder Defendant

directors of Ban100/FI allegedly exercised voting authority on behalf of Debtor directors. *Id.* ¶¶ 34, 129. The Trustee alleges that this inclusion of Shareholder-Defendant personnel in communications concerning the Debtor, their attendance at Board meetings, and various proxy arrangements demonstrate that ACON, together with Gramercy and GDA Luma, exercised control over the Debtor. *Id*. ¶ 34.

**B. The Shareholder Loan**

In October 2022, special-purpose entities of the Shareholder Defendants provided financing intended to refinance certain of the Debtor's obligations through a credit facility referred to in the Complaint as the "Shareholder Loan." Compl. ¶¶ 43-45. FI served as the borrower under the Shareholder Loan, the Debtor guaranteed FI's repayment obligations, and FI simultaneously re-loaned the proceeds to the Debtor. *Id*. ¶ 44. ACON II participated in the Shareholder Loan as one of the lender entities, alongside lender affiliates of Gramercy and GDA Luma (collectively, the "Shareholder Lenders"). *Id*. ¶¶ 20, 45. The Shareholder Loan was subsequently amended, and in February and March 2023, Gramercy and GDA Luma, through GCS and GDA Luma Special Opportunities Fund LP, advanced additional funds of $5 million and then $3.33 million each, again through FI. *Id*. ¶¶ 47, 48. Neither ACON nor ACON II participated in advancing additional funds when the Shareholder Loan was amended. *See id.* Subsequently, Debtor granted security interests in certain residual interests associated with its *patrimonios autónomos* structures. *Id*. ¶ 49. Although the Shareholder Loan matured in November 2023, the Shareholder Defendants entered into a series of forbearance arrangements rather than pursuing immediate enforcement remedies. *Id*. ¶ 53.

### C. The Debtor's Restructuring Efforts and Bankruptcy Filing

By early 2024, the Debtor was experiencing financial distress and had missed a $9.4 million bond interest payment. Compl. ¶ 54. On March 7, 2024, the Debtor distributed an Offering Memorandum seeking support for a restructuring of the bond debt. *Id*. ¶ 55. That same day, the Debtor entered into an amended and restated forbearance agreement relating to the Shareholder Loan, pursuant to which FI agreed to make substantial payments toward the Shareholder Loan and the Debtor guaranteed those obligations. *Id*. ¶ 56. The Complaint further alleges that the amended forbearance agreement contemplated payment of more than $1 million in professional fees purportedly incurred for the benefit of the Shareholder Lenders. *Id*. ¶ 57. But the Complaint does not allege that the ACON Defendants incurred any of those fees, were entitled to reimbursement of those fees, or personally received any portion of those payments, and it specifically identifies only counsel for GDA Luma, Gramercy, and certain Latin American law firms as recipients of the fees described in the agreement. *Id*.

The transactions central to the Complaint occurred shortly before and after the bankruptcy filing. At an April 29, 2024 Board meeting, the Board approved a transaction pursuant to which payroll-loan portfolios were transferred from the Citibank Trust to Ban100, and Ban100 agreed to pay a "sales premium" of $2,745,386.16. Compl. ¶ 62. The Trustee alleges that, rather than paying the sales premium to the Debtor, Ban100 paid the funds to FI, which allegedly lacked any contractual entitlement to them, and FI in turn applied the proceeds to repay the Shareholder Loan. *Id*. ¶¶ 62-65. On May 8, 2024, the Shareholder Loan administrative agent distributed those funds among the participating lenders, including $1,185,507.66 to Gramercy affiliate GCS Colombia Finance LLC, $1,372,693.08 to GDA Luma affiliate Davalia Gestion de Activos S.L., and only $187,185.42 to ACON II. *Id.* ¶ 66.

At the same April 29 Board meeting, the Board also approved an amendment deferring repayment obligations otherwise due under the Shareholder Loan until after completion of the Chapter 11 case. Compl. ¶ 67. The Debtor commenced its Chapter 11 case on May 16, 2024. *Id*. ¶ 69. The Trustee thereafter identifies several post-petition transactions involving transfers of payroll-loan portfolios to Ban100 by the Debtor, including: (i) a June 27, 2024 transfer of payroll loans allegedly valued at approximately COP$3.8 billion, Compl. ¶ 79; (ii) a July 30, 2024 transfer of payroll-loan assets from the Citibank Trust allegedly valued at approximately COP$32 billion, *id*. ¶¶ 83-85; (iii) a July 31, 2024 transfer of payroll-loan portfolios allegedly valued at approximately COP$48.7 billion, *id*. ¶ 87; and (iv) a February 9, 2024 payroll-loan portfolio sale transaction to Ban100 involving approximately COP$12 billion that was later ratified by the Board on August 28, 2024. *Id*. ¶ 88. The Complaint also references various payments allegedly made by the Debtor to Ban100 for operating expenses during and after the Chapter 11 case. *Id*. ¶¶ 91-92. The Debtor then filed an application for relief to the Colombian Superintendent of Companies on August 30, 2024, and later entered bankruptcy in Colombia on December 12, 2024. *Id*. ¶ 89, n. 4. As detailed in FI and Ban100's brief, pursuant to the ongoing Colombian liquidation proceedings, all of the Debtor's assets and all of its creditors became subject to and bound by the mandatory insolvency proceeding upon its commencement.

From the aforementioned transactions, the Trustee alleges that ACON and Knoell breached their fiduciary duties to the Debtor: ACON on the theory that it exercised control over the Debtor through its Board representatives, and Knoell by approving or ratifying certain transactions as a member of the Board. Compl. ¶¶ 96-100. Notably, no complaints of fiduciary-duty liability or any conflict of interest have been raised during the liquidation process in Colombia. As to ACON II, the Trustee seeks avoidance and recovery of the $187,185.42 distribution (totaling less than 7%

of the total distribution) it allegedly received from the May 2024 Shareholder Loan repayment. *Id*. ¶¶ 66, 102-118, 133-135.

## **ARGUMENT**

The Trustee's fiduciary-duty claim (Count I) rests on two essential premises: that ACON exercised actual control over the Debtor and that Knoell breached fiduciary duties as a director. The Complaint fails to allege facts sufficient to support either theory. A complaint will be dismissed under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted," and the claims do not rest on factual allegations sufficiently plausible to support the material elements of the claim and "raise a right to relief above the speculative level." Fed. R. Civ. P. 12(b)(6); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Although the Trustee alleges that ACON, Gramercy, and GDA Luma collectively exercised "actual control" over the Debtor and therefore owed fiduciary duties to the estate, the Complaint fails to plead facts distinguishing ACON's conduct from that of the other Shareholder Defendants, fails to plead facts demonstrating that ACON itself exercised the degree of domination or control necessary to assume fiduciary obligations, and fails to plead facts establishing that ACON agreed with the other Shareholder Defendants to exercise such control. And rather than pleading facts showing that Knoell acted disloyally, failed to exercise due care or prudence, engaged in self-dealing, or placed the interests of Ban100 or the Shareholder Lenders ahead of those of the Debtor,

the Complaint simply concludes that he was "conflicted" and labels the challenged transactions as lacking adequate consideration or a valid business purpose. Such conclusory allegations do not satisfy the federal pleading standards applicable on a motion to dismiss and fail to provide a plausible basis for imposing fiduciary-duty liability on either defendant. Finally, for the reasons outlined in the briefs of Defendants Davalia Gestion de Activos S.L., Gramercy Colombia Consumer Lending Holdings LLC, and GCS Colombia Finance LLC, ACON II joins and incorporates those arguments with regard to Counts II (preferential transfer under 11 U.S.C. § 547), III (fraudulent transfer under 11 U.S.C. § 548) and VI (recovery of avoided transfers under 11 U.S.C. § 550).

## I. Count I Should Be Dismissed Against ACON Because the Complaint Fails to Plead Actual Control By ACON Sufficient to Create Fiduciary Duties

The Trustee alleges in Count I that ACON "owed fiduciaries to the estate" post-petition because it, together with Gramercy and GDA Luma, "exercised actual control of the Debtor's business affairs through their majority control of the nominal shareholders of the Debtor, and used that control to cause their appointed directors to transfer estate property to their affiliate"—namely, Ban100. Compl. ¶ 100. This theory fails to state a claim of breach of fiduciary duties as to ACON for two independent reasons: (1) it impermissibly lumps ACON together with Gramercy and GDA Luma, and then attributes "control" to the group as a whole without identifying what ACON itself supposedly did, and (2) even setting aside that group-pleading defect, the Complaint fails to allege facts showing that ACON exercised control over the Debtor's business.

### A. The Trustee Fails to Distinguish ACON's Conduct from the Other Shareholder Defendants

Throughout the Complaint, the Trustee attributes the alleged control to the collective group of "Gramercy, GDA Luma and ACON," asserting that all three viewed the Debtor and Ban100 as a "single investment," "directly controlled the Board," caused their respective directors to approve

the challenged transactions, and "together exercised actual control of the Debtor's business affairs." Compl. ¶¶ 33-35, 100. But the Complaint lacks even a single factual allegation showing what ACON, as opposed to the other members of that purported group, did to direct, dominate, or control the Debtor. Rule 8(a) requires, at a minimum, that "actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CIV. 2923 (CSH), 1994 WL 88129, at *18 (S.D.N.Y. Mar. 15, 1994) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1248); *see* Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008(a) (making Fed. R. Civ. P. 8 applicable to adversary proceedings). A complaint must be dismissed when it indiscriminately lumps all defendants together. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (a complaint that "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct" fails Rule 8's minimum standard); *Appalachian Enters., Inc. v. ePayment Sols. Ltd.*, No. 01-11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (dismissing complaint where plaintiff "lump[ed] all the defendants together and fail[ed] to distinguish their conduct") (internal quotation marks omitted); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 CIV 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (a "complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants").

Paragraph 34 exemplifies the Complaint's group-pleading defect. Every material allegation in that paragraph is directed collectively at "Gramercy, GDA Luma and ACON." Compl. ¶ 34. The Complaint does not identify which communications involved ACON, which Board actions ACON allegedly influenced, which decisions ACON allegedly directed, or how ACON's conduct differed from that of Gramercy or GDA Luma. Instead, the Trustee pleads a

series of generalized allegations concerning the Shareholder Defendants as a group and then attributes "control" equally to each member. *Id*. Allegations of collective control do not relieve the Trustee of his obligation to plead facts showing that ACON itself exercised the requisite degree of domination and control necessary to give rise to fiduciary obligations. *See In re TransCare Corp*., 602 B.R. 234, 246-48 (Bankr. S.D.N.Y. 2019) (Bernstein, J.) (dismissing control-based fiduciary-duty claim where the trustee failed to distinguish among the entities or allege facts showing that any particular entity itself exercised the requisite control over the debtor). Nor does the Trustee plead facts sufficient to establish a theory of collective control by the Shareholder Defendants acting in concert. *See Augenbaum v. Anson Invs. Master Fund LP,* No. 22-CV-249 (AS), 2024 WL 263208, at *5 (S.D.N.Y. Jan. 24, 2024) (citing *Dubroff v. Wren Holdings, LLC,* C.A. No. 3940-VCN, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009) ("[A] number of shareholders, each of whom individually cannot exert control over the corporation . . . can collectively form a control group . . . by contract, common ownership, agreement, or other arrangement . . . . In that case, the control group is accorded controlling shareholder status, and, therefore, its members owe fiduciary duties to their fellow shareholders.")).

In the few instances where the Trustee provides more specific (but still deficient) examples of control, those examples do not involve ACON at all. The Trustee alleges that Defendant Gustavo Ferraro regularly conferred with Robert Koenigsberger, Gramercy's founder and Chief Investment Officer, regarding material business decisions for the Debtor, and that Gabriel de Alba, GDA Luma's founder and managing partner, was similarly consulted regarding such decisions. Compl. ¶ 34. But the Complaint identifies no comparable allegation that ACON directed Debtor's decisions, instructed Board members how to vote, or otherwise participated in decision-making at the investment-advisor level. Instead, after providing examples specific to Gramercy and GDA

Luma, the Complaint simply concludes that "Gramercy, GDA Luma and ACON" collectively controlled the Debtor. *Id*. This fails to clearly specify the claims against ACON.

**B. The Complaint Does Not Plausibly Allege ACON's Control Over the Debtor**

Even assuming the Complaint adequately pleads ACON's conduct on an individualized basis (it does not), those allegations fall well short of establishing that ACON assumed fiduciary duties to the Debtor's estate. The elements of such a claim are: "(1) a breach by a fiduciary of an obligation to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damages as a result of the breach." *S. & K. Sales Co. v. Nike, Inc*., 816 F.2d 843, 847 (2d Cir.1987) (citing *Whitney v. Citibank, N.A*., 782 F.2d 1106, 1115 (2d Cir. 1986)). ACON is not an officer or director of the Debtor, and the Trustee does not plead as much. A party who is not formally an officer or director of a corporation may only be charged with fiduciary duties where that party "exercise[s] de facto control of the corporation." *Banco De Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302, 1306 (S.D.N.Y. 1989). The Complaint fails to plead facts, rather than conclusions, showing that ACON exercised de facto control over the Debtor. [1]

The Trustee alleges only that ACON "undertook its actions vis-à-vis the Debtor through a number of special purpose entities it controlled, and through directors it appointed to the Debtor's Board" and that Knoell "served as a director on the Board" after being appointed by ACON.

---

[1] Although the Complaint alleges that ACON and Knoell owed duties under both federal law, *see* Compl. ¶ 94, and Colombian law, *see* Compl. ¶¶ 95, 98–99, it identifies no respect in which those two bodies of law diverge on the elements at issue—i.e., what suffices to plead a knowing breach of the duties of loyalty and care, nor does it suggest the application of one or the other would have "a significant impact on the outcome of the case." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.,* 414 F.3d 325, 332 (2d Cir. 2005); *accord Kinsey v. N.Y. Times Co*., 991 F.3d 171, 176 (2d Cir. 2021) (the first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the rules of the relevant jurisdictions). Because the Complaint has not identified any such divergence, the Court may proceed under federal law of this forum.

Compl. ¶¶ 19, 21. The Complaint further alleges that "Gramercy, GDA Luma and ACON directly controlled the Board" and "caused their respective directors to vote" in certain ways, but it pleads no facts explaining how ACON purportedly exercised that control. Compl. ¶ 34. Indeed, the allegations here are even weaker than the control allegations the Trustee unsuccessfully advanced before this Court in *TransCare*. *See TransCare*, 602 B.R. at 239-42, 247-48. There, the Trustee alleged far more extensive involvement in the debtor's affairs, including restrictions on management authority, interference with potential asset sales, personnel decisions, and bankruptcy planning. *Id.* at 239-42. Yet even there, this Court found those allegations insufficient to establish the requisite control. *Id.* at 247-48. Here, by contrast, the Complaint alleges only that ACON appointed directors, that ACON-affiliated personnel were included on certain communications, and that ACON-affiliated individuals attended Board meetings or exercised voting authority through proxy arrangements. Compl. ¶ 34.

The Complaint identifies various individuals affiliated with the Shareholder Defendants who allegedly participated in communications concerning Debtor affairs or were consulted regarding business decisions. It does not plead facts showing, however, that their conduct amounted to control by ACON itself. *See* Compl. ¶ 34; *cf. TransCare*, 602 B.R. at 247 ("although an employee of a particular Entity Defendant may have been an agent of that entity and also directed [the debtor's] affairs, the Amended Complaint does not imply that he acted as an agent of the Entity Defendant . . . when he exercised control over [the debtor]"). The absence of specific factual allegations is fatal to the Trustee's claim that ACON controlled the Debtor and thereby owed fiduciary duties to the estate. Count I against ACON should be dismissed.

## II. The Trustee Fails to Allege Facts Showing that Knoell Breached Any Fiduciary Duty

The Complaint also fails to plead sufficient facts to show that director Knoell breached various fiduciary duties. The Trustee identifies four alleged breaches by Knoell:

(i) his approval of payroll-loan portfolio sales to Ban100, allegedly in breach of his duty of loyalty to maximize estate value, Compl. ¶ 96;

(ii) (ii) ratification of the February 9, 2024 payroll-loan transaction, allegedly in breach of the same duty, Compl. ¶ 96;

(iii) (iii) approval of post-petition transactions involving Ban100, allegedly in breach of his duty of loyalty in avoiding conflicts, Compl. ¶ 97; and

(iv) (iv) approval of the April 29, 2024 Shareholder Loan payment transaction, allegedly in breach of his duty to act with the diligence of a good businessperson (care/prudence) and his duty of loyalty, Compl. ¶ 98-99.

The Trustee must plead facts, rather than conclusions, demonstrating that Knoell's conduct was disloyal, imprudent, undertaken in bad faith, or otherwise inconsistent with his fiduciary obligations. *See In re ICP Strategic Credit Income Fund Ltd.*, No. 13-12116 (REG), 2015 WL 5404880, at *8 (Bankr. S.D.N.Y. Sept. 15, 2015) ("Thus, to survive a motion to dismiss, a complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an 'entitlement to relief.'") (citation omitted). Because the Trustee fails to do so, Count I should be dismissed against Knoell.

**A. The Complaint Does Not Plead Facts Showing that Knoell Breached Any Fiduciary Duty by Approving Payroll-Loan Portfolio Sales to Ban100**

The Trustee alleges that Knoell approved payroll-loan portfolio sales to Ban100 "without adequate consideration, or without consideration at all." Compl. ¶ 96. The Complaint elsewhere identifies several payroll-loan portfolio transactions, including transfers to Ban100 on June 27, 2024, July 30, 2024, and July 31, 2024, with stated values of approximately COP$3.8 billion, COP$32 billion, and COP$48.7 billion, respectively. *Id.* ¶¶ 79, 83, 87. Although the Trustee summarily alleges that those transactions involved inadequate consideration, no consideration, or an improper setoff, the Complaint does not plead facts concerning the information available to Knoell when the transactions were approved. *See id.*; Compl. ¶ 96. Nor does the Complaint allege facts demonstrating that Knoell knew that the transactions were purportedly adverse to the Debtor.

Instead, the Trustee relies on conclusory assertions that the transfers were for inadequate consideration, without pleading facts showing the fair value of the transferred assets or why any consideration provided was inadequate. Such conclusory allegations are insufficient to plausibly establish that Knoell breached his duty of loyalty to maximize estate value. *See In re Ampal–Am. Israel Corp.*, 543 B.R. 464, 476–78 (Bankr. S.D.N.Y. 2016) (Bernstein, J.) (holding that allegations challenging board decisions were insufficient where the complaint failed to allege facts showing that the challenged conduct was motivated by an improper purpose).

### B. The Complaint Does Not Plead Facts Showing that Knoell Breached Any Fiduciary Duty by Ratifying the February 9, 2024 Payroll-Loan Transaction

The Trustee separately alleges that Knoell breached his duty of loyalty in maximizing estate value and by ratifying the February 9, 2024 payroll-loan portfolio sale transaction. Compl. ¶ 96. Again, although the Complaint identifies the transaction and states that it involved approximately COP$12 billion in payroll-loan portfolios, it does not allege facts as to why the consideration was inadequate. *See* Compl. ¶¶ 88, 96. The Complaint therefore provides no factual basis from which the Court could plausibly infer that Knoell failed to preserve or maximize estate value or ratified the transaction in bad faith.

### C. The Complaint Does Not Plausibly Allege that Knoell Was Conflicted in Approving Post-Petition Transactions Involving Ban100

The Trustee next alleges that Knoell breached his duty of loyalty voting to approve post-petition transactions involving Ban100, including post-petition transfers of payroll-loan portfolios to Ban100 and post-petition payments purportedly made to Ban100 for operating costs. Compl. ¶ 97. The alleged conflict is that unnamed ACON-affiliated funds held interests in Ban100, ACON allegedly earned management or advisory fees associated with those investments, and the performance of those investments allegedly affected Knoell's compensation. *Id*.

But the Complaint pleads no facts showing that Knoell personally received any benefit from the challenged transactions, stood on both sides of any transaction, concealed information, or subordinated the Debtor's interests to his own. Nor does it identify which ACON-managed fund allegedly held the Ban100 investment, the nature or extent of that investment, or how ACON's alleged management or advisory fees purportedly affected Knoell's compensation. *See In re Tops Holding II Corp.,* 646 B.R. 617, 708 (Bankr. S.D.N.Y. 2022) (Drain, J.) ("To establish a lack of independence, the plaintiff must allege facts raising sufficient doubt that a director's decision was based on extraneous considerations or influences, and not on the corporate merits of the transaction."); *see also Patrick v. Allen*, 355 F. Supp. 2d 704, 711 (S.D.N.Y. 2005) ("A director is considered interested in a transaction if the director stands to receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally."). The Complaint therefore offers no factual basis from which the Court could plausibly infer that Knoell had a conflict of interest. Instead, the Trustee asks the Court to infer a breach of loyalty solely from Knoell's affiliation with ACON and ACON's alleged several-steps-removed relationship with Ban100. But "legal conclusions couched as factual allegations are not entitled to the assumption of the truth." *In re Lyondell Chem. Co*., 543 B.R. 127, 135 (Bankr. S.D.N.Y. 2016) (citation omitted).

### D. The Complaint Does Not Plausibly Allege That Knoell Breached Any Fiduciary Duty in Approving the April 29, 2024 Shareholder Loan Transaction

Finally, the Trustee alleges that Knoell voted to approve a transaction pursuant to which approximately $2.745 million in proceeds from the Citibank Trust portfolio transaction were paid to FI, which then used those funds to repay a portion of the Shareholder Loan. Compl. ¶¶ 62-67. According to the Trustee, that vote breached Knoell's duties of care, prudence, and loyalty. *Id*. ¶¶ 94-95, 98-99. The Trustee's duty-of-care theory is that no valid business reason existed to direct

the proceeds toward the Shareholder Loan because, at the same April 29 Board meeting, the Board approved an amendment deferring the relevant payment obligations until after the Chapter 11 case. *Id*. ¶¶ 67, 98. But the Complaint pleads no facts regarding what Knoell knew, considered, or relied upon when he voted to approve the transaction. *See id.* ¶¶ 62-68, 98; *cf. Ampal*, 543 B.R. at 480–81 (dismissing fiduciary-duty claim predicated on a board decision where the complaint alleged only that the directors should have chosen a different course of action and failed to plead facts showing an improper purpose, bad faith, or disloyal conduct).

The Trustee's duty-of-loyalty theory is equally deficient. The Complaint alleges that the transaction benefitted the Shareholder Lenders and that recoveries on the Shareholder Loan affected Knoell's compensation. Compl. ¶ 99. But the Complaint does not allege facts showing that Knoell had any direct financial interest in the Shareholder Loan repayment beyond his affiliation with ACON, that he received any portion of the repayment, or how the repayment had any concrete effect on his personal compensation. *See id*. Nor does the Complaint allege facts showing that Knoell concealed information, negotiated the transaction on behalf of both sides, or otherwise acted for his own benefit rather than the Debtor's. Instead, the Trustee asks the Court to infer disloyalty solely from Knoell's affiliation with ACON and his vote for the transaction. Such allegations do not plausibly establish a breach of the duties of care/prudence or loyalty.

In short, the Complaint substitutes labels for facts. Each of the Trustee's theories against Knoell depends on the conclusory assertion that the challenged transactions were improper, conflicted, or unsupported by consideration. The Complaint does not plead the facts necessary to bridge the gap between those conclusions and a plausible inference that Knoell breached any fiduciary duty. Accordingly, Count I should be dismissed against Knoell.

## III. ACON II Incorporates and Joins the Arguments in the Shareholder Lenders' Briefs Regarding Counts II, III, and VI

ACON II respectfully joins in, adopts, and incorporates by reference the arguments advanced in the contemporaneously filed motions by Defendants Davalia Gestion de Activos S.L., Gramercy Colombia Consumer Lending Holdings LLC, and GCS Colombia Finance LLC seeking dismissal of Counts II (11 U.S.C. § 547) III (11 U.S.C. § 548), and VI (11 U.S.C. § 550). Because the same theories are asserted against ACON II and the same defects warrant dismissal of the claims against it, ACON II does not repeat those arguments here. Notably, the Complaint's allegations concerning ACON II are limited to its status as one of several Shareholder Lenders and its alleged receipt of $187,185.42 from the May 2024 distribution. Compl. ¶¶ 45, 66. The Complaint identifies no decision-making, managerial, or transactional role played by ACON II beyond that alleged receipt. The other Shareholder Lenders' motions address the defects common to all such claims, and ACON II therefore incorporates those arguments fully in the interest of efficiency and judicial economy.

## CONCLUSION

For the foregoing reasons, ACON Investments Management, LLC, ACON Colombia Finance II, LLC, and José Miguel Knoell respectfully request that the Court dismiss Counts I, II, III, and VI for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Dated: September 15, 2026

Respectfully submitted,

*/s/ Michael K. Ross*

Michael K. Ross (admitted *pro hac vice*)
Sherry X. Yu
Jillian G. Leslie (admitted *pro hac vice*)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, NW, Suite 740
Washington, D.C. 20004
Tel.: 202.737.3500
mross@aegislawgroup.com

syu@aegislawgroup.com
jleslie@aegislawgroup.com

*Counsel for Defendants ACON Investments Management, LLC, ACON Colombia Finance II, LLC, and José Miguel Knoell*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2026 the foregoing Motion to Dismiss was filed electronically using the Court's Electronic Case Filing System. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System.

*/s/ Michael K. Ross*
Michael K. Ross (admitted *pro hac vice*)