**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CREDIVALORES - CREDISERVICIOS S.A.,<br>Debtor | Chapter 7<br><br>Case 24-10837 (DSJ) |
| SALVATORE LAMONICA solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.<br>Plaintiff<br>v.<br>BANCIEN S.A. aka Ban100 S.A. fka Banco Credifinanciera S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP, DAVALIA GESTION DE ACTIVOS S.L, LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC and JOSÉ MIGUEL KNOELL<br>Defendants | Adv. Proc. 26-01063 (DSJ)<br><br>**DECLARATION OF JEFFREY CHUBAK IN OPPOSITION**<br><br>Re: ECF #33, #36, #40, #43 |

I, Jeffrey Chubak, hereby declare:

1. I am a member of Amini LLC, special litigation counsel for the plaintiff, Salvatore LaMonica solely in his capacity as Chapter 7 trustee of the Debtor and submit this declaration in opposition to defendants' motions to dismiss. More specifically, it is submitted to attach copies of documents cited in the accompanying memorandum of law in opposition and to state the facts establishing personal jurisdiction over Ban100 and Finanza.

2. Attached hereto as exhibits are true and correct copies of the following documents:

| Exhibit No. | Document Date | Document Description |
|---|---|---|
| 1 | 02/07/2020 | Offering Memorandum for 8.875% Senior Notes due 02/07/2025 |
| 2 | 10/25/2022 | Funding Authorization Letter re: Shareholder Loan |

| Exhibit No. | Document Date | Document Description |
|---|---|---|
| 3 | 02/26/2023 | Funding Authorization Letter re: 1st Amendment to Shareholder Loan |
| 4 | 03/15/2023 | Funding Authorization Letter re: 2nd Amendment to Shareholder Loan |
| 5 | 07/26/2023 | Ban100 Board Minutes (Spanish) |
| 6 | 02/28/2024 | Debtor Board Minutes (Spanish) |
| 7 | 02/28/2024 | Debtor Board Minutes (English) |
| 8 | 04/29/2024 | Debtor Board Minutes (Spanish) |
| 9 | 04/29/2024 | Debtor Board Minutes (English) |
| 10 | 08/28/2024 | Debtor Board Minutes (Spanish) |
| 11 | 08/28/2024 | Debtor Board Minutes (English) |
| 12 | 09/30/2024 | Ban100 Quarterly Financial Statements |
| 13 | 12/31/2024 | Debtor FY2024 Financial Statements |
| 14 | 02/24/2025 | Debtor Board Presentation (Spanish) |
| 15 | 02/24/2025 | Debtor Board Presentation (English) |
| 16 | 01/2026 | Ban100 Corporate Presentation |
| 17 | 03/31/2026 | GDA Luma Form ADV |
| 18 | -- | Acquiom FRBP 2004 Production Showing Shareholder Loan Flow of Funds |
| 19 | -- | GDA Luma Shareholder Loan Ownership History (Excerpt) |
| 20 | -- | LinkedIn Webpage Hector Chaves |
| 21 | -- | LinkedIn Webpage Federico Sioli |
| 22 | -- | Entity Details GCS Colombia Finance LLC |
| 23 | -- | Entity Details ACON Colombia Finance II, LLC |
| 24 | -- | Law 222 of 1995, Section II, Articles 22-24 |

3. Historically, to generate cash, the Debtor would sell payroll loan portfolios that it originated to financial institutions in exchange for "an upfront payment [that includes] a premium over the face value of the loan portfolio sold." (Exhibit 1 at 5 PDF p.17; see also Exhibit 7 PDF p.21 (showing this practice continued into 2024).)

4. The Debtor would also generate cash through *patrimonio autónomo* or free-standing trusts ("P.A.") (Exhibit 1 at 119 PDF p.131; see also ECF #4 ¶44-45); specifically, via secured loans extended to the trusts that the Debtor guaranteed.

5. In the lead-up to bankruptcy, the Debtor agreed to sell to Ban100 all payroll loan portfolios included in, and the Debtor's right to payment on account of its residual interest in, one such trust, P.A. 14604 (referred to in the Complaint as the Citibank Trust, because Citibank Colombia was the lender to that trust). (Exhibit 12 PDF p.28.)

6. The sale transaction occurred in two phases. The first phase took place the week before the Debtor's 04/29/2024 board meeting. (Exhibit 9 PDF p.12 ("the first stage of the sale of the CITI portfolio took place the previous week").)

7. As noted by Ban100's President Hector Chaves (Exhibit 20), who was also the Debtor's former CFO (Exhibit 1 PDF p.160) and following his departure to Ban100 remained financial advisor to the Debtor (Exhibit 7 PDF p.1), the payroll loan portfolios held in the trust were sold by the trust to the Debtor, with Ban100 then buying the same portfolios from the Debtor (id. PDF p.21) at a premium.

8. In connection with such transaction (the first phase), Ban100 advanced the sales premium generated by same to Finanza for the purpose of making payment to the Shareholder Lenders. (Exhibit 9 PDF p.12 ("the Bank made an advance payment of the premium contemplated under this transaction, and those funds have already been made available to Finanza Inversiones to make payment to the lenders").)

9. The Shareholder Lenders are U.S. entities (Exhibits 22-23), except Davalia an affiliate of GDA Luma (Exhibit 19) whose offices are located (Exhibit 17 PDF pp.1, 3) in Miami and New York City.

10. Finanza made the subject payment to the Shareholder Lenders through their administrative agent (ECF #10-1 at 1) under the Shareholders Loan, Acquiom Agency Services LLC, a Colorado limited liability company.

11. Three Ban100 directors, Maite Stebelski (nee De Alba) of GDA Luma and Javier Ledesma of Gramercy and Alberto Hernandez of ACON, the former two of which were still Ban100 directors as of earlier this year (Exhibit 16 PDF p.6) and the latter of which was also a Ban100 director (Exhibit 5 PDF p.1) attended both the 02/28/2024 and the 04/29/2024 Debtor board meetings (Exhibit 7 PDF p.1, Exhibit 11 PDF p.1) concerning the transaction whereby Ban100 advanced Debtor sales premium to the Shareholder Lenders through Finanza and the administrative agent.

12. For both board meetings, Mr. Hernandez was granted the voting proxy of ACON director Jose Miguel Knoell. (Id.)

13. Finanza transferred the funds to Acquiom by wiring same to its account at Citizens Bank ending -6533. (Exhibit 18 PDF pp.3, 5, 7-9.)

14. This was the same account that was used to disburse the Shareholder Loan to Finanza. (Exhibits 2-4 PDF pp.6, 9) on three prior occasions.

15. Finanza signed a funding authorization letter in each instance acknowledging receipt of Shareholder Loan proceeds from said account. (Id.)

16. The second phase of the liquidation of the Citibank Trust took place July 30, 2024. (Exhibit 12 PDF p.28; Exhibit 13 PDF pp.40 ("PA Libranza 14604 was settled at the end of July 2024"), 43.)

17. The subject payroll loan portfolios were paid for not in cash, but rather through reduction of liabilities i.e. setoff. (Exhibit 15 PDF p.6 (during 2024, accounts payable line item of balance sheet fell by COP$24.8 billion, due to "offsetting of accounts payable to Ban100 against the transfer of the Citibank loan portfolio (COP$32,000 million)").)

18. The liabilities reduced by the setoff were those described in the 20 largest creditors list (ECF #1 PDF p.17), which identifies obligations relating to the "Sale of Business Segment (Related Parties)", referring to the sale of the Debtor's Crediuno business segment to Ban100. (Exhibit 11 PDF p.9.[1])

19. One day after the Citibank Trust was "settled" (Exhibit 13 PDF p.40) i.e. liquidated, the Debtor sold COP$48.7 billion in payroll loan portfolios not held in any P.A. trust to Ban100; and on 08/28/2024 (Exhibit 11 PDF p.7), the Debtor's board ratified said transaction, as well as a 02/09/2024 transaction to sell COP$12 billion in payroll loan portfolios not held in any P.A. trust to Ban100.

20. Ms. Stebelski and Mr. Ledesma also attended the 08/28/2024 Debtor board meeting ratifying the 07/31/2024 payroll loan portfolio sale transaction with Ban100. (Id. PDF p.1.)

21. Another director "in attendance" at such meeting, Martin Kontarovsky, granted his voting proxy to Federico Sioli, a GDA Luma analyst, who voted to ratify the transactions on behalf of Mr. Kontarovsky. (Id. PDF pp.1, 12; Exhibit 21.)

---

[1] The Debtor sold the Crediuno business segment to Ban100 for COP$60 billion pursuant to an agreement dated 08/03/2023. (That the sale was to Ban100, was omitted from the offering memorandum (ECF #18 A-72 PDF pp.222-23) which states only "we are in the process of closing the sale of our credit card business unit (*Crediuno*)".) Upon information and belief, the liability resulted from a post-closing, retroactive purchase price adjustment made under an eighth amendment dated October 26, 2023, to the sale agreement, which retroactively reduced the purchase price by around 80%, to COP$10 billion.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed October 30, 2026.

/s/ Jeffrey Chubak