**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CREDIVALORES - CREDISERVICIOS S.A.,<br><br>Debtor. | Chapter 7<br><br>Case 24-10837 (DSJ) |
| SALVATORE LAMONICA solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.,<br><br>Plaintiff,<br><br>v.<br><br>BANCIEN S.A. aka Ban100 S.A. fka Banco Credifinanciera S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP, DAVALIA GESTION DE ACTIVOS S.L, LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC and JOSÉ MIGUEL KNOELL,<br><br>Defendants. | Adv. Proc. 26-01063 (DSJ)<br><br>Hearing Date: December 8, 2026 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF BANCIEN S.A. AND FINANZA INVERSIONES S.A.'S <u>MOTION TO DISMISS ADVERSARY COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ii

I. PRELIMINARY STATEMENT 1

II. ARGUMENT 2

A. The Trustee Has Not Made a Prima Facie Showing of Personal Jurisdiction Over Ban100 or Finanza 2

1. The Funding Letters Do Not Establish Purposeful Use of a United States Account by Finanza. 2

2. The Opposition Identifies No United States Contact by Ban100. 4

3. The Effects Test Is Not Satisfied. 6

4. Exercising Jurisdiction Would Be Unreasonable. 7

B. The Preference Claim Against Finanza Fails 7

1. The Trustee Still Identifies No Antecedent Debt of Debtor Owed to Finanza. 7

2. The Complaint Does Not Plead Section 547(b)(5). 8

C. The Fraudulent Transfer Claim Against Ban100 Fails 10

1. The Trustee's Own Exhibit Shows the February 9, 2024, Sale Was for a 25% Premium. 10

2. The Complaint Does Not Plead Insolvency at the Time of the Sale. 11

3. The Opposition Does Not Salvage the Trustee's Actual Fraud Claim Against Ban100. 11

D. The Section 549 Claim Fails 11

1. The February 9, 2024, Sale Was Completed and Ratified Before the Petition Date. 11

2. The Postpetition Portfolio Sales Were Ordinary-Course Transactions Disclosed to Creditors and the Court 12

E. The Trustee Has Conceded the Section 544(b) Claim 14

F. The Turnover Claim Fails 15

III. CONCLUSION 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)....7

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....8, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....11

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
582 U.S. 255, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017)....3

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....9

*Colbert v. Rio Tinto PLC*,
824 F. App'x 5 (2d Cir. 2020)....14

*Daou v. BLC Bank, S.A.L.*,
42 F.4th 120 (2d Cir. 2022)....3

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)....8

*In re Celsius Network LLC*,
668 B.R. 722 (Bankr. S.D.N.Y. 2025)....15

*In re Fairfield Sentry Ltd.*,
669 B.R. 690 (Bankr. S.D.N.Y. 2025)....4

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
130 F.3d 52 (2d Cir. 1997)....10

*In re GBG USA Inc.*,
666 B.R. 115 (Bankr. S.D.N.Y. 2024)....5, 6

*In re HMH Motor Servs., Inc.*,
259 B.R. 440 (Bankr. S.D. Ga. 2000)....13

*In re Huffy Corp.*,
358 B.R. 724 (Bankr. S.D. Ohio 2006)....5

*In re Johns-Manville Corp.*,
60 B.R. 612 (Bankr. S.D.N.Y. 1986)....13

*In re Lyondell Chem. Co.*,
543 B.R. 127 (Bankr. S.D.N.Y. 2016)....4

*In re Madison Williams & Co., LLC*,
509 B.R. 791 (Bankr. S.D.N.Y. 2014)....15

*In re Pretty Girl, Inc.*,
644 B.R. 298 (Bankr. S.D.N.Y. 2022) ........................................................................9,10

*In re Schwinn Bicycle Co.*,
192 B.R. 461 (Bankr. N.D. Ill. 1996) ..........................................................................5

*In re Teligent, Inc.*,
325 B.R. 134 (Bankr. S.D.N.Y. 2005) ........................................................................15

*In re Wonderwork, Inc.*,
611 B.R. 169 (Bankr. S.D.N.Y. 2020) ..........................................................................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)..........................................................................................4

*Matter of Cavalier Homes of Ga., Inc.*,
102 B.R. 878 (Bankr. M.D. Ga. 1989)..........................................................................8

*Matter of Natchez Corp. of W. Va.*,
953 F.2d 184 (5th Cir. 1992) ......................................................................................12

*Matter of Teltronics Services, Inc.*,
29 B.R. 139 (Bankr. E.D.N.Y. 1983)..........................................................................11

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)....................................................................................3, 4

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998)..........................................................................................10

*Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*,
403 F.3d 43 (2d Cir. 2005)....................................................................................10, 11

*Walden v. Fiore*,
571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)..............................................2, 3, 6, 7

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)..........................................................................................9

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................11

Defendants Bancien S.A. aka Ban100 S.A. fka Banco Credifinanciera S.A. ("Ban100") and Finanza Inversiones S.A. ("Finanza," and together with Ban100, the "Colombian Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint (ECF Nos. 33, 34, the "Motion") and in response to the Trustee's Memorandum of Law in Opposition to Defendants' Motions to Dismiss (ECF No. 51, the "Opposition") and the Declaration of Jeffrey Chubak (ECF No. 50, the "Chubak Declaration").

## I. PRELIMINARY STATEMENT[1]

The Opposition confirms that the Complaint should be dismissed as to the Colombian Defendants. The Trustee, unable to identify any suit-related contact between Ban100 or Finanza and the United States in the Complaint, attempts to create one through counsel's declaration and a set of 2022-2023 funding letters for borrowings that are not challenged in this action. But those letters merely demonstrate that the Shareholder Lenders' administrative agent, *an unaffiliated third party*, kept its account at a United States bank. They do not show that Ban100 designated a United States account, had any contact whatsoever with the Shareholder Lenders' administrative agent, or expressly aimed any conduct at this forum. The Trustee therefore fails to establish personal jurisdiction over Ban100.

Nor do those letters show that Finanza designated a United States account, chose to route the May 2024 payment through the United States for its own advantage, or expressly aimed any conduct at this forum. The Trustee therefore fails to establish personal jurisdiction over Finanza.

On the merits, the Trustee's own exhibits defeat his theories. The February 28, 2024, board minutes he submits reflect that Debtor sold a payroll loan portfolio to Ban100 on February 9, 2024, at a premium of 25% of principal and that Debtor's board ratified the sale months before the petition date. The Trustee offers no alternative valuation of this portfolio, so the constructive fraud

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

claim fails for want of any plausible shortfall in value; to the contrary, the facts as pleaded show that the Debtor realized a gain. The prepetition ratification likewise defeats the Trustee's Section 549 claim, as even under the Trustee's theory expressed in the Complaint no postpetition transfer occurred. The Offering Memorandum on which the Complaint relies also undercuts the Trustee's remaining claims. It reported positive shareholders' equity of Ps. 274,582 million as of September 30, 2023, which defeats the insolvency underpinnings of the Trustee's Section 547 and 548 claims. It also disclosed to bondholders the forbearance agreement the Complaint says was concealed and identified Ban100 as a purchaser of Debtor's payroll loan portfolios, which defeats the Trustee's Section 549 challenge to the postpetition sales. Finally, the Opposition fails to address the Motion's arguments for dismissal of the Section 544(b) claim, which should be deemed conceded. The Complaint should be dismissed in its entirety as to the Colombian Defendants.

## II. ARGUMENT

### A. The Trustee Has Not Made a Prima Facie Showing of Personal Jurisdiction Over Ban100 or Finanza

The Trustee must make a prima facie showing that each Colombian Defendant, through its own suit-related conduct, purposefully availed itself of the United States. Mot. at 6-7; *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014). The Opposition abandons the Complaint's "single economic unit" theory and now rests on two grounds: (i) Finanza's alleged use of a United States bank account, and (ii) the "effects" test. Opp. at 10-14. The Trustee's failure to make the required showing is dispositive as to both Colombian Defendants.

#### 1. The Funding Letters Do Not Establish Purposeful Use of a United States Account by Finanza.

The Trustee's principal new evidence consists of three funding authorization letters executed in connection with borrowings under the Shareholder Loan on October 25, 2022, February 3, 2023, and March 15, 2023. Opp. at 10-11; Chubak Decl. Exs. 2-4. Those letters do not

establish personal jurisdiction. First, they show only that, when the Shareholder Lenders funded the loan in 2022 and 2023, the money passed through their agent's United States account. That is not the conduct the Trustee challenges. His only claim against Finanza seeks to avoid, as a preference, the $2,745,386.16 sales premium that Ban100 advanced to Finanza in Colombia in April 2024. Compl. ¶¶ 62, 65-66, 105; Mot. at 15-16. The alleged wrong is the diversion of Debtor value to Finanza, not where the funds went afterward. Specific jurisdiction requires that the claim "arise out of or relate to" the defendant's own forum contacts, *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017), and in this Circuit that requires "an articulable nexus or a substantial relationship" between the forum transaction and the claim, *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130 (2d Cir. 2022). The transfer the Trustee seeks to recover from Finanza is the premium Ban100 advanced to it, which did not pass through any United States account. Compl. ¶¶ 62, 135. Finanza's later payment to the agent is the subsequent transfer the Trustee seeks to recover from the Shareholder Lenders, not from Finanza. *Id.* ¶ 135. That distinguishes *Arcapita*, where the transfers being avoided were themselves routed through the defendants' New York accounts. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 69 (S.D.N.Y. 2016).

Second, even if the borrowings were relevant, the letters confirm that the account belonged to Acquiom, which the Trustee concedes is a Colorado entity and the Shareholder Lenders' administrative agent. Opp. at 5 n.2, 10; Chubak Decl. ¶ 13. Finanza did not designate that account; the lenders did, through their agent. The Trustee's assertion that Finanza "could have negotiated to use a different administrative agent" (Opp. at 11) acknowledges that the choice of agent and account was the lenders' choice, and "the unilateral activity of another party or a third person" is not a contact to be attributed to the defendant. *Walden*, 571 U.S. at 284. That is the key distinction

from the cases on which the Trustee relies. In *Arcapita*, the defendant banks themselves "designated New York correspondent bank accounts to receive the funds" and "actively directed the funds at issue into those New York accounts." *Arcapita*, 549 B.R. at 69. In *Fairfield Sentry*, the foreign investor selected and repeatedly used United States correspondent accounts for its own purposes over available foreign alternatives. *In re Fairfield Sentry Ltd.*, 669 B.R. 690, 715 (Bankr. S.D.N.Y. 2025). Here, by contrast, Finanza was the payor of a single repayment to an account selected by its counterparties' agent. Mot. at 8-9. Because the forum connection was created by the lenders' choice of agent and the agent's choice of bank, it cannot be attributed to Finanza.

Third, the Trustee's characterization of the May 2024 payment as "recurring" use of the account is unsupported by the record. Exhibit 18 reflects a single principal paydown by Finanza on May 3, 2024, which the agent applied pro rata to the outstanding loans. Chubak Decl. Ex. 18 at 3, 5-10. One payment to an account selected and controlled by another party is not the "deliberate and recurring" use that supports jurisdiction. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013); Mot. at 8-9. Finanza's lone payment into the agent's account therefore cannot establish personal jurisdiction over Finanza.

**2. The Opposition Identifies No United States Contact by Ban100.**

Further, the Opposition identifies no suit-related contact between Ban100 and the United States Its only, vague theory for personal jurisdiction over Ban100 is that Ban100 "transmitted the subject funds to Finanza and was involved in this transaction from the outset." Opp. at 12. Even accepting that characterization, a payment by one Colombian entity to another Colombian entity in Colombia is not a United States contact. The Trustee's own exhibit describes the premium as an advance by Ban100 "made available to Finanza Inversiones," a Colombian entity. Chubak Decl. Ex. 9 at 12. Any subsequent use of those funds by Finanza cannot be attributed to Ban100. Contacts are attributable between affiliates only on a showing of alter ego or agency, *see In re Lyondell*

*Chem. Co.*, 543 B.R. 127, 144 (Bankr. S.D.N.Y. 2016); Mot. at 9-11, and the Trustee has abandoned his "single economic unit" theory without substituting any such allegation. *Cf. In re GBG USA Inc.*, 666 B.R. 115, 136 (Bankr. S.D.N.Y. 2024) (declining to attribute controlling parties' forum-directed conduct to affiliated defendants absent allegations of agency, conspiracy, or other basis for attribution).

Nor can the Trustee manufacture Ban100 contacts with the United States from particular individuals' attendance at Debtor's board meetings. Opp. at 12-13. The Opposition itself identifies those individuals by the shareholders they respectively represented ("Javier Ledesma of Gramercy, Maite Stebelski of GDA Luma and Alberto Hernandez of ACON") and describes Mr. Hernandez as voting under a proxy from the ACON-appointed Debtor director. Opp. at 12. It likewise describes Mr. Chaves as participating "as financial advisor to the Debtor"—a role that did not make him an officer of the Debtor or the person who made or implemented the decision. *Id*. Per the Trustee's own description, none of these individuals is alleged to have attended as an agent or on behalf of Ban100, and the Opposition alleges no facts showing that Ban100 directed or controlled their participation or decision-making. Overlapping or affiliated personnel, without more, do not establish jurisdiction over an entity; the entity itself must have taken some overt action connecting it to the forum. *See In re Huffy Corp.*, 358 B.R. 724, 743-44 (Bankr. S.D. Ohio 2006); *In re Schwinn Bicycle Co.*, 192 B.R. 461, 477 (Bankr. N.D. Ill. 1996) (overlap in executives and directors insufficient absent substantial day-to-day control); Mot. at 9-10. The Trustee fails to allege such control and, as noted above, alleges no agency or alter-ego relationship. In any event, attendance at a Colombian company's board meeting concerning a Colombian portfolio sale is not conduct directed at the United States.

### 3. The Effects Test Is Not Satisfied.

The Trustee's effects theory rests on the proposition that Ban100 knew Debtor was restructuring bonds governed by New York law, held in part by United States investors, and therefore knew that any transfer of Debtor value would be felt by United States creditors. Opp. at 12-14. The Supreme Court in *Walden* rejected this foreseeability-based theory, holding that "mere injury to a forum resident is not a sufficient connection to the forum," and the inquiry focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. at 285, 290. Knowledge that a counterparty has United States creditors is true of virtually every transaction with a company that has issued New York-law notes; if that were sufficient, every foreign counterparty of a debtor in a United States bankruptcy case would be subject to suit here.

The Trustee's reliance on *GBG* is misplaced. There, the debtor was a Delaware company, and the defendants allegedly caused it to transfer roughly $300 million out of its United States bank accounts; the court found their conduct aimed at the United States because its purpose was to move funds out of a United States company's New York account to the detriment of its United States creditors. *GBG,* 666 B.R. at 136. Here, Debtor is a Colombian company, the portfolios were Colombian loans paid for in pesos, and the premium moved between Colombian entities in Colombia. Compl. ¶¶ 8, 23-24, 62. And *GBG* dismissed the claims against defendants who were not alleged to have controlled the debtor or its parent, or to have caused the transfers either personally or through an agent. *Id.* at 136 (dismissing claims against Spencer Fung and Hurricane Millennium); Mot. at 10. The Trustee also argues that Ban100 "precipitated" the $2.7 million transfer and "expressly aimed" it at the Shareholder Lenders. Opp. at 13. Paying a premium to its Colombian parent in Colombia is not conduct aimed at the United States. Compl. ¶¶ 24, 62; Chubak Decl. Ex. 9 at 12. Nor does the Shareholder Lenders' United States domicile change the

analysis, because "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

**4. Exercising Jurisdiction Would Be Unreasonable.**

The Trustee does not dispute that the Colombian Defendants are Colombian entities, that the portfolio sales concerned Colombian loans paid for in Colombian pesos, that the witnesses and documents are in Colombia, or that Debtor is in a Colombian judicial liquidation in which BNY Mellon has asserted the bondholders' claims. Opp. at 15; Mot. at 12-14. His only response is that this is not a chapter 15 case, which is of no moment. Opp. at 15. The reasonableness inquiry, which weighs the burden on foreign defendants and the competing sovereign interests, favors the Colombian Defendants, as both factors weigh decisively against hauling a Colombian bank, subject to the supervision of the Superintendencia Financiera de Colombia, and its parent into this Court over purely Colombian transactions. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987). Moreover, doing so would run contrary to principles of comity and *forum non conveniens* as set forth in the Motion.

**B. The Preference Claim Against Finanza Fails**

**1. The Trustee Still Identifies No Antecedent Debt of Debtor Owed to Finanza.**

The Complaint itself pleads that the premium did not satisfy any debt of Debtor to Finanza. It alleges that Ban100 paid the funds to Finanza so that Finanza "would use the monies to pay down the Shareholder Loan," that Finanza paid them to the agent "to be applied to the Shareholder Loan," and that Finanza "had no entitlement, contractual or otherwise, to the sales premium." Compl. ¶¶ 62-63, 65, 135. Even assuming Debtor owed Finanza any obligation on the re-loaned proceeds, the Complaint nowhere alleges that the payment reduced that obligation. Mot. at 16.

The Opposition does not identify any debt of Debtor to Finanza that the May 2024 payment satisfied. Instead, it argues that the payment satisfied Debtor's *guaranty* of the Shareholder Loan, which it characterizes as an antecedent debt from the date the guaranty was executed. Opp. at 31

(citing *Matter of Cavalier Homes of Ga., Inc.*, 102 B.R. 878, 887 (Bankr. M.D. Ga. 1989)). But the guaranty runs to the Shareholder Lenders, and Finanza is the borrower under the Shareholder Loan with no rights under the guaranty. Compl. ¶¶ 44-45. A primary obligor is not its guarantor's creditor, so a payment reducing the guaranteed debt cannot be "on account of an antecedent debt" owed to Finanza. At most, the guaranty theory concerns the claims against the Shareholder Lenders and provides no basis for a Section 547 claim against Finanza.

The Trustee's remaining argument, that the Complaint alleges Finanza received the premium "on account of its loan of Shareholder Loan proceeds to the Debtor" (Opp. at 30-31 (citing Compl. ¶ 105)), is a bare legal conclusion contradicted by the Complaint's own factual allegations. The Complaint alleges that Finanza "had no entitlement, contractual or otherwise, to the sales premium" and that the funds passed through Finanza to Acquiom within days, to be applied to Finanza's own liability under the Shareholder Loan. Compl. ¶¶ 62-63, 65-66. The Complaint does not allege that any portion of the payment was credited against Debtor's separate obligations to Finanza. Mot. at 16. Courts need not credit "[g]eneral, conclusory allegations" that are "belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (conclusory statements are not entitled to the assumption of truth).

**2. The Complaint Does Not Plead Section 547(b)(5).**

The Trustee concedes that, to satisfy Section 547(b)(5) on the pleadings, he must plead facts supporting an inference that the transferee received more than it would in a hypothetical chapter 7 liquidation, which ordinarily requires a plausible allegation of insolvency on the petition date. Opp. at 31-32 (citing *In re Wonderwork, Inc.*, 611 B.R. 169, 214 (Bankr. S.D.N.Y. 2020)). The Complaint's only insolvency allegation is that the Offering Memorandum disclosed negative equity as of December 31, 2022, more than sixteen months before the transaction in question.

Compl. ¶ 109. Moreover, the same Offering Memorandum reports that Debtor's equity was restored by a Ps. 273,980 million shareholder capitalization in May 2023, that total equity was positive Ps. 274,582 million (approximately US$68 million) as of September 30, 2023, and that "[t]here has been no material change in our capitalization since September 30, 2023." OM at A-25, A-28, A-60. The Trustee therefore fails to plausibly plead insolvency in May 2024.[2]

The Trustee's attempt to cure this gap with a liquidation analysis filed in the main proceeding (Opp. at 32 (citing ECF No. 78, Ex. D)) is improper. The Trustee makes no mention of that analysis in the Complaint, and he cannot amend his pleading through an opposition brief. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Moreover, even if considered, the Trustee does not explain how a projection premised on a March 31, 2024, balance sheet and prepared to support confirmation of a plan that left every class other than the bondholders unimpaired shows that Finanza, as opposed to the bondholders, would have received less in a hypothetical liquidation. The premium represented only approximately 6.45% of the outstanding Shareholder Loan balance, far from the payment in full that would permit the Trustee to rely on insolvency alone. Mot. at 18-19.

Finally, the Trustee's argument that the mere conduit defense is fact-intensive and unavailable to insiders (Opp. at 30-31) does not salvage the claim. As an initial matter, the Motion noted that the Complaint does not plead the antecedent-debt and Section 547(b)(5) elements as to Finanza at all. Those pleading failures require dismissal, irrespective of any conduit defense. Further, *Pretty Girl* does not hold that affiliation alone forecloses the defense. The court there found that the intermediaries, which the debtor's principal created to shield funds from creditors, commingled the transferred funds and used them to pay other entities' bills, which is itself an

[2] Because the Trustee relies on the Offering Memorandum for Debtor's financial condition (Compl. ¶ 109), the Court may consider the full document, including the portions that contradict the Trustee's characterization. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (cited at Opp. 16).

exercise of dominion and control. *In re Pretty Girl, Inc.*, 644 B.R. 298, 310 (Bankr. S.D.N.Y. 2022). Under *Finley, Kumble,* the question is whether the intermediary had "the right to put the money to one's own purposes," and the existence of a relationship with the debtor does not answer it. *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997). The Complaint alleges no commingling. It alleges that Finanza "had no entitlement, contractual or otherwise, to the sales premium" and paid the same amount to the agent within days. Compl. ¶¶ 62-63, 65-66. Because those allegations appear on the face of the Complaint, the Court may consider the defense now. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

### C. The Fraudulent Transfer Claim Against Ban100 Fails

#### 1. The Trustee's Own Exhibit Shows the February 9, 2024, Sale Was for a 25% Premium.

The Section 548 claim against Ban100 challenges the February 9, 2024, portfolio sale. Compl. ¶¶ 114-115. The Opposition argues that lack of negotiation, lack of market testing, and insider status are sufficient to plead a lack of reasonably equivalent value, and that the price Ban100 paid is a matter outside the pleadings. Opp. at 33-34. However, the Trustee himself has now placed the price before the Court. The February 28, 2024 Debtor board minutes, which the Trustee submits and relies on, demonstrate that Debtor sold Ban100 assets with a total balance of COP 12,023,954,423, consisting of COP 11,558,109,120 in loan principal plus accrued interest and fixed charges, and that the sale reflected a premium of 25% of principal (COP 2,889,527,280). Chubak Decl. Ex. 7 at PDF pp. 30-31. The Trustee does not allege any fact suggesting that the fair value of the portfolio exceeded a price 25% above its principal balance. Therefore, the Complaint pleads no shortfall in value, and the Trustee's own evidence affirmatively negates any shortfall.

Insider status does not change the result. The Trustee cites *Sharp* for the proposition that reasonably equivalent value is not presumed for insider transfers (Opp. at 33), but *Sharp* does not

hold that insider status, without any factual allegation about value, permits an inference that a debtor received less than reasonably equivalent value. *See Sharp Int'l Corp. v. State St. Bank & Tr. Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005). The Trustee's burden-shifting authority, *Matter of Teltronics Services, Inc.*, 29 B.R. 139 (Bankr. E.D.N.Y. 1983), is inapposite because it addresses the evidentiary burden after a showing of insider misconduct, rather than the pleading standard under *Twombly* and *Iqbal*.

**2. The Complaint Does Not Plead Insolvency at the Time of the Sale.**

Constructive fraud under Section 548(a)(1)(B) also requires that Debtor was insolvent, inadequately capitalized, or unable to pay its debts at the time of the transfer. For the reasons set forth above, the Complaint's reliance on a December 2022 balance sheet does not plausibly plead insolvency in February 2024, where Debtor's own disclosures reported positive equity following the May 2023 capitalization. OM at A-25, A-60.

**3. The Opposition Does Not Salvage the Trustee's Actual Fraud Claim Against Ban100.**

The Motion articulated that the Complaint pleads no actual fraudulent transfer to Ban100 with requisite particularity under Rule 9(b). Mot. at 21-22. The Opposition's badges-of-fraud discussion is directed entirely to the $2.7 million premium paid to the Shareholder Lenders through Finanza, not to any transfer to Ban100. Opp. at 34. To the extent the Complaint asserts an actual fraud claim against Ban100, the Trustee has abandoned it.

**D. The Section 549 Claim Fails**

**1. The February 9, 2024, Sale Was Completed and Ratified Before the Petition Date.**

The Trustee's only argument for treating the February 9, 2024, sale as a postpetition transfer is a rhetorical question ("what would the reason for its postpetition ratification [be] unless the transaction were not complete until the board had approved same?"). Opp. at 28-29. His own exhibit, however, answers that question. The February 28, 2024, minutes reflect that Debtor's board ratified the February 9, 2024, sale to Ban100, and the authority of the legal representative to

execute it, more than two months before the May 16, 2024, petition date. Chubak Decl. Ex. 7 at PDF pp. 2, 30-31. The minutes describe the transaction as already carried out, including the endorsement of the promissory notes in favor of Ban100. *Id.* Whatever the purpose of the August 2024 resolution, it was not necessary to complete a transfer that had closed and been ratified prepetition. *Matter of Natchez Corp. of W. Va.*, 953 F.2d 184, 187 (5th Cir. 1992); Mot. at 28. A transfer completed before the petition date is outside Section 549 as a matter of law.

**2. The Postpetition Portfolio Sales Were Ordinary-Course Transactions Disclosed to Creditors and the Court.**

The Trustee argues that the postpetition sales fail the vertical test because no creditor could have known that Debtor sold portfolios to Ban100. Opp. at 26-28. The documents the Trustee relies upon show otherwise. The Offering Memorandum distributed to every solicited bondholder in March 2024 stated that Debtor "may sell a portion of our originated payroll loan portfolio" to fund growth and that "[p]urchasers of loans have included: Banco GNB, Banco Agrario and Ban100, among others." OM at A-74. It identified Ban100 and Finanza as economically related parties and reported intercompany balances with each. OM at F-37, F-57. The Trustee acknowledges that this disclosure appears in the replacement-bond Offering Memorandum. Opp. at 27 n.11. Debtor's first-day filings then advised the Court, and parties in interest, that Debtor "continues to sell some of its payroll loan portfolio to Ban100," Compl. ¶ 76; First Day Decl. ¶ 50(c), disclosed that Ban100 and Finanza were Related Parties in which Debtor's shareholders held a substantial ownership interest, and requested authority to continue performing under those Related Party Transactions in the ordinary course, Cash Mgmt. Mot. ¶¶ 56-58. A hypothetical creditor reviewing those disclosures would expect the sales the Trustee now challenges.

The Trustee's chosen "hypothetical creditor," BNY Mellon as indenture trustee (Opp. at 27), does not change the analysis. The vertical test asks "whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit."

*In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Bondholders who accepted the prepackaged plan *did so on the basis of a disclosure document identifying Ban100 as a portfolio purchaser*. The Trustee's reliance on *HMH Motor Services* (Opp. at 28) only highlights the distinction; there, the debtor concealed its insider transactions from the court, the U.S. Trustee, and creditors, whereas here, Debtor disclosed them in its solicitation materials and first-day pleadings. *In re HMH Motor Servs., Inc.*, 259 B.R. 440, 450 (Bankr. S.D. Ga. 2000). The Trustee's position that the indenture covenant required a different form of disclosure (Opp. at 27) is not a showing that creditors were surprised.

The Cash Management Orders confirm this point. The Trustee argues that neither order expressly authorizes the portfolio sales. Opp. at 28. However, both orders are entitled "Authorizing Continued Performance Under Related Party Transactions and Historical Practices," both recite that the Cash Management Motion sought to "authorize, but not direct . . . continued performance under related party transactions and historical practices," and both grant the Cash Management Motion "as set forth herein," the final order doing so "on a final basis." ECF No. 38 at 1-2; ECF No. 70 at 1-2. Additionally, the interim order required Debtor to maintain records so that "all transactions (including Related Party Transactions)" could be traced, a directive that presupposes those transactions would continue. ECF No. 38 ¶ 11.[3]

Read together with the motion they granted, the orders leave no room for the Trustee's position. The Cash Management Motion identified Finanza and Ban100 by name as Related Parties whose transactions "ensure liquidity and cash flow," warned that discontinuing those transactions "would cause irreparable harm," and asked the Court to confirm that Debtor could continue "netting and setting off obligations arising from Related Party Transactions, whether arising

[3] The Opposition cites this provision as paragraph 12 of the interim order. Opp. at 28. It is paragraph 11. ECF No. 38 ¶ 11.

prepetition or post-petition, in the ordinary course of business." Cash Mgmt. Mot. ¶¶ 56-58. Debtor's First Day Declaration, filed at the same time, told the Court that Debtor "continues to sell some of its payroll loan portfolio to Ban100." First Day Decl. ¶ 50(c). The Court granted that motion "as set forth herein," first on an interim and then on a final basis. Against that record, the Trustee cannot plausibly contend that the Ban100 portfolio sales fell outside the relief the Court granted. At a minimum, Debtor's request and the Court's grant of the motion make implausible any contention that Debtor, its creditors, and the Court did not understand the Ban100 sales to be part of Debtor's ordinary course of business.

With respect to the horizontal test, the Trustee argues that whether portfolio sales are common in the industry is a fact question. Opp. at 28-29. However, the Complaint itself alleges that Debtor regularly sold portfolios to Ban100 and others before the petition date (Compl. ¶ 40), and the Offering Memorandum describes portfolio sales to supervised financial institutions as part of Debtor's funding model. OM at A-74. The Trustee pleads no fact suggesting that payroll lenders do not ordinarily sell loan portfolios to banks; his only allegation, that the secondary market was "frozen" in 2024 (Compl. ¶ 122), is conclusory and does not address industry practice. Mot. at 25.

### E. The Trustee Has Conceded the Section 544(b) Claim

The Motion asserts four independent grounds for dismissal of the Section 544(b)(1) claim: (i) Section 544(b) cannot reach postpetition transfers; (ii) the Complaint identifies no actual triggering creditor; (iii) the Complaint does not plead the elements of the Colombian acción pauliana; and (iv) the presumption against extraterritoriality bars the claim. Mot. at 29-32. The Opposition does not respond to any of them. Where a plaintiff fails to respond to an argument for dismissal, courts in this Circuit deem the claim abandoned. *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020). The Section 544(b) claim should be dismissed with prejudice.

### F. The Turnover Claim Fails

The Trustee's turnover theory depends on first establishing that Ban100's setoffs were nonmutual and violated the stay, and only then treating the purchase price as unpaid. Opp. at 17, 37; Compl. ¶ 137. A debt contingent on a judgment establishing liability is not "matured" or "presently payable," *In re Celsius Network LLC*, 668 B.R. 722, 752 (Bankr. S.D.N.Y. 2025), and turnover cannot recover property whose transfer has not yet been avoided, *In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005). *See also In re Madison Williams & Co., LLC*, 509 B.R. 791, 799 (Bankr. S.D.N.Y. 2014) (§ 542(b) "cannot be used to recover a disputed pre-petition debt"); Mot. at 32-34. Because the Trustee seeks to use Section 542(b) to establish and revive a disputed obligation rather than to collect an acknowledged one, the turnover claim should be dismissed.

Under Colombian law, set-off (compensación) is one of the modes by which obligations are extinguished, pursuant to Article 1625(5) of the Colombian Civil Code, and Article 1714 thereof provides that, where two persons are debtors of one another, set-off operates between them and extinguishes both debts. Accordingly, the application of Colombian law cannot be construed to mean that the parties' obligations lacked mutuality. This further confirms that the transaction took place in Colombia, was governed by Colombian law, concerned Colombian assets, and was paid in Colombian legal tender.

## III. CONCLUSION

For the foregoing reasons and those set forth in the Motion, the Colombian Defendants respectfully request that the Court dismiss the Complaint as against Ban100 and Finanza for lack of personal jurisdiction or, in the alternative, for failure to state a claim, and grant such other and further relief as the Court deems just and proper.

Dated: November 20, 2026

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

*/s/ Adam D. Herring*
Adam D. Herring (admitted *pro hac vice*)
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Tel: (404) 322-6143
Fax: (404) 322-6050
Email: Adam.Herring@nelsonmullins.com

-and-

Paige L. Epstein
330 Madison Avenue, 27th Floor
New York, New York 10017
Tel: (212) 413-9077
Email: Paige.Epstein@nelsonmullins.com

*Attorneys for Defendants Bancien S.A. and Finanza Inversiones S.A.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 20, 2026, a true and correct copy of the foregoing *Reply Memorandum of Law in Further Support of Bancien S.A. And Finanza Inversiones S.A.'s Motion To Dismiss Adversary Complaint* was served via CM/ECF on all parties registered to receive electronic notices.

*/s/ Adam D. Herring*________
Adam D. Herring