**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CREDIVALORES - CREDISERVICIOS S.A.<br>Debtor | Chapter 7<br><br>Case 24-10837 (DSJ) |
| SALVATORE LAMONICA solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.<br>Plaintiff,<br>v.<br><br>BANCIEN S.A. aka Ban100 S.A. fka Banco Credifinanciera S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP, DAVALIA GESTION DE ACTIVOS S.L, LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC and JOSÉ MIGUEL KNOELL<br>Defendants. | Adv. Proc. 26-01063 (DSJ)<br><br>Hearing Date: December 8, 2026 at 10:00 a.m. |

**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GRAMERCY DEFENDANTS' MOTION TO DISMISS THE TRUSTEE'S COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST GFM (FIRST CLAIM) ..... 2

A. The Complaint Fails to Plausibly Plead That GFM Owed Fiduciary Duties to the Debtor ..... 2

B. The Complaint Fails to Plausibly Plead A Collective Control Theory as to GFM and Other Defendants ..... 6

II. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST FERRARO (FIRST CLAIM) ..... 8

A. The Complaint Fails To Plead Bad Faith ..... 8

B. The Complaint Fails To Plead Breach of Any Duty to Preserve Estate Property ..... 9

C. The Complaint Fails To Plead that Ferraro Breached the Diligence of a Prudent Business Person Under Colombian Law ..... 10

III. THE COMPLAINT FAILS TO PLEAD A § 547 PREFERENCE CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SECOND CLAIM) ..... 10

A. The Complaint Fails to Plead a “Transfer of An Interest of the Debtor in Property” to GCS On Account of Debtor’s Antecedent Debt ..... 10

B. The Complaint Fails to Plead a Preference Payment to Gramercy Colombia ..... 11

C. The Complaint Fails to Adequately Plead the “Greater Than in Chapter 7” Element ..... 11

IV. THE COMPLAINT FAILS TO PLEAD A § 548 ACTUAL FRAUDULENT CONVEYANCE CLAIM AGAINST GCS (THIRD CLAIM) ..... 12

A. The Trustee Fails to Plead Actual Fraud with Rule 9(b) Particularity And Ignores that GCS Did Not Receive Debtor Property ..... 12

B. The § 548(c) Value Defense Is Apparent From the Face of the Complaint ..... 13

V. THE COMPLAINT FAILS TO PLEAD A § 550 RECOVERY CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SIXTH CLAIM) ..... 13

A. Gramercy Colombia and GCS Are Not Initial Transferees ..... 13

B. The § 550(b)(1) Good Faith Defense Is Apparent From the Face of the Complaint as to GCS ..... 15

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Cases**

*Augenbaum v. Anson Invs. Master Fund LP*,
2024 U.S. Dist. LEXIS 12791 (S.D.N.Y. Jan. 24, 2024) ........ 6

*Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*,
2001 WL 1641239 (Del. Ch. Dec. 4, 2001) ........ 4

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 6

*Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
130 F.3d 52 (2d Cir. 1997) ........ 14

*Feldman v. Chase Home Fin. (In re Image Masters, Inc.)*,
421 B.R. 164 (Bankr. E.D. Pa. 2009) ........ 13

*Geron v. Cent. Park Realty Holding Corp. (In re Nanobeak Biotech Inc.)*,
656 B.R. 350 (Bankr. S.D.N.Y. 2024) ........ 12

*Global Crossing Est. Representative v. Winnick*,
2006 U.S. Dist. LEXIS 53785 (S.D.N.Y. Aug. 3, 2006) ........ 5

*Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus.)*,
329 B.R. 411 (Bankr. S.D.N.Y. 2005) ........ 3, 4, 5

*Guilbeau v. Footprint Int'l Holdco, Inc.*,
360 A.3d 288 (Del. Ch. 2026) ........ 5

*Halperin v. Morgan Stanley Inv. Mgmt. (In re Tops Holding II Corp.)*,
646 B.R. 617 (Bankr. S.D.N.Y. 2022) ........ 8

*In re Cavalier Homes of Ga., Inc.*,
102 B.R. 878 (Bankr. M.D. Ga. 1989) ........ 11

*In re GBG USA Inc.*,
666 B.R. 115 (Bankr. S.D.N.Y. 2024) ........ 5

*In re Gorski*,
766 F.2d 723 (2d Cir. 1985) ........ 9

*In re Hansen Medical, Inc. S'holders Litig.*,
2018 Del. Ch. LEXIS 197 (Del. Ch. June 18, 2018) ........ 7

*In re Nelco, Ltd.*,
264 B.R. 790 (Bankr. E.D. Va. 1999) ........ 9

*In re Primedia Inc., Derivative Litig.*,
910 A.2d 248 (Del. Ch. 2006)........................................................................................ 4

*In re Tanner Family, LLC*,
556 F.3d 1194 (11th Cir. 2009) ................................................................................ 11

*In re Tilray, Inc. Reorganization Litig.*,
2021 Del. Ch. LEXIS 111 (Del. Ch. June 1, 2021) ................................................... 7

*In re USACafes, L.P. Litig.*,
600 A.2d 43 (Del. Ch. 1991)........................................................................................ 3

*Lamonica v. Tilton (In re TransCare Corp.)*,
602 B.R. 234 (Bankr. S.D.N.Y. 2019)..................................................................... 6, 8

*Nisselson v. Softbank AM Corp. (In re MarketXT Hldgs. Corp.)*,
361 B.R. 369 (Bankr. S.D.N.Y. 2007)...................................................................... 12

*O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*,
466 B.R. 596 (Bankr. S.D.N.Y. 2012)........................................................................ 8

*Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*,
357 B.R. 32 (Bankr. S.D.N.Y. 2006)........................................................................ 11

*Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Bolmen (In re Hydrogen, L.L.C.)*,
431 B.R. 337 (Bankr. S.D.N.Y. 2010)...................................................................... 12

*Owl Creek Asia I, L.P. v. United States*,
148 Fed. Cl. 614 (2020) ............................................................................................. 7

*Perlman v. Feldmann*,
219 F.2d 173 (2d Cir. 1955)........................................................................................ 5

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*,
12 F.4th 171 (2d Cir. 2021) ...................................................................................... 15

*Robbins & Co. v. A.C. Israel Enters., Inc.*,
1985 WL 149627 (Del. Ch. Oct. 2, 1985) .................................................................. 5

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
650 B.R. 5 (Bankr. S.D.N.Y. 2023)........................................................................... 10

*Sheldon v. Pinto Tech. Ventures, L.P.*,
220 A.3d 245 (Del. 2019) ......................................................................................... 5, 7

*Silverman v. Actrade Cap., Inc.*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) .......... 13

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) .......... 14

*St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*,
745 F. Supp. 2d 303 (S.D.N.Y. 2010) .......... 6

*Staehr v. Hartford Fin. Servs. Grp.*,
547 F.3d 406 (2d Cir. 2008) .......... 15

*Summa Corp. v. Trans World Airlines, Inc.*,
540 A.2d 403 (Del. 1988) .......... 5

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) .......... 4

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) .......... 14

*Yadkin Valley Bank & Tr. Co. v. McGee (In re Hutchinson)*,
5 F.3d 750 (4th Cir. 1993) .......... 9

**Statutes**

11 U.S.C. § 547 .......... 10, 11

11 U.S.C. § 548 .......... 12

11 U.S.C. § 550 .......... 13, 15

The Gramercy Defendants[1] respectfully submit this reply memorandum of law in further support of their Motion and in response to the Trustee's Memorandum of Law in Opposition (the "Opposition" or "Opp."), ECF No. 51.

## INTRODUCTION

As set forth in the Gramercy Defendants' opening brief ("Br.") and below, each of the claims asserted against the Gramercy Defendants fails as a matter of law:

***Gramercy Funds Management LLC owed no fiduciary duties to the Debtor.*** To plausibly allege that a third-party financial adviser such as GFM owed fiduciary duties to the Debtor, governing case law requires the Trustee to show that GFM exercised majority or de facto control over the Debtor. The Complaint is devoid of any such well-pleaded facts, and the Opposition fails to engage with the case authorities cited in the Motion. Instead, the Trustee relies on entirely inapplicable Delaware partnership law cases. Repeatedly calling GFM a "controlling shareholder" does not substitute for well-pleaded factual allegations to meet the exacting standard to impose fiduciary duties on third parties. Equally deficient is the Trustee's effort to plead a "control group" theory as to GFM and unaffiliated investors. *See Argument, § I.*

***Gustavo Ferraro is not plausibly alleged to have breached his fiduciary duty of good faith, as a director of the Debtor.*** To plead breach, the Trustee must allege facts showing that Ferraro was interested, lacked independence, or acted in bad faith. The Opposition abandons the first two theories and relies solely on the assertion that Ferraro's board votes were cast in "bad faith," without any supporting well-pleaded facts. Identifying from extrinsic board minutes how Ferraro voted does not plead that he acted outside of the Debtor's interest. *See Argument, § II.*

***Neither GCS nor Gramercy Colombia received any preference from the Debtor.*** GCS

[1] Terms not defined herein have the meaning ascribed to them in the Gramercy Defendants' Motion to Dismiss (the "Motion"), ECF No. 37.

and Gramercy Colombia did not receive a transfer of Debtor property on account of a Debtor's debt. The Trustee argues that Finanza's payment on its own primary obligation to the Shareholder Lenders, including approximately $1.185 million paid through Acquiom to GCS, somehow satisfied the Debtor's contingent guaranty—but this confuses when a guaranty obligation arose with whether the challenged transfer was made on account of it. As to Gramercy Colombia, the Trustee contends that a $50,000 payment to a law firm was for its benefit, but ignores that Gramercy Colombia did not receive the payment. *See Argument, § III*.

***No fraudulent conveyance claim is properly pleaded against GCS.*** As to the $1.185 million payment, the Trustee ignores the threshold reason this claim fails—GCS received no transfer of Debtor property. The "badges of fraud" the Trustee claims appear elsewhere in the Complaint do not establish the Debtor's intent to "hinder, delay or defraud" creditors. *See Argument, § IV*.

***The Trustee's recovery claims against GCS and Gramercy Colombia independently fail.*** Recovery under § 550 requires an avoided transfer, which the Complaint does not plead. In the Opposition, the Trustee also advances a new step-transaction theory that GCS was an initial transferee, declines to apply the Second Circuit's dominion and control test, and does not respond to the showing that § 550(d) entitles him "to only a single satisfaction." *See Argument, § V*.

## ARGUMENT

## I. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST GFM (FIRST CLAIM)

The Trustee cites no case imposing fiduciary duties on a non-director/officer situated similarly to GFM, whether on an individual or collective control theory.

### A. The Complaint Fails to Plausibly Plead That GFM Owed Fiduciary Duties to the Debtor

The Trustee wholly fails to respond to the authorities cited in the opening brief holding that

third parties such as GFM can *only* have fiduciary duties toward a corporation imposed upon them based on a *strong showing* that they exercised a high degree of control over the corporation, tantamount to majority voting control or de facto control. Br. at 10; *see, e.g.*, *Grumman Olson Indus. v. McConnell (In re Grumman Olson Indus.)*, 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005) ("Merely taking an active part in the management of the debtor corporation does not automatically constitute control." (citation omitted)). Rather than address those on-point authorities—which do not rely on partnership law—the Opposition relies on inapplicable Delaware cases concerning whether directors and affiliates of a general partner owe fiduciary duties to a limited partnership. Those authorities do not show how an investment adviser to a fund holding interests in a *minority* shareholder of the Debtor could control or owe fiduciary duties to the Debtor. In effect, the Trustee asks the Court to extend partnership law principles to a corporation to avoid the requisite strong showing of control the case law requires.

In any event, none of the Trustee's cited authorities changes the analysis here: *In re USACafes, L.P. Litigation* held that directors of a corporate general partner could owe fiduciary duties to the partnership and its limited partners, reasoning that "[w]hen control over corporate property was recognized to be in the hands of shareholders who controlled the enterprise, the fiduciary obligation was found to extend to such persons as well." 600 A.2d 43, 48 (Del. Ch. 1991). Here, the Complaint pleads no facts showing that GFM controlled the Debtor's property, a point the Trustee ignores.[2] *Wallace v. Wood* likewise turned on specific facts pleaded "in detail, and in a nonconclusory manner," including that defendants "creat[ed] one of the Affiliate

[2] Even if the Trustee argues that GFM controlled the Debtor indirectly through affiliates, *USACafes* alleged specific facts such as failing to solicit alternative proposals, failing to negotiate in good faith, agreeing to sell assets at a grossly inadequate price, and providing inducements to the individual defendants (approx. $17 million) that were not offered to the class. *Id.* at 50. The Trustee alleges no similar facts here as to GFM.

defendants" and used the Affiliate "to make acquisitions" and "to generate management fees," "usurped business opportunities," "manipulat[ed] an appraisal process for personal gain," and "subverted the appraisal process . . . by backdating the appraisal dates." 752 A.2d 1175, 1181–82 (Del. Ch. 1999). *Bigelow/Diversified Secondary Partnership Fund 1990 v. Damson/Birtcher Partners* confirms the Trustee must first plead that GFM exercised control over the Debtor. 2001 WL 1641239 (Del. Ch. Dec. 4, 2001). There, the plaintiffs alleged that defendants "controlled the day-to-day operations and affairs of the Partnerships," including using such control to deter sales of the Partnership's property and to receive "unearned disposition fees, management contracts, and 'equity kickers'" from the eventual sales. *Id.* at *8

*In re Primedia Inc., Derivative Litigation*, the sole private equity case the Trustee cites, likewise requires "domination" by GFM "through actual control" of the Debtor's "corporate conduct," and importantly, holds that "the bare allegation that [the third party] possessed the potential ability to exercise control is insufficient." 910 A.2d 248, 257 (Del. Ch. 2006). While *Primedia* held that allegations of control over the particular transaction at issue are enough, the facts alleged there included "discussions of KKR's control contained in Primedia's SEC filing," "the number of KKR associates on Primedia's board," and a course of dealing such as the lack of an independent committee to consider the early redemption of the preferred stock. *Id.* at 259. Here, the Trustee only alleges that GFM controlled the decisions of its own affiliate, Lacrot, not that GFM controlled the Debtor. And because Lacrot held only 42% of the Debtor's shares, this falls short of a "strong showing that the creditor assumed actual, participatory, total control of the debtor." *Grumman Olson Indus.*, 329 B.R. at 427.

The Trustee's remaining authorities, which hold that a defendant without majority control may owe fiduciary duties, do not cure the Complaint's failure to plead that GFM actually *exercised*

*control* over the Debtor's business affairs, as case law requires. *See Guilbeau v. Footprint Int'l Holdco, Inc.*, 360 A.3d 288, 312 (Del. Ch. 2026) (noting that "plaintiffs do not seek to show that [defendant] exercised non-majority control generally"); *In re GBG USA Inc.*, 666 B.R. 115, 137 (Bankr. S.D.N.Y. 2024) (finding that the amended complaint alleges "actual control," such as the debtor's annual report describing defendants as "controlling shareholders"); *Robbins & Co. v. A.C. Israel Enters., Inc.*, 1985 WL 149627, at *5 (Del. Ch. Oct. 2, 1985) (discussing control in the context of expert evidence and stock valuation). Nor do cases finding that a given percentage stake conferred working control bear on an investment adviser that held no stake at all. *See* Opp. 21–22 (citing *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 404–05 (Del. 1988); *Perlman v. Feldmann*, 219 F.2d 173, 174 n.1 (2d Cir. 1955)).

The Complaint's governance allegations—that "decisions were made at the investment adviser level and communicated to the employees and representatives designated to serve on the Board," Opp. at 23—are exactly the ordinary course governance facts that *Grumman Olson* holds insufficient. 329 B.R. at 427. And the Trustee's reliance on GFM's appointment of directors—only two of the Debtor's seven—ignores *Global Crossing Estate Representative v. Winnick*, 2006 U.S. Dist. LEXIS 53785, at *74 (S.D.N.Y. Aug. 3, 2006) (declining to adopt "such a novel and expansive conception of New York fiduciary duty law" in imputing a director's fiduciary obligations to the investment adviser that appointed him, noting that such expansion could impact investors' willingness to serve on a corporation's board).[3]

Seemingly recognizing these deficiencies, the Trustee now seeks to rely on the Debtor's board minutes to assert that a GFM employee, Javier Ledesma, "direct[ed]" the Debtor in certain

[3] Moreover, *Sheldon*, which the Trustee cites, emphasized that appointing directors "does not, without more, establish actual domination or control." *Sheldon v. Pinto Tech. Ventures, L.P.*, 220 A.3d 245, 253 (Del. 2019).

ways. *See* Opp. 17–18, 24–25 & n.10, 35–36. None of these assertions appears in the Complaint. Under *Chambers v. Time Warner, Inc.*, a document is "integral" to a complaint only where the complaint "relies heavily upon its terms and effect." 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). The Complaint contains only passing references to the minutes, Compl. ¶¶ 64, 87, 90, 125, and does not describe the content the Trustee now invokes.[4]

**B. The Complaint Fails to Plausibly Plead A Collective Control Theory as to GFM and Other Defendants**

The Trustee's alternative theory—that GFM and other shareholders collectively controlled the Debtor in ways that require imposition of fiduciary duties upon them—fares no better. The Complaint pleads no actual "agreement" among the defendant investment advisers to support the Trustee's control group theory. *See Augenbaum v. Anson Invs. Master Fund LP*, 2024 U.S. Dist. LEXIS 12791, at *15 (S.D.N.Y. Jan. 24, 2024) ("[A] number of shareholders, each of whom individually cannot exert control. . . can collectively form a control group . . . by contract, common ownership, agreement, or other arrangement."); *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 312–13 (S.D.N.Y. 2010) (requiring "a voting agreement among the group or a 'blood pact to act together'" for control group theory (citation omitted)). The Trustee fails to address any of the cases cited in the Gramercy Defendants' opening brief, including *Tilton*, which involved *this very same Trustee*. *See Lamonica v. Tilton (In re TransCare Corp.)*, 602 B.R. 234, 246–47 (Bankr. S.D.N.Y. 2019) ("To show that the requisite degree of control exists generally, a plaintiff may establish that a defendant or group of defendants exercised sufficient influence 'that they, as a practical matter, are no differently situated than if they had majority voting control' of

[4] Even if the minutes could be considered at this stage, they reflect only that Ledesma asked questions and made requests, not that he directed the Debtor to act at GFM's behest. *See* Declaration of Jeffrey Chubak ("Chubak Decl."), Ex. 7 at 22; Ex. 9. None of this demonstrates control of the Debtor by GFM.

the corporation." (citation omitted)).

Ignoring that standard, the Trustee relies on off-point Delaware cases that defeat any control group theory. *Sheldon* found that "allegations in the complaint fall short of this [control group] standard," noting that the plaintiffs failed to specify whether the defendants invest through exclusive private placements, "how many or which of them participated, what rights they obtained, when they occurred, or whether they agreed to vote together on any matters," whether they held themselves out as "a group of investors" to the SEC, and how they "coordinated their allegedly 'long and close relationship of investing together for their mutual benefit.'" 220 A.3d at 252, 255. So too here: the Complaint pleads no agreement to vote together, no holding out as a group, and no coordinated investment for mutual benefit. *In re Hansen Medical, Inc. Stockholders Litigation* likewise requires "more than mere concurrence of self-interest among certain stockholders to state a claim based on the existence of a control group," and sustained the claim only because defendants were alleged to have been "declar[ing] themselves as a group of stockholders" over 21 years of "coordinating investment strategy in at least seven different companies." 2018 Del. Ch. LEXIS 197, at *16, *18 (Del. Ch. June 18, 2018). And *In re Tilray, Inc. Reorganization Litigation* rested on "a concurrence of interests . . . the desire to avoid massive tax liability" that was not shared by other stockholders, and on founders who were "former classmates and long-time friends" and held themselves out as partners. 2021 Del. Ch. LEXIS 111, at *28–29 (Del. Ch. June 1, 2021).

Here, the agreements the Trustee identifies in support of his control group theory are ordinary-course financing and investment documents. Opp. 25 (citing Compl. ¶¶ 35, 45–50, 56). None concerns voting the Debtor's shares, designating or directing its Board, or managing its affairs. If co-lending and co-investment were enough, any assemblage of minority investors could be deemed a fiduciary control group. *See, e.g.*, *Owl Creek Asia I, L.P. v. United States*, 148 Fed.

Cl. 614, 639 (2020); *Tilton*, 602 B.R. at 248 ("[T]he exercise of remedies under a loan agreement . . . without more, does not render [a lender] in control under theories of lender liability or breach of fiduciary duty."). That is not the law, and the Trustee cites no case supporting the dramatic expansion of fiduciary duties he asks this Court to impose.

## II. THE COMPLAINT FAILS TO PLEAD BREACH OF FIDUCIARY DUTY AGAINST FERRARO (FIRST CLAIM)

To show that Ferraro breached his fiduciary duty as a director of the Debtor, the Trustee must plead facts showing that Ferraro was interested, lacked independence, or acted in bad faith. *See Halperin v. Morgan Stanley Inv. Mgmt. (In re Tops Holding II Corp.)*, 646 B.R. 617, 698 (Bankr. S.D.N.Y. 2022). The Opposition completely ignores the opening brief's showing that Ferraro was neither interested nor lacking independence, and now relies solely on the theory that Ferraro acted in bad faith by voting to approve these transactions. *See* Br. at 16–17.

### A. The Complaint Fails To Plead Bad Faith

Bad faith requires well-pleaded facts with particularity showing that a director intentionally acted with a purpose other than advancing the corporation's best interest. The Trustee attempts to meet that standard by asserting that the Defendants offer "no business justification" for the Board approvals of the Shareholder Loan and payroll loan portfolio transfers. Opp. at 16–17.[5] But it is the Trustee's burden to plead facts supporting an inference of bad faith, not the Defendants' burden to justify each Board decision on a motion to dismiss.

The Complaint contains no allegation that Ferraro so acted. *See O'Toole*, 466 B.R. at 604; *Halperin*, 646 B.R. at 712 (dismissing bad faith claim where the pleading failed to allege directors knew or recklessly disregarded insolvency when approving challenged distributions). The

[5] The Trustee incorrectly asserts that no Defendant addressed the duty of good faith. Opp. at 16. The Gramercy Defendants did so. *Compare* Br. 17–18 (citing *O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, 466 B.R. 596, 604 (Bankr. S.D.N.Y. 2012)), *with* Opp. 16–17.

Trustee's use of the April 29 and August 28 minutes to identify how Ferraro voted does not cure that deficiency; the vote shows only that he participated in the vote—not that he did so in bad faith.

The Trustee's reliance on counsel's pre-petition advice that "[n]o payments to related parties may be made while the Company is subject to the filing," Opp. at 21, 34–35, likewise does not plead bad faith. That advice comes from minutes outside the pleading. And on its face it shows a board approving a transaction structure to comply with legal advice, which does not demonstrate a purpose to injure the Debtor.

**B. The Complaint Fails To Plead Breach of Any Duty to Preserve Estate Property**

The Trustee next contends that Ferraro breached the federal common law duty of a debtor in possession's directors to preserve estate property, including by failing to prevent other payroll loan portfolio transactions and payments to Ban100 for operating costs. Opp. at 18–20. The Complaint likewise fails to plead a breach of that duty. The sole supporting allegation in the Complaint is that Ferraro breached his duties "*to the extent* that [Ferraro] approved payroll loan portfolio sales to Ban100 without adequate consideration, or without consideration at all, and by ratifying the February 9, 2024 payroll loan portfolio sale without consideration." Compl. ¶ 96 (emphasis added). That conditional allegation does not plead that Ferraro's votes were anything other than a legitimate exercise of business judgment. Nor does the Trustee's fallback negligence theory—that transactions occurred "beneath the noses" of the directors, Opp. at 20—identify any transaction Ferraro knew of and failed to stop, or any fact that put him on notice.

The Trustee's authorities are inapposite. *In re Nelco, Ltd.*, 264 B.R. 790, 812 (Bankr. E.D. Va. 1999) (debtor's president and CEO concealed the receipt of a refund and asserted refund could be used at his own discretion); *In re Gorski*, 766 F.2d 723, 726 (2d Cir. 1985) (Chapter 13 trustee had a "duty to monitor the debtor's payments under a plan and to take appropriate action"); *Yadkin Valley Bank & Tr. Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 751 (4th Cir. 1993) (remanding

for fact-finding whether defendant failed to preserve the estate's dairy farm equipment). None holds that a director's vote to approve transactions breaches the duty to preserve the estate.

### C. The Complaint Fails To Plead that Ferraro Breached the Diligence of a Prudent Business Person Under Colombian Law

The Trustee alternatively asserts that Ferraro failed to act with the diligence of a prudent businessperson under Colombian law. The Trustee, not the Defendants, bears that burden of establishing Colombian law. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 650 B.R. 5, 16 (Bankr. S.D.N.Y. 2023). Additionally, the Trustee's assertion that Colombian law imposes a simple negligence standard (Opp. 20 n.9) is an unsupported legal argument. Even under that standard, the assertion that the Complaint pleads facts to "support an inference" of imprudence does not show that Ferraro failed to act as a prudent businessperson.

## III. THE COMPLAINT FAILS TO PLEAD A § 547 PREFERENCE CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SECOND CLAIM)

Section 547(b) avoids a transfer only if it is "of an interest of the debtor in property," made to or for the benefit of a creditor, "for or on account of an antecedent debt owed by the debtor," that enables the creditor to receive more than it would in a Chapter 7 liquidation. 11 U.S.C. § 547(b). The Complaint fails to plead these elements as to either GCS or Gramercy Colombia.

### A. The Complaint Fails to Plead a "Transfer of An Interest of the Debtor in Property" to GCS On Account of Debtor's Antecedent Debt

The preference claim against GCS rests on the portion of the sales premium that GCS received on the Shareholder Loan from Finanza through Acquiom. Because Finanza, not the Debtor, was the borrower on that loan, the Trustee attempts to connect the payment to the Debtor by arguing that the Debtor guaranteed the loan, and the required "antecedent debt" under § 547 "arose when the guaranty was made." Opp. 31. But the issue is not *when* the Debtor's contingent guaranty obligation arose, but whether the challenged transfer was made "for or on account of"

that obligation, using "an interest of the debtor in property." 11 U.S.C. § 547(b). The Complaint pleads that the sales premium was paid by Ban100 to Finanza, by Finanza to Acquiom "to be applied to the Shareholder Loan," and by Acquiom to the lenders—a payment of Finanza's primary obligation as borrower, not the Debtor's. Compl. ¶¶ 44, 62, 65–66; *see also* Br. 19–20.

The Trustee's reliance on the allegation that Finanza received the premium "on account of its loan of Shareholder Loan proceeds to the Debtor," Opp. at 30, only confirms that any antecedent debt satisfied was a debt owed to Finanza, not to GCS. A payment on a third party's debt is not a payment on the debtor's antecedent debt. *Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 48 (Bankr. S.D.N.Y. 2006). Although the Trustee invokes the same decision for its broad reading of "antecedent debt," Opp. at 31, *Enron* applied that reading in holding that a payment on a third party's debt is not avoidable as a preference. The Trustee's out-of-circuit authorities concern whether an antecedent debt existed; neither holds that a payment by the primary obligor (here, Finanza) satisfies the guarantor's (here, the Debtor) debt for preference purposes. *See* Opp. 31; *In re Cavalier Homes of Ga., Inc.*, 102 B.R. 878, 887 (Bankr. M.D. Ga. 1989); *In re Tanner Family, LLC*, 556 F.3d 1194, 1197 (11th Cir. 2009) (holding that debt was incurred upon the signing of a lease).

**B. The Complaint Fails to Plead a Preference Payment to Gramercy Colombia**

The Trustee sidesteps the defect in the preference claim—the Debtor's $50,000 payment to Latham & Watkins for legal fees to lenders "including Gramercy Colombia" (Compl. ¶ 58)—and responds only that "attribution" of the payment to the defendant is irrelevant, Opp. at 33. This does not alter the fact that it was paid to Latham & Watkins, nor does it cure the Complaint's failure to plead that the payment was "on account of" the Debtor's guaranty obligation.

**C. The Complaint Fails to Adequately Plead the "Greater Than in Chapter 7" Element**

Section 547(b)(5) also requires the Trustee to plead that the transfer "enables [the] creditor to receive more than such creditor would receive" in a hypothetical Chapter 7 liquidation. *See* Br. at 20. To supply that missing allegation, the Trustee points to the Debtor's alleged insolvency and to the liquidation analysis filed with the Debtor's prepackaged Chapter 11 plan. Opp. at 32; Main Case ECF No. 6. That analysis was neither incorporated into nor relied on in the Complaint, and the Court "should not consider documents that are not attached to the complaint or incorporated by reference." *Geron v. Cent. Park Realty Holding Corp. (In re Nanobeak Biotech Inc.)*, 656 B.R. 350, 361 (Bankr. S.D.N.Y. 2024); *see also Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Bolmen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (dismissing preference claim for failure to plead the § 547(b)(5) element with adequate factual specificity).

## IV. THE COMPLAINT FAILS TO PLEAD A § 548 ACTUAL FRAUDULENT CONVEYANCE CLAIM AGAINST GCS (THIRD CLAIM)

Avoidance of an actual fraudulent transfer under § 548(a)(1)(A) requires a transfer of an interest of the debtor in property made with actual intent to hinder, delay, or defraud creditors—an element that must be pleaded with Rule 9(b) particularity. The Complaint fails to do so.

### A. The Trustee Fails to Plead Actual Fraud with Rule 9(b) Particularity And Ignores that GCS Did Not Receive Debtor Property

The Trustee seeks to avoid as an actual fraudulent conveyance the $1.185 million that GCS received from Finanza through Acquiom. But the Complaint does not plead that the payment GCS received from Acquiom was Debtor property, as § 548(a)(1) requires. Nor does the Trustee cure the failure to plead actual fraud with Rule 9(b) particularity, including who formed the fraudulent intent and how. *See Nisselson v. Softbank AM Corp. (In re MarketXT Hldgs. Corp.)*, 361 B.R. 369, 395–97 (Bankr. S.D.N.Y. 2007). The Trustee now asks the Court to search "the Complaint as a whole" for badges of fraud. Opp. 34. But even taken together, the asserted badges—insider status, payment before the due date, the Debtor's financial condition, and the general chronology—

do not sufficiently "establish the intent of the Debtor to 'hinder, delay or defraud' creditors." *Silverman v. Actrade Cap., Inc.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005). On insider status, the cited paragraphs state only that the Debtor had four shareholders, including Gramercy. *See* Compl. ¶¶ 28, 30. As explained *supra*, Lacrot, not GFM, GCS, or Gramercy Colombia, held that interest. The "chronology" badge depends entirely on the April 29 minutes outside the pleading (Opp. 34–35), and, as discussed above, reflect counsel's advice regarding post-petition payments rather than any intent of the Debtor to hinder, delay, or defraud. *See supra* § II.A. Lastly, § 548 cannot reach GCS as a non-party to the initial transfer, a point the Opposition does not address. Br. 22–23.

### B. The § 548(c) Value Defense Is Apparent From the Face of the Complaint

Even if the Third Claim were adequately pleaded, § 548(c) protects a transferee that takes for value and in good faith, and the defense is apparent on the face of the Complaint. The Trustee responds only that the defense presents a fact question and that insider transactions are generally considered to lack good faith. Opp. at 34–35. But the Complaint itself alleges that GCS received payment on the Shareholder Loan—a pre-existing antecedent debt, which constitutes "value" under § 548(d)(2)(A)—and contains no allegation that GCS knew the payment was improper or the transfer voidable. Because the Complaint affirmatively establishes that GCS took for value and in good faith, the § 548(c) defense bars the Third Claim as a matter of law. *See Feldman v. Chase Home Fin. (In re Image Masters, Inc.)*, 421 B.R. 164, 181 (Bankr. E.D. Pa. 2009).

## V. THE COMPLAINT FAILS TO PLEAD A § 550 RECOVERY CLAIM AGAINST GCS OR GRAMERCY COLOMBIA (SIXTH CLAIM)

### A. Gramercy Colombia and GCS Are Not Initial Transferees

The Sixth Claim seeks to recover the challenged transfers from GCS and Gramercy Colombia under § 550(a), which permits recovery from the initial transferee, the entity for whose benefit the transfer was made, or a subsequent transferee. The Trustee now argues for the first

time that "the Shareholder Lenders are considered initial transferees under the step-transaction doctrine." Opp. 36. That theory appears nowhere in the Complaint, which pleads GCS only as a *subsequent* transferee, and is silent as to Gramercy Colombia. Compl. ¶ 134. The Trustee cannot amend his pleading through an opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Moreover, collapsing requires that "the party from whom recovery is sought had actual or constructive knowledge of the entire scheme." Opp. 36; *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*, 379 B.R. 5, 22 (Bankr. E.D.N.Y. 2007). The Trustee's only allegation is that the Shareholder Lenders were "represented" at Board meetings by the directors they appointed. Opp. 35–36. But this depends on minutes outside the pleading and imputes to GCS, a separate lending entity, the knowledge of directors owing duties to the Debtor—the same duty-by-attribution reasoning *Global Crossing* rejects, now applied to knowledge.

GCS is also not an initial transferee under the Second Circuit's well-established dominion-and-control test, which the Trustee does not apply. *See* Br. 27–29. Citing no authority, the Trustee asserts the test is irrelevant where dominion and control are acknowledged upon receipt of payment. Opp. at 36. But the test asks whether the party could use the funds for its own purposes *with respect to the transfer being avoided*. *Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57–58 (2d Cir. 1997). The Complaint does not allege that GCS directed, approved, or participated in the decision to route the sales premium to Finanza. S*ee* Br. 28.

As to the sole avoidance claim against Gramercy Colombia (the $50,000 payment to Latham & Watkins), the Complaint does not adequately plead that Gramercy Colombia was a "transferee" within the meaning of § 550. *See* Compl. ¶ 134. The Trustee asserts that the payment was made "for the benefit" of Gramercy Colombia, but does not address the failure to identify

what portion of the $50,000 was attributable to Gramercy Colombia. Br. at 20. Without a valid avoidance claim, § 550 supplies no independent basis for recovery. *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC)*, 12 F.4th 171, 181 (2d Cir. 2021).

Similarly, the Trustee's new contention that the legal fees paid to the Shareholder Lenders' counsel under the forbearance agreement are recoverable from them under § 550(a)(1) as transfers made "for [their] benefit," Opp. 37, fails for the same reasons. The Complaint alleges that Finanza agreed to pay those fees, identifies no portion attributable to GCS, and pleads no avoidable transfer of Debtor property on which a § 550 recovery could rest. *See Picard*, 12 F.4th at 181.

### B. The § 550(b)(1) Good Faith Defense Is Apparent From the Face of the Complaint as to GCS

Section 550(b)(1) bars recovery from a subsequent transferee that takes for value, in good faith, and without knowledge of the voidability of the transfer. To overcome that defense, the Trustee again relies on board minutes, citing no authority and no allegation in the Complaint. Opp. at 35–36. The Complaint itself pleads that GCS took for value: the partial satisfaction of a pre-existing loan, Compl. ¶¶ 44, 66; Br. 26, 28–29, and contains no well-pleaded allegation that GCS lacked good faith or knew of any voidability. The Trustee's presumption that "insider transactions" lack good faith, Opp. 35–36, does not apply absent a well-pleaded allegation GCS was an insider. Where, as here, the defense appears on the face of the Complaint, dismissal is appropriate. *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).[6]

## CONCLUSION

For the reasons set forth above and in the opening brief, the Gramercy Defendants respectfully request that the Court dismiss all claims asserted against them.

[6] The Trustee does not dispute that § 550(d) entitles him "to only a single satisfaction." Br. 29 n.10.

Dated: November 20, 2026
New York, New York

Respectfully submitted,

*/s/ Alan C. Turner*
Alan C. Turner
Bryce L. Friedman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
aturner@stblaw.com
bfriedman@stblaw.com

*Attorneys for Gramercy Funds Management LLC, GCS Colombia Finance LLC, Gramercy Colombia Consumer Lending Holdings LLC, and Gustavo Ferraro*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 20, 2026, a true and correct copy of the foregoing *Reply Memorandum of Law in Further Support of the Gramercy Defendants' Motion to Dismiss the Trustee's Complaint* was served via CM/ECF on all parties registered to receive electronic notices.

*/s/ Alan C. Turner*
Alan C. Turner