Hearing Date and Time:
December 8, 2026 at 10:00 a.m.

Michael K. Ross (admitted *pro hac vice*)
Sherry X. Yu
Jillian G. Leslie (admitted *pro hac vice*)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, NW, Suite 740
Washington, D.C. 20004
Tel.: 202.737.3500
mross@aegislawgroup.com
syu@aegislawgroup.com
jleslie@aegislawgroup.com
*Counsel for Defendants ACON Investments Management, LLC, ACON Colombia Finance II, LLC, and José Miguel Knoell*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CREDIVALORES - CREDISERVICIOS S.A.,<br>Debtor. | Chapter 7<br>Case No. 24-10837 (DSJ)<br>Adv. Proc. No. 26-01063 |
| SALVATORE LAMONICA, solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.,<br>Plaintiff,<br>v.<br><br>BANCIEN S.A. aka BAN100 S.A. fka BANCO CREDIFINANCIERA S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP,<br>DAVALIA GESTION DE ACTIVOS S.L., LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC, and JOSÉ MIGUEL KNOELL,<br>Defendants. | |

**DEFENDANTS ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC, and JOSÉ MIGUEL KNOELL'S**
**<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

## TABLE OF CONTENTS


**INTRODUCTION** .......... 1

**ARGUMENT** .......... 2

I. The Trustee Still Fails to Plead That ACON Controlled the Debtor .......... 2

- A. The Opposition Fails to Point to Facts Specific to ACON Regarding Control Over the Debtor .......... 2
- B. ACON Did Not Control Any Specific Transaction at Issue .......... 4
- C. The Complaint Does Not Plead That ACON Belonged to a Control Group .......... 5

II. The Trustee Still Fails to Plead That Mr. Knoell Breached Any Fiduciary Duty .......... 7

- A. Mr. Knoell Did Not Approve Any Post-Petition Sale, and the Trustee Cannot Hold Him Liable for Failing to Prevent One .......... 9
- B. The Opposition Abandons the Complaint's Conflict Theory and Pleads No Bad Faith .......... 11
- C. The April 29 Vote Did Not Breach Any Duty of Prudence or Loyalty .......... 12

III. The Opposition Fails to State Preference, Fraudulent Conveyance, and Recovery Claims Against the Shareholder Lenders, Including ACON II .......... 13

**CONCLUSION** .......... 14

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8, 12

*Citron v. Fairchild Camera & Instrument Corp.*,
569 A.2d 53 (Del. 1989) ........ 2

*Dubroff v. Wren Holdings, LLC*,
C.A. No. 3940-VCN,
2009 WL 1478697 (Del. Ch. May 22, 2009) ........ 7

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011) ........ 14

*Halperin v. Morgan Stanley Inv. Mgmt., Inc.* (*In re Tops Holding II Corp.*),
646 B.R. 617 (Bankr. S.D.N.Y. 2022) ........ 11, 12

*In re Ampal–Am. Israel Corp.*,
543 B.R. 464 (Bankr. S.D.N.Y. 2016) ........ 11, 12

*In re Caremark Int'l Inc. Deriv. Litig.,*
698 A.2d 959 (Del. Ch. 1996) ........ 10

*In re Hansen Med., Inc. S'holders Litig.*,
C.A. No. 12316–VCMR,
2018 WL 3025525 (Del. Ch. June 18, 2018) ........ 6

*In re Primedia Inc. Derivative Litig.*,
910 A.2d 248 (Del. Ch. 2006) ........ 4

*In re Tilray, Inc. Reorg. Litig.*,
C.A. No. 2020-0137-KSJM,
2021 WL 2199123 (Del. Ch. June 1, 2021) ........ 6

*In re Walt Disney Co. Deriv. Litig.*,
906 A.2d 27 (Del. 2006) ........ 11

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
921 F. Supp. 2d 197 (S.D.N.Y. 2013) ........ 10

*Kahn v. Lynch Commc'n Sys., Inc.*,
638 A.2d 1110 (Del. 1994) ........ 2, 3

*LaMonica v. Tilton* (*In re TransCare Corp.*),
602 B.R. 234 (Bankr. S.D.N.Y. 2019) ........ 4

*Nisselson v. Bank of the West*,
No. 17–11936–JLG,
2018 WL 1801240 (Bankr. S.D.N.Y. Apr. 13, 2018) ........ 1, 8

*O'Toole v. McTaggart* (*In re Trinsum Grp., Inc.*),
466 B.R. 596 (Bankr. S.D.N.Y. 2012) ........ 9

*Orman v. Cullman*,
794 A.2d 5 (Del. Ch. 2002) ........................................................ 11

*Patrick v. Allen*,
355 F. Supp. 2d 704 (S.D.N.Y. 2005) ........................................................ 13

*Perlman v. Feldmann*,
219 F.2d 173 (2d Cir. 1955) ........................................................ 3

*Robbins & Co. v. A.C. Israel Enters., Inc.*,
Civ. A. No. 7919,
1985 WL 149627 (Del. Ch. Oct. 2, 1985) ........................................................ 3

*Sama v. Mullaney* (*In re WonderWork, Inc.*),
611 B.R. 169 (Bankr. S.D.N.Y. 2020) ........................................................ 7

*Sheldon v. Pinto Tech. Ventures, L.P.*,
220 A.3d 245 (Del. 2019) ........................................................ 3, 4, 6

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ........................................................ 10

*Summa Corp. v. Trans World Airlines, Inc.*,
540 A.2d 403 (Del. 1988) ........................................................ 3

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ........................................................ 14

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ........................................................ 1

## INTRODUCTION

The Trustee's Opposition confirms that his Complaint fails to state a claim against the ACON Defendants. Unable to defend the pleading he filed, the Trustee attempts to write a new one. He attaches two dozen exhibits, many of which are never referenced in the Complaint, and a brief full of factual assertions and theories of liability that appear for the first time. That is not permitted. "[A] party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Nor can he supplement his pleading with documents the complaint does not "identify, mention or rely on" and that "purport to introduce facts and claims for relief not alleged in the Complaint." *Nisselson v. Bank of the West*, No. 17–11936–JLG, 2018 WL 1801240, at *5 (Bankr. S.D.N.Y. Apr. 13, 2018).

Even considering his newly pleaded facts and theories, the Trustee's Opposition does not help him state claims against the ACON Defendants. As to ACON, the Opposition repeats the Complaint's group pleading and does not point to a single allegation of actual control by ACON over the Debtor. As to Mr. Knoell, the Opposition does not identify a single specific action other than giving his proxy to someone else. In fact, the Trustee's own minutes show that Mr. Knoell was absent from the meeting at which the Complaint says he ratified the July 31 transfer and the February 9 sale. And as to ACON II, the Complaint alleges nothing specific to ACON II beyond its receipt of less than 7% of a single loan repayment. Its new assertions about the Shareholder Lenders' knowledge and bad faith, including ACON II's, do not appear anywhere in the Complaint. Therefore, Count I should be dismissed as to ACON and Mr. Knoell. Counts II, III, and VI against ACON II should be dismissed for the reasons set out herein and in the briefs of Defendants Davalia Gestion de Activos S.L., Gramercy Colombia Consumer Lending Holdings LLC, and GCS Colombia Finance LLC.

## ARGUMENT

### I. The Trustee Still Fails to Plead That ACON Controlled the Debtor

The Complaint's control theory as to ACON rests on two facts: that ACON appointed directors, and that an ACON-affiliated Ban100 director was "from time to time" given Mr. Knoell's proxy. Compl. ¶¶ 21–22, 34. From those facts, it concludes that ACON, together with Gramercy and GDA Luma, "used that control to cause their appointed directors to transfer estate property" to Ban100 post-petition in breach of their unspecified fiduciary duties to the estate. *Id.* ¶ 100. Neither the Complaint nor the Opposition explains how either fact gave ACON control. Nor does the Opposition identify any agreement that would make ACON part of a control group.

#### A. The Opposition Fails to Point to Facts Specific to ACON Regarding Control Over the Debtor

The Opposition continues to treat "Gramercy, GDA Luma, and ACON" as an indistinguishable group. *See* Opp. at 3–4, 21, 24. Its main attempt to establish that group's control over Debtor is a block quotation of paragraph 34 in the complaint. *Id.* at 23–24. But the ACON Defendants' opening brief explains that paragraph 34 fails to identify any alleged control act by ACON —namely, it does not allege any decision that ACON directed. *See* ACON Mem. at 8–10.

The Trustee's "working control" cases do not salvage Count I as to ACON. *See* Opp. at 22–23. A holder of less than 50% "does not, **without more**, become a controlling shareholder." *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1114 (Del. 1994) (emphasis added) (quoting *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 70 (Del. 1989)). The plaintiff must plead "domination by a minority shareholder through **actual control** of corporation conduct." *Id.* (emphasis added). The Trustee's "working control" cases involved far larger shareholders than ACON (which is not even a direct shareholder, *see* Compl. ¶ 29), and concrete facts of actual control. *See Robbins & Co. v. A.C. Israel Enters., Inc.*, Civ. A. No. 7919, 1985 WL 149627, at

*4–5 (Del. Ch. Oct. 2, 1985) (in an appraisal action, valuing a 31% block as controlling where it was held "in an otherwise widely held public company" and the holder's designees included the board chairman); *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 404–05, 407 (Del. 1988) (78% holder that "exercised control over TWA's day-to-day operations," including by refusing to let TWA buy its own aircraft and forcing it to lease planes from the holder at a profit)[1]; *Perlman v. Feldmann*, 219 F.2d 173, 174–75 & n.1 (2d Cir. 1955) (33% holder was "the dominant stockholder," "the chairman of the board of directors and the president of the corporation," and transferred control by agreeing to "procure the resignation of his own board and the election of [the buyer's] nominees"); *Kahn*, 638 A.2d at 1112–14 (43.3% holder that vetoed a major acquisition and told the board, "[y]ou must listen to us. . . . You have to do what we tell you.").

ACON indirectly held a 15% interest in the Debtor, Compl. ¶¶ 28–29, and the Trustee alleges nothing comparable as to working control. His control theory rests on the same two facts: that ACON appointed two of the Debtor's directors, *id.* ¶¶ 21–22, and that ACON's Ban100 director was "from time to time" provided a proxy vote and included on emails. *Id.* ¶ 34. First, appointing directors "does not, without more, establish actual domination or control." *Sheldon v. Pinto Tech. Ventures, L.P.*, 220 A.3d 245, 253 (Del. 2019). "To hold otherwise would have a chilling effect on transactions that depend on a particular shareholder being able to appoint representatives to an investee's board of directors." *Id.* Given this, the Trustee lacks allegations of what "more" ACON did beyond appointing directors—the Complaint is devoid of any allegation as to how ACON, at the investment-adviser level, instructed its appointed directors to vote, or how it instructed them to control the Debtor. The Opposition does not point to any

[1] The Opposition's characterization of *Summa* is misleading. *See* Opp. at 23. The court treated the defendant as "a 78% shareholder" and applied the parent-subsidiary standard. 540 A.2d at 405, 407.

allegation either. That is the flaw *Sheldon* found fatal: a failure to allege "whether or how" the investor firms controlled their designees. *Id*. at 254.

Second, Mr. Knoell's proxy vote provided to a Ban100 director also fails to establish ACON's control. The Opposition now asserts, based on minutes outside the Complaint, that Mr. Knoell's proxy holder voted at the February 28 and April 29, 2024 board meetings. Opp. at 24–25 & n.10. Even if credited, such votes do not allege that the proxy holder acted as ACON's agent, rather than Mr. Knoell's, when he voted. That omission was fatal to this same Trustee's control claim in *TransCare*. *See LaMonica v. Tilton* (*In re TransCare Corp*.), 602 B.R. 234, 247–48 (Bankr. S.D.N.Y. 2019) (dismissing control-based fiduciary duty claim against entity defendants because, although an individual "may have been an agent of that entity and also directed [the debtor's] affairs," the complaint did "not imply that he acted as an agent of the Entity Defendant, as opposed to [another], when he exercised control over [the debtor]"). Tellingly, the Opposition never addresses *TransCare*.

### B. ACON Did Not Control Any Specific Transaction at Issue

The Trustee also argues that "[a]llegations of control over the particular transaction at issue are enough." Opp. at 22 (citing *In re Primedia Inc. Derivative Litig*., 910 A.2d 248, 258 (Del. Ch. 2006)). The transactions at issue in Count I, as pleaded against ACON, are the post-petition transfers of estate property to Ban100: the June 27, July 30, and July 31, 2024 portfolio transfers, and the "operating costs" payments made between July 3, 2024 and June 16, 2025. Compl. ¶ 100; *see id*. ¶¶ 79, 83, 87, 90–91. Beyond the conclusory assertion that the three firms "caused their respective directors to vote" for certain Board decisions, *id*. ¶ 34, the Complaint once again identifies no meeting, vote, or other act by which ACON (or Mr. Knoell) approved those transfers.

The only post-petition board action the Trustee identifies is the August 28, 2024 meeting, at which the Board ratified the July 31 transfer and the February 9 sale. *See* Opp. at 17–18; Compl.

¶¶ 88, 100. The Complaint cites the minutes of that meeting only to point out the supposed lack of consideration. Compl. ¶ 87. The Opposition now relies on them for who voted. By the Trustee's own account, however, Messrs. Ferraro, Blaquier, and Trujillo Sanchez approved that ratification, as did a GDA Luma analyst holding Mr. Kontarovsky's proxy. Opp. at 17–18. No one associated with ACON voted at this meeting. *See* Chubak Decl. Ex. 11 at p. 1, 3. Simply put, the Trustee cannot impute control over that transaction (or any transaction) where no one from ACON voted.

Nor can the Trustee attribute the August 28 vote to ACON through Mr. Meza. *See id.* The Complaint lacks any allegation that Mr. Meza acted at ACON's direction. In fact, beyond the bare assertion that ACON appointed him, it alleges no connection between Mr. Meza and ACON at all. Compl. ¶ 22. By contrast, it pleads ties between the other firms and their non-employee directors (albeit conclusorily): Mr. Trujillo Sanchez is alleged to be Gramercy's attorney and agent, and Mr. Kontarovsky is alleged to have given his proxy to a GDA Luma analyst. *Id.* ¶¶ 14, 18, 34.

### C. The Complaint Does Not Plead That ACON Belonged to a Control Group

Seemingly recognizing that he cannot establish that ACON itself exercised control over the Debtor or any particular transaction, the Trustee's fallback argument is that ACON, Gramercy, and GDA Luma operated as a control group "with the common goal of transferring value away from the Debtor." Opp. at 25. His own authorities undermine that theory.

The Trustee relies on *Sheldon* for the proposition that a control-group agreement "need not be formal or written." Opp. at 23. But *Sheldon* affirmed dismissal with prejudice for similar allegations as the Trustee's. There, venture capital firms holding more than 60% of the company's shares had contractual rights to designate directors. 220 A.3d at 248. The court held that a control group nonetheless requires "some indication of an actual agreement," and that a "mere concurrence

of self-interest" is insufficient. *Id*. at 251–52. Here, the Trustee alleges no agreement among the firms as to how their designees would vote or how the Debtor would be governed. His alleged "common goal of transferring value away from the Debtor and towards their other affiliates" is precisely the "concurrence of self-interest" that *Sheldon* rejected. Opp. at 25.

The Trustee's cited authorities further confirm the failure of Count I against ACON. They treat parallel interests as enough to infer a control group only when combined with "other facts" or "plus factors." Opp. at 23 (citing *In re Hansen Med., Inc. S'holders Litig*., C.A. No. 12316–VCMR, 2018 WL 3025525, at *5 (Del. Ch. June 18, 2018), and *In re Tilray, Inc. Reorg. Litig*., C.A. No. 2020-0137-KSJM, 2021 WL 2199123, at *11 (Del. Ch. June 1, 2021)). The "plus factors" in those cases were substantial. In *Hansen*, the defendants had a formal voting agreement, had declared themselves a "group" to the SEC, and had coordinated their investments for twenty-one years. 2018 WL 3025525, at *7. In *Tilray*, the defendants were long-time friends and co-founders who held themselves out as "partners" and negotiated the challenged transaction as a self-described "voting block." 2021 WL 2199123, at *11.

The Trustee offers three categories of his own supposed plus factors to establish ACON as part of a control group. None suffices. First, he relies on paragraph 34 of the Complaint to argue that the three firms made the Debtor's decisions "at the investment advisor level" and then "directly controlled the Board" through their designees. Opp. at 23–24. But again, not a single sentence of that paragraph actually alleges **how** ACON directed its designees together with the other firms. Compl. ¶ 34. This paragraph alleges no agreement, communication, or coordination among Gramercy, GDA Luma, and ACON.

Second, he relies on "[p]arallel interests" as co-lenders and co-owners of Ban100 who "viewed their interests in the Debtor and Ban100 as a single economic unit." Opp. at 25. That is

a description of aligned investments, not an agreement to control anything. How each firm viewed its own investment says nothing about whether the firms agreed with each other about how to govern the Debtor. *See Dubroff v. Wren Holdings, LLC*, C.A. No. 3940-VCN, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009) (a stockholder "is entitled to vote its shares as it chooses, including to further its own financial interest," so "if all a complaint alleges is that a group of shareholders have 'parallel interests,' such allegations are insufficient as a matter of law to support the inference that the shareholders were part of a control group").

Third, he points to a list of agreements: a debt-for-equity exchange (¶ 35) (involving the other firms, not ACON), loan amendments (again, not involving ACON), a side letter, and a forbearance agreement. Opp. at 25. None of these is alleged to govern how any director would vote, or shows that ACON agreed with anyone to control the Debtor. In sum, the Trustee utterly fails to plead allegations of control over the Debtor by ACON, and so Count I fails to state a claim of breach of fiduciary duty as to ACON.

## II. The Trustee Still Fails to Plead That Mr. Knoell Breached Any Fiduciary Duty

Much like its defective allegations against ACON, the Complaint pleads Mr. Knoell's alleged breaches collectively. It alleges that "Messrs. Knoell, Ferraro and Blaquier" approved payroll-loan sales to Ban100, ratified the February 9, 2024 sale, voted to approve all post-petition transactions, and authorized the April 29, 2024 sales-premium transfer. Compl. ¶¶ 96–99. As an initial matter, a plaintiff "may not rely on group pleading to assert a breach of fiduciary duty claim." *Sama v. Mullaney* (*In re WonderWork, Inc.*), 611 B.R. 169, 199 (Bankr. S.D.N.Y. 2020) (citation omitted). The Trustee's only response is that his new inclusion of the board minutes identifies "the respective directors" who approved each transaction. Opp. at 17. In addition to being an impermissible supplement to the Trustee's complaint, *see Nisselson,* 2018 WL 1801240,

at *5, the Opposition and the board minutes backfire: they demonstrate Mr. Knoell's lack of involvement in any breach.

Paragraphs 94 and 95 describe the duties the Trustee invokes: under federal law, the duties of loyalty and good faith owed by the Debtor's "postpetition directors as estate fiduciaries," and under Colombian law, the duties of good faith, loyalty, and prudence owed by its directors generally. Compl. ¶¶ 94–95. But reciting a duty is not pleading a breach of it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Complaint's actual breach allegations are confined to paragraphs 96 through 99. The Complaint pairs each challenged transaction with a specific duty. It challenges the post-petition sales and the August 28 ratification of the February 9 transfer under a federal duty to preserve estate property. Compl. ¶ 96. It also challenges the post-petition transactions under a duty of loyalty, premised on an alleged conflict. *Id.* ¶ 97. It also challenges the April 29 vote to authorize the transfer of the sales premium to Finanza to pay down the Shareholder Loan under Colombian duties of care and loyalty. *Id.* ¶¶ 98–99.

The Opposition largely does not defend these claims as pleaded. It recasts the conflict-based loyalty claim as a bad-faith claim, even though the Complaint alleges no facts showing bad faith. Opp. at 16–17. It stretches the duty to preserve estate property to reach transactions Mr. Knoell is not alleged to have approved or even known about. *Id.* at 19–20. And it applies Colombian law to post-petition transactions that the Complaint challenges only under federal duties. *Id.* at 20–21 & n.9. None of his new theories state a claim against Mr. Knoell.

### A. Mr. Knoell Did Not Approve Any Post-Petition Sale, and the Trustee Cannot Hold Him Liable for Failing to Prevent One

The Complaint alleges that Mr. Knoell breached the federal duty to preserve estate property in two ways. First, it alleges breach "to the extent that they approved payroll loan portfolio sales to Ban100 without adequate consideration, or without consideration at all." Compl. ¶ 96. The Complaint does not say which sales; the only post-petition portfolio transfers it describes are the June 27, July 30, and July 31, 2024 transfers. *See id.* ¶¶ 79, 83, 87. Second, it alleges that he breached that duty "by ratifying the February 9, 2024 payroll loan portfolio sale without consideration." *Id.* ¶ 96.

The Complaint pleads nothing about what Mr. Knoell allegedly knew about those sales or why any consideration was inadequate. ACON Mem. at 12–13. The Complaint merely labels the transfers as made "without adequate consideration, or without consideration at all." Compl. ¶ 96. That is a conclusion, not a pleaded fact. *See O'Toole v. McTaggart* (*In re Trinsum Grp., Inc.*), 466 B.R. 596, 617, 617 (Bankr. S.D.N.Y. 2012) (dismissing with prejudice claims that directors breached their fiduciary duties by approving a sale of corporate assets, where the complaint offered only the "conclusory allegation" that the consideration received was "essentially nothing" and "no allegations . . . that provide[d] any basis upon which to value" the assets).

Nor does the Trustee allege that Mr. Knoell even approved any of these transactions. In fact, the Complaint contains no specific allegations of board approval at all of the June 27 or July 30 post-petition transfers. Compl. ¶¶ 79, 83. The only post-petition board action it alleges is the August 28 ratification of the July 31 transfer and the February 9 sale. *Id.* ¶ 88. By the Trustee's own account, however, **Mr. Knoell did not vote at that meeting**. The Opposition does not list him among those who approved the ratification, Opp. at 17–18, and the minutes do not list him among the directors present or record anyone holding his proxy. Chubak Decl. Ex. 11 at 1, 3.

Recognizing that he cannot tie Mr. Knoell to any of these votes, the Trustee offers a new theory that would not require him to. He argues that directors may be liable for transactions "that should have been prevented by them," including the "operating costs" payments, because the transfers occurred "beneath the noses of the respective directors." Opp. at 19–20. But the Complaint pleads liability **only** "to the extent that [the directors] approved" the sales or "authorized" the payments. Compl. ¶¶ 96–97. The Trustee cannot add a failure-to-prevent theory through his brief. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

Even if the Trustee had pleaded a failure-to-prevent theory, it would fail. A claim that directors failed to prevent corporate misconduct is an oversight claim. It requires that the directors "utterly failed to implement any reporting or information system or controls," or else "consciously failed to monitor or oversee its operations." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). In either case, "imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Id.* The Trustee himself relies on *Stone*. *See* Opp. at 16. Yet the Complaint alleges nothing about what Mr. Knoell knew of any post-petition transfer, much less that he knowingly disregarded a duty to act. *See* ACON Mem. at 12–13; *see also In re Caremark Int'l Inc. Deriv. Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996) (breach of fiduciary duty based on oversight "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.").

The Trustee's next attempted workaround is to recast these same post-petition transactions as breaches of Colombian law's duty of prudence, which he says imposes liability for simple negligence. Opp. at 20–21 & n.9. The Complaint invokes Colombian law expressly only as to the

April 29 vote to authorize the $2.7 million payment. Compl. ¶¶ 98–99. Its post-petition allegations name only federal duties. *Id.* ¶ 96.

### B. The Opposition Abandons the Complaint's Conflict Theory and Pleads No Bad Faith

The Complaint next alleges that Mr. Knoell breached his duty of loyalty by voting on the same post-petition transactions. Compl. ¶ 97. The alleged conflict is that ACON-managed funds invested in Ban100, and that ACON's fees on those investments presumably had a "material effect" on Mr. Knoell's compensation. *Id.* In their opening brief, the ACON Defendants explained why the Complaint fails to identify the fund, describe the investment, explain how any fee affected Mr. Knoell's pay, or allege any personal benefit to him. ACON Mem. at 13–14; *see Orman v. Cullman*, 794 A.2d 5, 23 & n.44 (Del. Ch. 2002) (to plead interest, a plaintiff must allege facts showing that the benefit was "material to that director," and an allegation of materiality "without more, would merely be a conclusory allegation and insufficient."). The Opposition does not defend that theory.

The Trustee instead pivots to "the duty of good faith," claiming the director defendants failed to address it. Opp. at 16. That is incorrect. As set forth in the opening brief, the Complaint pleads no facts suggesting that Mr. Knoell acted in bad faith or for an improper purpose. ACON Mem. at 12–13, 15 (citing *In re Ampal–Am. Israel Corp.*, 543 B.R. 464, 476–81 (Bankr. S.D.N.Y. 2016)). Bad faith requires facts showing that the director "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation." Opp. at 16 (quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006)). The plaintiff "must establish that the targeted director had the requisite scienter." *Halperin v. Morgan Stanley Inv. Mgmt., Inc.* (*In re Tops Holding II Corp.*), 646 B.R. 617, 711 (Bankr. S.D.N.Y. 2022). Allegations that a director "intentionally disregarded [his] fiduciary obligations," made only "in a conclusory way," do not

suffice. *Id.* at 712 (dismissing good-faith claim against two directors where complaint failed to allege their knowledge).

### C. The April 29 Vote Did Not Breach Any Duty of Prudence or Loyalty

Finally, the Complaint challenges Mr. Knoell's April 29 vote to transfer $2.7 million under two Colombian-law duties.[2] First, it alleges that he breached the duty of prudence because there was "no valid business reason" for the payment, given that the board approved a deferral amendment at the same meeting. Compl. ¶ 98. Second, it alleges that he breached the duty of loyalty because recoveries on the Shareholder Loan affected his personal compensation. *Id.* ¶ 99. Neither states a claim, despite the Opposition's arguments to the contrary.

As to prudence, the Trustee's disagreement with a board decision is not a well-pleaded breach. Again, the Complaint alleges nothing about what Mr. Knoell knew, considered, or relied on when he voted. *See* ACON Mem. at 15. A complaint that alleges only that directors should have chosen a different course does not state a claim. *See Ampal*, 543 B.R. at 480–81 (dismissing duty-of-care claim where complaint alleged only that directors should have chosen a different course and pleaded no improper purpose or bad faith).

The Trustee now invokes Article 24 of Law 222 for a simple-negligence standard. Opp. at 20 & n.9. But whatever the substantive standard, he must still plead facts making a breach "plausible." *Iqbal*, 556 U.S. at 678. The Complaint pleads nothing about Mr. Knoell's knowledge.

As to loyalty, the Complaint's only theory is the compensation conflict. Compl. ¶ 99. As explained in the ACON Defendants' opening brief, the Complaint does not allege that Mr. Knoell

[2] The Trustee has not shown that Colombian law differs from forum law in any respect material to the pleading questions presented here. *See* ACON Mem. at 10 n.1. In any event, the sufficiency of a complaint in federal court is governed by federal pleading standards, whatever the substantive law. *See Iqbal*, 556 U.S. at 678.

received any portion of the repayment, or explain how it affected his compensation. ACON Mem. at 15; *see Patrick v. Allen*, 355 F. Supp. 2d 704, 711 (S.D.N.Y. 2005) (director is interested only if he "stands to receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally"). The duty the Trustee invokes requires a conflict arising from the director's "personal interest or that of third parties." Chubak Decl. Ex. 24, art. 23(7) ("interés personal o de terceros"). An unexplained conclusion that a payment had a "material effect" on a director's compensation does not plead one. Count I against Mr. Knoell must be dismissed.

### III. The Opposition Fails to State Preference, Fraudulent Conveyance, and Recovery Claims Against the Shareholder Lenders, Including ACON II

ACON II joins the Shareholder Lenders' reply arguments on Counts II, III, and VI. Several points are specific to ACON II. First, the Opposition mentions ACON II once, in its statement of facts, Opp. at 7, and makes no argument specific to it. The Trustee continues to seek the full $2,745,386.16, plus legal fees, from "the Shareholder Lenders" collectively. Compl. ¶ 135. But ACON II allegedly received only $187,185.42. *Id.* ¶ 66. Second, the Trustee seeks the Schedule IV legal fees from the Shareholder Lenders as entities "for whose benefit" the fees were paid. Opp. at 37. The Complaint identifies the recipients of those fees: counsel for GDA Luma, counsel for Gramercy and Acquiom, and unnamed Latin American firms. Compl. ¶ 57. It does not allege that any fee was paid to ACON II's counsel or for ACON II's benefit. *See* ACON Mem. at 4. Third, the Shareholder Lenders argued that section 550(b)(1) bars recovery because they took for value, in good faith, and without knowledge of any voidability, and ACON II joined that argument. *See* Gramercy Mem. (ECF No. 37) at 28–29; GDA Luma Mem. (ECF No. 41) at 34–35; ACON Mem. at 16. The Trustee's response rests largely on board minutes outside the Complaint, and his fallback collapsing theory relies on the same minutes. Opp. at 35–36. The Court should disregard them.

## CONCLUSION

For the foregoing reasons, and for those set forth in the ACON Defendants' opening brief and in the Gramercy and GDA Luma Defendants' briefs to the extent joined, the Court should dismiss Count I as to ACON Investments Management, LLC and Mr. Knoell, and Counts II, III, and VI as to ACON Colombia Finance II, LLC. The dismissal should be with prejudice. The Trustee has not requested leave to amend, and he has not explained how any amendment would cure the Complaint's deficiencies. "[N]o court can be said to have erred in failing to grant a request that was not made." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.").

Dated: November 20, 2026

Respectfully submitted,

*/s/ Michael K. Ross*

Michael K. Ross (admitted *pro hac vice*)
Sherry X. Yu
Jillian G. Leslie (admitted *pro hac vice*)
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, NW, Suite 740
Washington, D.C. 20004
Tel.: 202.737.3500
mross@aegislawgroup.com
syu@aegislawgroup.com
jleslie@aegislawgroup.com

*Counsel for Defendants ACON Investments Management, LLC, ACON Colombia Finance II, LLC, and José Miguel Knoell*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2026 the foregoing document was filed electronically using the Court's Electronic Case Filing System. Notice of this filing will be sent to all parties through the Court's Electronic Case Filing System.

*/s/ Michael K. Ross*
Michael K. Ross