James W. Stoll, Esq. (admitted *pro hac vice*)
Sharon I. Dwoskin, Esq.
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
jstoll@brownrudnick.com
sdwoskin@brownrudnick.com
*Counsel for Luis Blaquier, Davalia Gestion de Activos S.L., GDA Luma Capital Management, LP*

**Hearing Date and Time**:
December 8, 2026 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>CREDIVALORES - CREDISERVICIOS S.A.,<br>Debtor | Chapter 7<br><br>Case 24-10837 (DSJ) |
| SALVATORE LAMONICA solely in his capacity as Chapter 7 trustee of Credivalores - Crediservicios S.A.<br>Plaintiff<br>v.<br><br>BANCIEN S.A. aka Ban100 S.A. fka Banco Credifinanciera S.A., FINANZA INVERSIONES S.A., GRAMERCY FUNDS MANAGEMENT LLC, GCS COLOMBIA FINANCE LLC, GRAMERCY COLOMBIA CONSUMER LENDING HOLDINGS LLC, GUSTAVO FERRARO, GDA LUMA CAPITAL MANAGEMENT, LP, DAVALIA GESTION DE ACTIVOS S.L, LUIS BLAQUIER, ACON INVESTMENTS MANAGEMENT, LLC, ACON COLOMBIA FINANCE II, LLC and JOSÉ MIGUEL KNOELL<br>Defendants | Adv. Proc. 26-01063 (DSJ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE GDA LUMA DEFENDANTS' MOTION TO DISMISS THE TRUSTEE'S COMPLAINT**

## TABLE OF CONTENTS

**Page**


**PRELIMINARY STATEMENT** ........................................ **1**

**ARGUMENT** ........................................ **1**

**I. THE BREACH OF FIDUCIARY DUTY CLAIMS AGAINST GDA LUMA AND MR. BLAQUIER SHOULD BE DISMISSED** ........................................ **2**

a. GDA Luma Owed No Fiduciary Duties to the Debtor ........................................ 2

i. The Complaint Fails to Plead Actual Control by GDA Luma ........................................ 2

ii. The Complaint Failed to Plead a Legally Significant Relationship Among the Investment Advisors ........................................ 6

b. The Complaint Does Not Plead a Breach of Fiduciary Duty by Mr. Blaquier ........................................ 7

i. The Duty of Loyalty ........................................ 7

ii. Duty of a Prudent Businessperson ........................................ 10

**II. THE AVOIDANCE CLAIMS AGAINST DAVALIA SHOULD BE DISMISSED** .. **11**

a. The Complaint Failed to Adequately Plead a Preference Claim ........................................ 11

b. The Complaint Failed to Adequately Plead a Fraudulent Transfer Claim ........................................ 13

i. Any Recovery from Davalia Must Be Done Through § 550, Not § 548 ........................................ 13

**III. THE RECOVERY CLAIM AGAINST DAVALIA SHOULD BE DISMISSED** ...... **14**

**CONCLUSION** ........................................ **15**

**CERTIFICATE OF SERVICE** ........................................ **17**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AppliedTheory Corp.*,
323 B.R. 838 (Bankr. S.D.N.Y. 2005) ....................15

*Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*,
No. Civ.A. 16630-NC, 2001 WL 1641239 (Del. Ch. Dec. 4, 2001) ....................4

*In re ContinuityX, Inc.*,
569 B.R. 29 (Bankr. S.D.N.Y. 2017) ....................12

*In re Crimson*,
2015 WL 5449419 (Del. Ch. Oct. 24, 2014) ....................6

*In re Fun Bowl Vacations, Inc.*,
666 B.R. 867 (Bankr. S.D.N.Y. 2025) ....................15

*In re GBG USA Inc.*,
666 B.R. 115 (Bankr. S.D.N.Y. 2024) ....................5

*Glob. Crossing Est. Representative v. Winnick*,
No. 04 Civ. 2558 (GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ....................2

*In re Gorski*,
766 F.2d 723 (2d Cir. 1985) ....................9

*In re Grumman Olson Indus., Inc.*,
329 B.R. 411 (Bankr. S.D.N.Y. 2005) ....................2, 3, 4

*Guilbeau v. Footprint Int'l Holdco, Inc.*,
360 A.3d 288 (Del. Ch. 2026) ....................4

*In re Hampton Hotel Invs., L.P.*,
270 B.R. 346 (Bankr. S.D.N.Y. 2001) ....................8

*In re Hansen Med., Inc. S'holders Litig.*,
C.A. No. 12316-VCMR, 2018 WL 3025525 (Del. Ch. June 18, 2018) ....................7

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995) ....................15

*In re Hutchinson*,
5 F.3d 750 (4th Cir. 1993) ....................9

*In re Nelco, Ltd.*,
264 B.R. 790 (Bankr. E.D. Va. 1999) ....................9

*Perlman v. Feldmann*,
219 F.2d 173 (2d Cir. 1955)....................6

*In re Picard, Trustee for the Liquidation of Bernard L. Madoff Inv. Secs. LLC*,
917 F.3d 85 (2d Cir. 2019)....................13, 14

*In re Primedia Inc. Derivative Litig.*,
910 A.2d 248 (Del. Ch. 2006)....................5

*Robbins & Co. v. A.C. Israel Enters., Inc.*,
Civ. A. No. 7919, 1985 WL 149627 (Del. Ch. Oct. 2, 1985)....................5

*In re Sal Caruso Cheese, Inc.*,
107 B.R. 808 (Bankr. N.D.N.Y. 1989)....................9

*In re Sharp Int'l. Corp.*,
403 F.3d 43 (2d Cir. 2005)....................14

*Sheldon v. Pinto Tech. Ventures, L.P.*,
220 A.3d 245 (Del. 2019)....................6, 7

*In re Signature Apparel Grp. LLC*,
577 B.R. 54 (Bankr. S.D.N.Y. 2017)....................9

*St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*,
745 F. Supp. 2d 303 (S.D.N.Y. 2010)....................6

*Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*,
906 F. Supp. 2d 202 (S.D.N.Y. 2012)....................2, 7

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006)....................8

*Summa Corp. v. Trans World Airlines, Inc.*,
540 A.2d 403 (Del. 1988)....................5

*In re SunEdison, Inc.*,
No. 19-01110, 2026 WL 2221598 (Bankr. S.D.N.Y. July 31, 2026)....................11

*In re Tilray, Inc. Reorg. Litig.*,
Consolidated C.A. No. 2020-0137-KSJM, 2021 WL 2199123 (Del. Ch. June 1, 2021)....................7

*In re Tops Holding II Corp.*,
646 B.R. 617 (Bankr. S.D.N.Y. 2022)....................8

*In re Trinsum Grp., Inc.*,
466 B.R. 596 (Bankr. S.D.N.Y. 2012)....................3

*Ultramar Energy Ltd. v. Chase Manhattan Bank*, N.A., 191 A.D. 2d 86 (1st Dep't 1993) .......... 14

*In re USACafes, L.P. Litig.*, 600 A.2d 43 (Del. Ch. 1991) .......... 4, 5

*Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999) .......... 4

*In re Wonderwork, Inc.*, 611 B.R. 169 (Bankr. S.D.N.Y. 2020) .......... 11, 12

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .......... 3, 9

**Statutes**

11 U.S.C. § 547 .......... 14

11 U.S.C. § 547(b)(3) .......... 11

11 U.S.C. § 547(b)(5) .......... 11, 12

11 U.S.C. § 548 .......... 13, 14

11 U.S.C. § 550 .......... 13, 14, 15

11 U.S.C. § 550(b)(1) .......... 15

11 U.S.C. § 550(d) .......... 14

11 U.S.C. § 1112(b) .......... 9

**Other Authorities**

Fed. R. Bankr. P. 7012(b) .......... 1

Fed. R. Civ. P. 12(b)(2) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 9

Defendants GDA Luma Capital Management, LP ("GDA Luma"), Davalia Gestion de Activos S.L. ("Davalia"), and Luis Blaquier ("Mr. Blaquier") submit this Reply in support of their Motion to Dismiss the Trustee's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b).

## PRELIMINARY STATEMENT

This dispute arises against the backdrop of the Debtor's creditor-approved prepackaged Chapter 11 restructuring – a consensual bond exchange that the Debtor and its stakeholders worked to implement and preserve – not the "looting" scheme that the Trustee reconstructs in hindsight. The Trustee's Opposition to Defendants' Motions to Dismiss (the "Opposition" or "Opp'n") confirms that the Trustee cannot plead the claims set out in the Complaint. The Complaint offers no facts that GDA Luma – a non-shareholder, whose only "ownership" connection is through a subsidiary that itself holds only a 20% interest, and a single board appointee on a seven-member board – exercised "***actual, participatory, total control of the debtor***". Moreover, the "group control" theory pleads no legally significant relationship among the investment advisors beyond a mere concurrence of interest. It likewise pleads no breach by Mr. Blaquier, who is alleged only to have joined in approval of ordinary course transactions. As for the claims against Davalia, the Complaint fails to plead that it received more than it would have under a hypothetical Chapter 7 liquidation and inadequately pleads the requisite badges of fraud. Finally, the recovery claims against Davalia fall with the avoidance claims and the good-faith defense is apparent on the face of the Complaint, and even if that were not the case, the Complaint improperly seeks double recovery for those claims.

## ARGUMENT

## I. THE BREACH OF FIDUCIARY DUTY CLAIMS AGAINST GDA LUMA AND MR. BLAQUIER SHOULD BE DISMISSED

### a. GDA Luma Owed No Fiduciary Duties to the Debtor

#### i. The Complaint Fails to Plead Actual Control by GDA Luma

At the outset, it bears repeating that GDA Luma is not and never was a shareholder of the Debtor. Its only ownership connection to the Debtor is through a subsidiary company, Davalia, which was a minority shareholder that held only 20% of the equity at the relevant time. Putting that aside, the Opposition does not engage with any of the case law that the GDA Defendants cited in their Opening Brief ("Br."), and instead relies on case law that does not support the proposition that GDA Luma exercised actual control.

The Trustee was required to plead non-conclusory facts that GDA Luma exercised "***actual, participatory, total control of the debtor***" and was "so powerful that the debtor [became] a mere instrument or agent." *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 427-28 (Bankr. S.D.N.Y. 2005) (emphasis added). This test "is not an easy one to satisfy[.]" *Starr Int'l Co. v. Fed. Rsrv. Bank of N.Y.*, 906 F. Supp. 2d 202, 221 (S.D.N.Y. 2012) (citation omitted). "Merely taking an active part in the management of the debtor corporation" nor appointing a director to the debtor's board automatically constitute control. *See Grumman*, 329 B.R. at 427 (citation omitted); *Glob. Crossing Est. Representative v. Winnick*, No. 04 Civ. 2558 (GEL), 2006 WL 2212776, at *21 (S.D.N.Y. Aug. 3, 2006) (holding that director appointment does not make a stockholder a fiduciary, and to hold otherwise "would give investors . . .second thoughts about seeking representation on the corporation's board of directors.").

Measured against these standards, the Complaint pleads no actual control by GDA Luma over the Debtor. GDA Luma's position as a non-shareholder and its appointment of a single

director[1] to the Debtor's board is clearly insufficient to establish or even suggest control. Instead, the Complaint is predicated on vague, speculative and conclusory assertions that Gabriel de Alba, the founder and managing partner of GDA Luma, exercised control because he allegedly consulted with the single GDA appointed director on *unspecified* business decisions, and that other individuals associated with GDA Luma were included on emails regarding the Debtor's business. Br. at 14. Viewed in the most favorable light possible to the Trustee's pleading burden, these allegations amount to nothing more than "[m]erely taking an active part in the management of the debtor corporation." *Grumman*, 329 B.R. at 427 (citation omitted).

The Opposition notes that Mr. Ledesma, acting on behalf of Gramercy, directed the Debtor's CEO on how to collect portfolios, and that Mr. Hernandez, on behalf of ACON, voted on matters including payment of the "sales premium" on account of the power of attorney of Mr. Knoell. Opp'n at 24-25. Even if this involvement was sufficient (which it is not), nowhere does the Opposition provide a similar specific allegation against GDA Luma beyond mere consultation and passive observation.[2] Even taking the allegation that Mr. Kontarovsky was a "putative" GDA

---

[1] The Complaint alleges that GDA Luma appointed a second director, Martin Kontarovsky, to the Board of the Debtor. Compl. ¶ 18. The Complaint itself describes Mr. Kontarovsky as a "putative GDA Luma-appointed 'independent' board member[.]" Compl. ¶ 34. Even if true, these allegations at most allege that GDA Luma appointed two directors to a seven-member board, which is also insufficient to show actual control.

[2] The Opposition attempts to import documents attached for the purposes of "establishing personal jurisdiction over Ban100 and Finanza" under Rule 12(b)(2), to then support its control argument under Rule 12(b)(6). *See* Chubak Decl. at 1; Opp'n at 25 n. 10. This is impermissible under Rule 12(b)(6) and should not be considered. These minutes were never mentioned in the Complaint, let alone attached as an exhibit, incorporated by reference, relied on, or integral to the Complaint. *See In re Trinsum Grp., Inc.*, 466 B.R. 596, 606 (Bankr. S.D.N.Y. 2012). Further, the Trustee cannot be permitted to amend the Complaint through factual assertions alleged for the first time in the Opposition papers. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding that the plaintiff failed to state a claim for failure to correct misstatements where "an alleged duty to correct does not appear anywhere in the amended complaint and did not enter the case until [the Plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss"). However, even if the February 28, 2024

Luma-appointed director and gave his voting proxy to a GDA Luma analyst for the August 28, 2024 Board vote, that at most shows that GDA Luma had two board votes on a seven member board – still insufficient to show actual control.

Unable to satisfy the actual control standard articulated by this Court, the Trustee relies on cases that do not apply the actual control test at all. Instead, they ask whether the defendant controlled *partnership property*. See *In re USACafes, L.P. Litig.*, 600 A.2d 43, 49 (Del. Ch. 1991) (deriving fiduciary duties from "control over the partnership's property," not shared control of corporate conduct); *Wallace v. Wood*, 752 A.2d 1175, 1178, 1182 (Del. Ch. 1999) (affiliates and parents owe duties "if those entities control the partnership's property"); *Bigelow/Diversified Secondary P'ship Fund 1990 v. Damson/Birtcher Partners*, No. Civ.A. 16630-NC, 2001 WL 1641239, at *8 (Del. Ch. Dec. 4, 2001) ("mere ownership" of the general partner is not enough absent "control over the partnership's property").

The few corporate fiduciary duty cases that the Trustee does cite support dismissal of the claim against GDA Luma. In *Guilbeau v. Footprint Int'l Holdco, Inc.*, the court ***dismissed*** a controlling stockholder claim where the stockholder held 26.4% of the voting power and appointed only one director of a ten-member board. 360 A.3d 288, 312 (Del. Ch. 2026). The court further noted that "it is not possible to infer" that the 26.4% holder exercised control because there were at least two other large stockholders with director-level rights comparable to the 26.4% holder. *Id.* at 322-23. Here, Davalia, not GDA Luma, was a 20% shareholder of the Debtor and appointed one director of a seven-member board. Further, the Complaint itself alleges that both Gramercy and

Board Minutes could be considered, the Trustee does not allege that they show anything more than "managerial involvement" by Ms. Stebelski, which is insufficient to show actual control. *Grumman*, 329 B.R. at 427.

ACON held large equity interests, mitigating any inference that Davalia's 20% share was controlling.

Similarly unavailing, the court in *In re GBG USA Inc.* sustained a control-based claim where the defendant "controlling shareholders" collectively owned more than 40% of the company only where the amended complaint alleged that the controlling shareholders were in actual control and the Defendant stated "they were *not contesting any of the factual allegations* of the Amended Complaint with respect to jurisdictional issues." 666 B.R. 115, 136-37 (Bankr. S.D.N.Y. 2024) (emphasis added). Further, the company's own annual reports described the relevant defendants as "controlling shareholders" of the company. *Id.* at 137. Similarly, the court in *In re Primedia Inc. Derivative Litig.*, found control over a particular transaction where, among other things, discussions of the stockholder's control in SEC filings indicated influence over the transaction at issue. 910 A.2d 248, 258 (Del. Ch. 2006). Here, GDA Luma strongly contests that it exercised actual control over the Debtor and the Trustee has pointed to no report or filing of the Debtor explicitly stating the opposite.

The Trustee's remaining cases are entirely inapplicable. *Robbins & Co. v. A.C. Israel Enters., Inc.*, is a ***post-trial*** decision that held the 31% holder had "working control" for valuation purposes, not to assess fiduciary duties. Civ. A. No. 7919, 1985 WL 149627, at *5 (Del. Ch. Oct. 2, 1985). *Summa Corp. v. Trans World Airlines, Inc.,* is also a ***post-trial*** majority shareholder decision in which the court found that a *78% majority shareholder* with control of the company's day-to-day operations breached its fiduciary duties. 540 A.2d 403, 405 (Del. 1988).[3] Finally,

[3] The 40% "working control" language that the Trustee cites is misleading. Opp'n at 23. At the time of the court's decision, the defendant was a 78% majority shareholder. *Summa*, 540 A.2d at 405.

*Perlman v. Feldmann*[4], applied Indiana law to hold that the defendant who "was at that time not only the dominant stockholder, but also the *chairman of the board of directors and the president of the corporation*" breached the duties he owed "as *majority stockholder*." 219 F.2d 173, 174-76 (2d Cir. 1955) (emphasis added).

### ii. The Complaint Failed to Plead a Legally Significant Relationship Among the Investment Advisors

To treat distinct shareholders as a single control group, they must be "'connected in some legally significant way' – such as 'by contract, common ownership, agreement, or other arrangement – to work together toward a shared goal.'" *Sheldon v. Pinto Tech. Ventures, L.P.,* 220 A.3d 245, 251-52 (Del. 2019) (quoting *In re Crimson*, 2015 WL 5449419, at *15 (Del. Ch. Oct. 24, 2014)). At the pleading stage, the Trustee *is required* to show "some indication of an actual agreement" and he cannot rely on a "mere concurrence of self-interest." *Id*. at 252. Further, absent "a voting agreement among the group or a blood pact to act together," the Trustee cannot simply lump together the holdings of the Shareholder Lenders to show control by the investment advisors, who had no ownership interest in the Debtor at all. *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 312-13 (S.D.N.Y. 2010) (citation omitted).

The Opposition relies exclusively on facts which, taken as true, show a "mere concurrence of self-interest among" the investment advisors, which the Trustee's own case law rejects as insufficient to show group control. In *Sheldon*, the Delaware Supreme Court ***affirmed dismissal*** of the group control claims against a group that collectively held 60% of the company, were parties to a voting agreement appointing directors, hand-picked the CEO, and had a "long and close

[4] *Perlman* has since been called into doubt by the Delaware Chancery Court as "not widely followed." *See In re Sears Hometown & Outlet Stores, Inc. S'holder Litig.*, 309 A.3d 474, 509 n.23 (Del. Ch. 2024).

relationship of investing together." 220 A.3d at 255. As to the voting agreement in *Sheldon*, the court held that the agreement was insufficient to show a control group because "it [did] not require [the parties] to vote together on any transaction[.]" *Id.* at 254. The court concluded that the complaint failed to plead "anything but a mere concurrence of self-interest." *Id.* at 255-56.

The Trustee's cases that found more than a mere concurrence of interest are distinguishable. *In re Hansen Med., Inc. S'holders Litig.*, C.A. No. 12316-VCMR, 2018 WL 3025525, at *7 (Del. Ch. June 18, 2018) (finding a control group where the defendants held themselves out as a group to the SEC and had a long history of coordinated investment); *In re Tilray, Inc. Reorg. Litig.*, Consolidated C.A. No. 2020-0137-KSJM, 2021 WL 2199123, at *11 (Del. Ch. June 1, 2021) (finding a control group where the defendants were "long-time friends" and held themselves out as partners).

The Trustee pleads far less here. The Opposition does not contend that any of the agreements it cites as evidence of "parallel interests…by virtue of their being co-lenders under the Shareholder Loan" bind the investment advisors to act as a group or show more than shared interest as lenders. Opp'n at 25. Further, "absent special circumstances, a lender does not incur fiduciary obligations toward its debtor" and exercising contractual rights under a credit agreement does not create control by the lender. *See Starr Int'l Co.*, 906 F. Supp. 2d at 221, 224-25. As such, the Complaint fails to plead "anything but a mere concurrence of self-interest" among co-lenders and should be dismissed.

**b. The Complaint Does Not Plead a Breach of Fiduciary Duty by Mr. Blaquier**

**i. The Duty of Loyalty**

The Trustee argues that the defendant directors moved to dismiss for failure to plead self-dealing and lack of care, but "none addressed the duty of good faith, generally considered a subsidiary element of the duty of loyalty." Opp'n at 16. That concession is self-defeating. *Stone v.*

*Ritter* holds that the requirement to act in good faith "is a subsidiary element[,] i.e., a condition, of the fundamental duty of loyalty," and that "the obligation to act in good faith does not establish an independent fiduciary duty that stands on the same footing as the duties of care and loyalty." *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (citation and quotations omitted). Good faith is therefore not a separate claim that must be separately rebutted, but it is one of the three ways that the Trustee must have shown a breach of the duty of loyalty.

To plead a breach of the duty of loyalty, the Trustee must allege facts that the directors "(1) harbored material self-interest, (2) acted to advance the self-interest of an interested party from whom [they] could not be presumed to act independently, or (3) acted in bad faith." *In re Tops Holding II Corp.*, 646 B.R. 617, 701 (Bankr. S.D.N.Y. 2022). The Opening Brief demonstrates that the Complaint is devoid of any facts supporting material self-interest or lack of independence by Mr. Blaquier (Br. at 19-21), which the Opposition does not refute.

The Opening Brief also directly addresses bad faith, stating that Complaint pleads no facts about Mr. Blaquier's intent as to any challenged transaction or knowledge that any transaction lacked consideration. Br. at 21-22. To the contrary, the type of transactions that he is alleged to have approved were disclosed in the Offering Memorandum and First Day filings and conducted in the ordinary course of business. First Day Decl. ¶ 50(c); Offering Memorandum at F-37, F-51.

The Trustee next contends that the Director Defendants do not address the federal common law duty to preserve estate property. Opp'n at 18. The GDA Luma Defendants do not assert that the directors of the debtor-in-possession do not have a duty to maximize property. In fact, the Opening Brief plainly acknowledges that duty. *See* Br. at 18 (citing *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 361–62 (Bankr. S.D.N.Y. 2001)). However, this Court has expressly held that "the fiduciary obligations of a debtor in possession include, among others, the duty of loyalty,

***which includes*** an obligation . . . to maximize the value of the estate. *In re Signature Apparel Grp. LLC*, 577 B.R. 54, 98 (Bankr. S.D.N.Y. 2017) (quotation and citations omitted).

Many of the cases that the Opposition relies on to show the duty to preserve estate property is distinct were not adjudicated under the Rule 12(b)(6) standard. See *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 816-17 (Bankr. N.D.N.Y. 1989) (applying a lack of good faith standard to determine whether cause exists to convert or dismiss a Chapter 11 proceeding under § 1112(b)); *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985) (affirming in part an order of the bankruptcy court finding a breach of fiduciary duty against a Chapter XIII trustee and remanding for a determination of the proper remedy); *In re Hutchinson*, 5 F.3d 750, 758 (4th Cir. 1993) (on appeal of a motion for summary judgment, holding that the bankruptcy court made no factual finding on the issue and remanding for further proceedings).

The Complaint fails to adequately plead a breach of the duty to preserve estate property as a duty included within the duty of loyalty. Br. at 18-23. The Opposition now argues that liability for failure to preserve estate property may result from negligent failure to prevent the challenged transactions. Opp'n at 19. Even if this were true, the claim should still be dismissed. Aside from the absence of this theory[5] or any well-pleaded facts supporting it in the Complaint, the Trustee's own cases show that he was required to plead that the Defendant Directors acted "willfully and deliberately, disregarding the estate's best interest." *In re Nelco, Ltd.*, 264 B.R. 790, 812 (Bankr. E.D. Va. 1999). The Complaint includes no adequately pled facts that Mr. Blaquier acted "willfully and deliberately" against the Debtor's best interest when he joined the board in approving the

[5] Nowhere in the Complaint does the Trustee allege that Mr. Blaquier is liable for "transactions that should have been prevented." Opp'n at 19. That theory is raised for the first time in the Opposition and as such should not be considered. *See* supra n. 2 (citing *Wright*, 152 F.3d at 178).

transactions. As for the post-petition transfers alleged in ¶ 91 of the Complaint, the Trustee never alleges any specific vote by Mr. Blaquier to approve those payments. Instead, he vaguely asserts that Mr. Blaquier is liable "*to the extent*" that he authorized any of the payments. Compl. ¶ 97. This is blatantly conclusory.

The Trustee's reliance on the August 28, 2024 Board Minutes is equally unavailing. Opp'n at 17. These board minutes show, at most, that Mr. Blaquier voted to ratify an agreement that had already been executed and do not supply any evidence of bad faith.

**ii. Duty of a Prudent Businessperson**

The Trustee's prudent-business person theory of liability fares no better. Under whatever standard Colombian law applies, the Complaint must plead facts showing an imprudent act by Mr. Blaquier himself, not merely that a board decision was, in hindsight, unwise. Yet the Complaint offers only the conclusory assertion that there was "no valid business reason" to approve the alleged "sales premium" transfer during the April 29, 2024 board meeting, with no well-pleaded facts showing that Mr. Blaquier did anything other than participate in a valid exercise of business judgment by the Debtor's board.

The chronology set out in the Complaint itself establishes the valid business reason. The March 7, 2024 forbearance agreement required an $8.5 million installment payment in April 2024. Compl. ¶ 56. The Board approved an amendment on April 29, but the amendment was not executed until May 15, 2024. Compl. ¶¶ 67-68. The April 29 approval did not amend the lender agreement itself and when the payment was made the deferral was not yet in effect. While it is not the GDA Defendants' burden to affirmatively present a business justification, payment of a matured installment on an existing debt before a deferral ever went into effect, decreasing the company's debt burden and meeting its contractual obligation, supplies that justification.

## II. THE AVOIDANCE CLAIMS AGAINST DAVALIA SHOULD BE DISMISSED

### a. The Complaint Failed to Adequately Plead a Preference Claim

The Complaint failed to allege a single well-pleaded fact suggesting that Davalia received more from the so-called "premium payment" distribution than it would have in a liquidation of the Debtor's assets, as required by § 547(b)(5). The Trustee responds to Davalia's § 547(b)(5) argument by alleging that the liquidation analysis, which was never mentioned in the Complaint and should not be considered[6], reflects insolvency with unsecured creditors projected to recovery 21.92% and 38.38%. Opp'n at 32 (citing ECF No.78 Exhibit D at 12)[7]. A debtor's insolvency satisfies § 547(b)(3), not § 547(b)(5). Section 547(b)(5) requires that the Trustee allege that the transferee received more than it would have in a hypothetical chapter 7 liquidation.[8] The Trustee concedes that the hypothetical liquidation establishes that unsecured creditors would recover 21.92% and 38.38%. Here, the Opening Brief establishes and the Trustee does not contest, the Shareholder Lenders received only 6.45% of the outstanding Shareholder Loan. As such, the § 547(b)(5) requirement is not met on its face.

---

[6] Contrary to the Trustee's assertion, the court in *Wonderwork* did not take judicial notice of the examiner's report but explicitly stated that "[t]he *Complaint* relies on the 274-page *Examiner's Report* and includes references to the Examiner's conclusions." *In re Wonderwork, Inc.*, 611 B.R. 169, 194 (Bankr. S.D.N.Y. 2020). In fact, the plaintiff in that case also attempted to use a separate liquidation analysis submitted with the disclosure statement and the court refused to consider it, noting that "neither the *Complaint* nor the *Examiner's Report* cited or relied on the disclosure statement[.]" *Id*. at 213. Thus, judicial notice cannot be relied on to cure the failure to ground the complaint in a document first introduced in the opposition briefing.

[7] "The relevant time for section 547(b)(5) liquidation test analysis is the petition date." *In re SunEdison, Inc.*, No. 19-01110, 2026 WL 2221598, at *9 (Bankr. S.D.N.Y. July 31, 2026).

[8] "The trustee may…avoid any transfer of an interest of the debtor in property…that enables such creditor to receive more than such creditor would receive if— (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547 (b)(5).

The *Wonderwork* decision supports this conclusion. A trustee ordinarily satisfies the § 547(b)(5) element by showing insolvency, but that "assumes that the defendant received 100% of his claim as a result of the preference." *In re Wonderwork, Inc.*, 611 B.R. at 213-14. The Trustee never addresses this issue in his brief. Rather, he misstates the *Wonderwork* holding by asserting that the court denied the motion to dismiss because the facts set forth in the complaint and an examiner's report "indicating the movant would receive less than a full recovery in a hypothetical Chapter 7 case".[9] Opp'n at 32. That is not true. The salient point is not whether the defendant received less than a full recovery; the question is whether the distribution he did receive was less than or greater than what he would have received in a hypothetical chapter 7 liquidation. Since the Shareholder Lenders only received 6.45% of their claim, the Trustee was required to plead facts showing it received more than it would have in a hypothetical chapter 7 liquidation, and he did not. In fact, the liquidation report the Trustee relies on shows the opposite.

The Complaint alleges that the three Shareholder Lenders, through the Finanza loan, held a $42M claim. Compl. ¶¶ 43, 47-48. The complaint further alleges that the three shareholders collectively received $2,745,386.16. Compl. ¶ 62. Straightforward long division shows that the payment equaled 6.45% of the outstanding loan. Davalia is alleged to have received only $1,372,693.08 of that amount. The Liquidation Analysis that the Trustee now asks the Court to consider projected a range of recovery on that claim of between $4.4M and $7.8M, with a midpoint of $6.1M (or approximately $0.31/00). (ECF #78 Exhibit D at 12). The collective distribution was

[9] To the extent the Trustee argues that it is sufficient under § 547(b)(5) to show that Davalia would have received less than a full recovery in a hypothetical liquidation, that is also not correct. *See In re ContinuityX, Inc.*, 569 B.R. 29, 35 (Bankr. S.D.N.Y. 2017) (finding that where a defendant received less than a 100% distribution as a result of the transfer, the trustee cannot simply show that the defendant would have received less than a full recovery in a liquidation but must show that the defendant received more than the creditors would have). The liquidation analysis here shows the opposite. (ECF No.78 Exhibit D at 12).

thus below the low end of the projected range and definitively disposes of any potential preference claim.[10]

### b. The Complaint Failed to Adequately Plead a Fraudulent Transfer Claim

#### i. Any Recovery from Davalia Must Be Done Through § 550, Not § 548

Section 548 is an avoidance statute allowing the Trustee to avoid transfers of an interest of the debtor in property, while Section 550 provides for recovery of avoided transfers. Davalia was not a party to the initial transfer of an interest of the Debtor in property (Compl. ¶ 134) and is thus not a proper defendant for the avoidance claim. *See In re Picard*, 917 F.3d 85, 98 (2d Cir. 2019) ("[o]nly the initial transfer involves fraudulent conduct, or any conduct, by the debtor.").

#### i. The Trustee's Asserted Badges of Fraud Do Not Support a Claim of Actual Fraudulent Intent

The Complaint pleads three enumerated allegations to support its conclusion that the "sales premium" payment was made with intent to hinder, delay, or defraud: (1) the transfer was to an insider, (2) it was not disclosed in the bankruptcy filings, and (3) the Debtor was insolvent. Compl. ¶ 117. As explained in the Opening Brief, the First Day Declaration and Cash Management Motion both disclose the Debtor's continued participation in related party transactions like the one challenged here (First Day Decl. at ¶ 50(c); Cash Mgmt. Mot. at ¶ 41), the Complaint does not adequately plead insolvency, and a transfer to an *unspecified* insider is insufficient to show actual fraudulent intent. Br. at 29-31.

[10] Further, insofar as the Trustee argues the liquidation analysis establishes insolvency, that is also incorrect. The hypothetical liquidation analysis, by definition, *presumes* insolvency for the purposes of conducting the analysis and contains a disclaimer that "[t]he liquidation analysis does not purport to be a valuation of the Debtor's assets as a going concern, and there may be a significant difference between the liquidation analysis and the values that may be realized in an actual liquidation."

The Opposition now pivots, arguing that the Complaint pled additional badges of fraud not listed in ¶ 117, including that the payment was not due when made and that the general chronology of the transactions shows actual fraudulent intent based on the April 29, 2024 Board Minutes. Opp'n at 34. However, the April 29 Board Minutes show no more than an alleged transfer to pay down an antecedent debt prior to a bankruptcy filing. The Second Circuit has held that "[a] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another." *In re Sharp Int'l. Corp.*, 403 F.3d 43, 54-55 (2d Cir. 2005) (quoting *Ultramar Energy Ltd. v. Chase Manhattan Bank*, N.A., 191 A.D. 2d 86, 90-91 (1st Dep't 1993)). Because the Trustee's own allegations establish that the alleged $2.7 million payment was on account of an existing debt, the Trustee pleads at most a preference, which independently fails for the reasons stated above.

## III. THE RECOVERY CLAIM AGAINST DAVALIA SHOULD BE DISMISSED

As a threshold matter, Section 550 is a "utility provision" that the Trustee "cannot use [] to recover property unless the trustee has first avoided a transfer." *In re Picard*, 917 F.3d at 97-98. As such, because the Complaint states no § 547 or § 548 claim, the recovery claim fails with them.

Assuming the transactions are avoidable (which they are not), the Trustee provides no response to Davalia's argument that § 550 does not permit double recovery. The Opening Brief explains that § 550(d) permits only a single satisfaction, that recovery must be sought from the specific transferee of the avoided transfer, and that the Complaint impermissibly lumped Davalia with the other Shareholder Lenders by demanding the entire $2,745,386.16 jointly. Davalia is at most a subsequent transferee of $1,372,693.08, and none of the narrow exceptions permitting joint-and-several liability were pled. *See In re Fun Bowl Vacations, Inc.*, 666 B.R. 867, 882 (Bankr. S.D.N.Y. 2025) (denying a trustee's request for joint-and-several liability because "the Trustee must look to the specific transferee of the avoided Transfer for recovery.").

Further, and in contradiction with the Complaint, the Opposition argues that the "collapsing" doctrine makes Davalia an initial transferee and defeats the Opening Brief's argument that Davalia took in good faith for value under § 550(b)(1). Opp'n at 36. First, the Complaint alleges that the Shareholder Lenders received the $2.7 million payment at the end of a four-step transaction and it labels Davalia a "subsequent transferee under 11 U.S.C. § 550(a)." Compl. ¶¶ 62, 65, 134.

Second, the Complaint did not adequately plead that the Shareholder Lenders had knowledge of the alleged voidability of the transfer or any "scheme," as required under the collapsing doctrine. Br. at 34-35; Opp. 36 (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635–36 (2d Cir. 1995)). The Trustee now points to the February 28, 2024[11] and April 29, 2024 Board Minutes to show that the directors were advised that the payment would be made prior to the bankruptcy, as to not cause any issues with the bankruptcy court. Even taking that characterization as true, advice about the timing of a payment on an existing debt obligation says nothing about knowledge of a fraudulent scheme. *In re AppliedTheory Corp.*, 323 B.R. 838, 842 (Bankr. S.D.N.Y. 2005) ("[I]f there is in our law one point which is more ungrudgingly accepted than others, it is that the preferential transfer does not constitute a fraudulent conveyance"). Because the Complaint fails to show knowledge of any fraudulent scheme the transaction cannot be collapsed and the argument has no bearing on Davalia's § 550(b)(1) defense. Br. at 34-35.

## CONCLUSION

For the foregoing reasons, GDA Luma, Mr. Blaquier, and Davalia respectfully request that the Court dismiss the Complaint against them in its entirety with prejudice.

---

[11] For the same reasons explained in footnote 2, the February 28, 2024, Board Minutes should not be considered on the motion to dismiss the § 550 claim.

Dated: November 20, 2026
Boston, Massachusetts

Respectfully submitted,

**BROWN RUDNICK LLP**

By: *<u>/s/ James W. Stoll</u>*
James W. Stoll, Esq. (admitted *pro hac vice*)
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
jstoll@brownrudnick.com
sdwoskin@brownrudnick.com
Telephone: (617) 856-8200
Facsimile: (617) 856-8201

*Counsel for Luis Blaquier, Davalia Gestion de Activos S.L, GDA Luma Capital Management, LP*

## **CERTIFICATE OF SERVICE**

I, James Stoll, hereby certify that on November 20, 2026, a true and correct copy of the foregoing Reply Memorandum of Law in Support of The GDA Luma Defendants' Motion to Dismiss the Trustee's Complaint was served via CM/ECF on all parties registered to receive electronic notices.

*/s/ James W. Stoll*___________________________
James W. Stoll